UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                          CIVIL ACTION NO. 05-40049-FDS

J.J. REIDY & CO., INC.,                    )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )
                                           )
AIRWATER CORPORATION and                   )
AIRWATER PATENTS CORPORATION,              )
                                           )
                Defendants.                )

**OPPOSITION OF PLAINTIFF J.J. REIDY & CO., INC. TO
DEFENDANTS AIRWATER CORPORATION AND AIRWATER
PATENTS CORPORATION'S MOTION IN THE ALTERNATIVE
TO TRANSFER VENUE FOR FORUM NON CONVENIENS**

### INTRODUCTION

Plaintiff, J.J. Reidy & Company, Inc. ("Reidy") opposes Defendants AirWater

Corporation ("AirWater") and AirWater Patents Corporation's ("AirWater Patents") Motion

to Transfer for Forum Non Conveniens. Reidy brought this lawsuit because Defendants

have breached a patent licensing agreement solicited, negotiated, and performed, in part, in

Massachusetts by failing to make monthly royalty payments. Reidy has properly first filed

its Complaint in Massachusetts and Defendants have failed to show that this case should be

transferred to the Southern District of Florida.

### BACKGROUND

In February of 2002, Universal Communication Systems, Inc. ("UCS"), the publicly

traded parent company and 100% owner of AirWater and AirWater Patents, contacted

Reidy, a small, closely-held Massachusetts Corporation located in Holden, Massachusetts,

seeking to acquire its rights to United States Patents related to a water purification system. Affidavit of James J. Reidy ("Reidy Aff."), ¶ 1-3, Exh. A; Affidavit of Daniel P. Flynn, Esq. ("Flynn Aff."), Exh. A. Reidy spoke with Michael Zwebner ("Zwebner"), the Chief Executive Officer of UCS, and President of AirWater and AirWater Patents, on an almost daily basis in the next months and had frequent email correspondence with Zwebner. Reidy Aff., ¶ 3. These phone and email negotiations between Reidy, in Massachusetts, and Zwebner, in Israel, Miami, Toronto, Los Angeles, the United Kingdom, and New York, continued for several months. Id., ¶ 4. On March 15, 2003, at Zwebner's suggestion, Zwebner traveled to Boston to meet with Reidy's President, James J. Reidy, to further negotiate an agreement regarding the patents. Id., ¶ 4, Exh. B.

Sometime in late March, the parties agreed to the basic terms of what became the Global Manufacturing and Marketing Licensing Agreement (the "Agreement"). Id., ¶ 5, Exh. C. In or about late June of 2003, Reidy and Zwebner executed the written Agreement, back-dating it to March 21, 2003. Id., ¶ 7, Exh. E. Zwebner soon thereafter solicited Reidy's assent to assign the Agreement to UCS's newly formed subsidiary, AirWater Patents. Id., ¶ 7; Affidavit of Matthew P. Zayotti, Esq. ("Zayotti Aff."), Exh. B. Zwebner and James J. Reidy met in Boston on July 28, 2003 to discuss technical details regarding the production and design of AirWater products. Reidy Aff., ¶ 10.

Pursuant to the Agreement, AirWater also made monthly payments of royalties to Reidy in Massachusetts and engaged in telephone and email communications with Reidy regarding these payments. Id., ¶ 12. Reidy's claim is based on Defendants' refusal to continue making these payments per the terms of the Agreement. Complaint, ¶¶ 3-6, 9-11. The parties communicated frequently regarding disputes about payment of Reidy's royalties.

Reidy Aff., ¶ 12.  On April 4, 2004, Reidy emailed Zwebner notice that he was concerned with AirWater's payment history in an effort to resolve the conflict.  Id., Exh. I.  On November 10, 2004, in response to Reidy's inquiries about the lack of royalty payments, AirWater sent a letter to Reidy stating that it had the right to halt its payments because of disputes over patents.  Id., Exh. J.

In response to AirWater's lack of cooperation in resolving the payment dispute, Reidy exercised his rights under the Agreement, and, through counsel, sent AirWater a notice of default for failure to make minimum monthly royalty payments on December 15, 2004.  Id., ¶ 14, Exh. K.  This triggered a fourteen (14) day period in which AirWater had a right to bring its payments to Reidy up to date.  Id., Exh. E.  If AirWater did not do so, the contract was terminated.  Id.  Zwebner replied to Reidy in a December 27, 2004 letter denying that he owed Reidy any payments.  Id., ¶ 15.

In light of Defendants' November 10, 2004 letter clearly expressing their refusal to resume payments or negotiate, Reidy filed a complaint in Massachusetts Superior Court for breach of contract against AirWater on December 16, 2004.  Id., ¶ 16, Exh. L.

Subsequently, Reidy discovered that the Agreement had been assigned to AirWater Patents in June of 2003.  Id., ¶ 17.  Accordingly, he sent a second notice of default to AirWater Patents on January 13, 2005, which also triggered a fourteen (14) day cure period.  Id., ¶ 17, Exh. E.  When AirWater Patents did not respond to this letter within the fourteen days, on January 31, 2005, Reidy notified AirWater Patents that the Agreement had been terminated.  Id., ¶ 17.

On February 17, 2005, Reidy amended its Complaint to add AirWater Patents as a defendant and attempted to effectuate service on both Defendants by certified mail, return

receipt requested, on February 18, 2005. <u>Reidy Aff.</u>, ¶ 18, Exh. M. Defendants, and, in particular, Zwebner, refused to accept the certified mailing and it was eventually returned to Reidy's counsel in mid-March. <u>Id.</u> Eventually Defendants were served by first class mail.

On February 11, 2005, AirWater Patents filed a complaint for declaratory judgment against Reidy in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida. <u>Zayotti Aff.</u>, Exh. E. AirWater served its complaint on Reidy on February 14, 2005.

Zwebner, who claims to be physically unable to litigate in Massachusetts, is currently involved in two cases in United State District Court for the District of Massachusetts which were transferred from the United State District Court for the Southern District of Florida in 2005. <u>Id.</u>, Exh. N (docket sheets for <u>Universal Communication Systems, Inc. and Michael J. Zwebner v. Lycos, Inc.</u> (1:05-CV-11172-REK) (transferred on May 25, 2005) and <u>Universal Communication Systems, Inc. and Michael J. Zwebner v. Lycos, Inc. d/b/a The Lycos Network</u> (1:05-CV-10435-REK) (transferred on February 28, 2005)). Zwebner also recently has been both a plaintiff and a defendant in Massachusetts Superior Court. <u>Id.</u>, Exh. O (docket sheets from <u>Zwebner v. Villasenor</u>, SUCV2000-02239 (Mass. Super. Ct.) and <u>Polk v. Zwebner</u>, SUCV2003-01176 (Mass. Super. Ct.)). Zwebner has also pursued litigation in New Hampshire, Oregon, Utah, Texas, and California. <u>Id.</u>, Exh. P ( <u>Zwebner v. Dumont</u>, 1998-CV-682 (D.N.H. 1998); <u>Zwebner v. John Does Anonymous Found, Inc.</u>, 2000-CV-01322 (D. Or.); <u>Reddi Brake Supply Corp. v. Corporate Stock Transfer, Inc.</u>, No.020911604 (3rd D. Ct. Salt Lake County, Utah) (filed June, 2004); <u>Electric & Gas Tech., Inc. v. Universal Communication Systems, Inc.</u>, 2003-CV-01798 (N.D. Texas) (filed August 2003); <u>Talk Visual Corp. v. John Doe</u>, No. 901274 (3d D. Ct. Salt Lake County, Utah) (filed

February 2000); and Zwebner, Universal Communication Systems, Inc., and AirWater Corp.

v. Coughlin, 05-CV-1263 (S.D. Ca.) (filed June 21, 2005)).

**ARGUMENT**

I.    **Defendants Have Not Carried Their Burden of Establishing That It**
      **Would Be Appropriate to Transfer This Action to the Southern District**
      **of Florida**

    A.    **Legal Standard**

There are two requirements that must be met in order for a defendant to prevail in a

motion to transfer: (1) an alternative forum must be able to assert jurisdiction and (2) trial

in the chosen forum must be oppressive and vexatious to either the defendant or the

judicial system. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 720 (1st Cir.

1996); Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991); Howe v. Goldstein

Inv., Ltd., 946 F.2d 944, 950 (1st Cir. 1991). The overarching principle which must guide

this analysis, however, is the Supreme Court's declaration that "the plaintiff's choice of

forum should rarely be disturbed." See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508

(1947); Mercier, 935 F.2d at 424; Howe, 946 F.2d at 950; Boudreau, 1992 U.S. District

LEXIS at 12-13.

Where similar actions are proceeding in two federal courts, the first filed action is

generally preferred in a choice of venue decision. See Cianbro Corp. v. Curran-Lavoie,

Inc., 814 F.2d 7, 11 (1st Cir. 1987); Nowak, 94 F.3d at 719 (holding that to defeat

plaintiff's forum choice, defendant must show that considerations of convenience and

judicial efficiency "strongly favor litigating the claim in the alternative forum."); Reebock

Int'l Ltd. v. Dunkadelic, Inc., 2004 U.S. Dist. LEXIS 3167, 8. Defendants rely on two

exceptions to the first-filed rule that state it may be overcome if: (1) there are special

5

circumstances justifying a transfer or (2) convenience favors the later-filed action. <u>See</u>

<u>Holmes Group v. Hamilton Beach/Proctor Silex, Inc.</u>, 249 F.Supp.2d 12, 16 (D. Mass.

2002); <u>Veryfine Products, Inc. v. Phlo Corp.</u>, 124 F. Supp.2d 16, 22 (D. Mass. 2000).

Defendants must meet the standards for overcoming the first-filed rule by more than a

preponderance of the evidence; they must show that "the transferee forum is clearly more

convenient." <u>Heller Financial, Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1293 (7th

Cir. 1989) (<u>quoting</u> <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219-20 (7th Cir. 1986);

<u>see also</u> <u>Nowak</u>, 94 F.3d at 719.

**B.    Massachusetts Is the Proper Forum for This Action Because Reidy's Action in Massachusetts Was Filed First and There Are No Special Circumstances Justifying a Transfer**

Because Reidy brought its breach of contract claim in Massachusetts before

Defendants filed their declaratory relief action based on the same underlying facts, venue

in Massachusetts is proper. <u>See</u> <u>Reidy Aff.</u>, ¶ 16, Exh. L; <u>Cianbro Corp.</u>,814 F.2d. at 11;

<u>Nowak</u>, 94 F.3d at 719; <u>Veryfine Products, Inc.</u>, 124 F. Supp.2d at 22. Reidy, a small,

closely-held Massachusetts corporation, filed this action in its home forum, Massachusetts

Superior Court, before it was removed to this Court. Reidy is the natural plaintiff in this

action and chose the forum based on considerations of convenience rather than vexation or

harassment of the Defendants, thus elevating the hurdle Defendants are required to clear to

warrant transfer. <u>See</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 (1981); <u>Reebock Int'l</u>

<u>Ltd.</u>, 2004 U.S. Dist. LEXIS at 11; <u>Holmes Group</u>, 249 F.Supp.2d at 17. Because Reidy

was the first to file and because it has not engaged in any forum shopping, this Court

should deny Defendants' Motion to Transfer Venue.

Reidy's Complaint was not an anticipatory filing because Defendants had already communicated their unwillingness to cure their default or engage in good faith negotiations in a November 10, 2004 letter to Reidy, in which Defendants denied owing Reidy any further minimum monthly royalty payments under the Agreement. See Reidy Aff., Exh. J; Reebock, 2004 U.S. Dist. LEXIS at 11; Veryfine Products, Inc., 124 F. Supp.2d at 22-23. Accordingly, Reidy took the steps proscribed under the Agreement to terminate the Agreement. This required giving Defendants written notice of default and a fourteen (14) day opportunity to cure. Reidy diligently followed these steps, and, relying on Defendants' letter stating they would not pay the minimum monthly royalty payments, filed a suit for breach of contract in Massachusetts. Reidy withheld service of the Complaint because a review of its documents raised uncertainty as to the proper Defendants in its action. This is further shown by Reidy's amendment by right of its complaint on February 16, 2005 to add AirWater Patents as a defendant. Reidy attempted to serve the Amended Complaint on Defendants on February 18, 2005.[1] At no time did Reidy make any misleading or bad faith representations to Defendants that it would forego litigation in order to negotiate a resolution to this conflict. See id.; Reidy Aff., ¶ 19. Nor did Reidy have any information indicating that Defendants would file their complaint for declaratory relief in Florida on February 11, 2005. See Reidy Aff., ¶ 20. In fact, the sequence of events indicates that it was Defendants who were attempting to "jump the gun" and forum shop by filing a declaratory judgment action in Florida. See Veryfine

---

[1] Defendants refused to accept service of the Amended Complaint, which was sent on February 18, 2005 by certified mail, return receipt request. It was not until March 2005 that the refused parcel worked its way through the mails back to Reidy's counsel, necessitating the filing of a motion to extend the time limit for service.

Products, Inc., 124 F. Supp.2d at 22; Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122,

124-25 (D. Mass. 2000).

      The two District of North Carolina and lone District of West Virginia cases cited

by Defendants in support of their argument are readily distinguishable from the facts of

this case. For example, Defendants' reliance on Remington Arms Co., Inc. v. Alliant

Techsystems, Inc. is wholly misplaced. See Remington Arms Co., Inc. v. Alliant

Techsystems, Inc., 2004 WL 444574, 2 (N.D.C. 2004). In Remington, the defendants sent

a cease and desist letter to the plaintiff asserting their ownership of several trademarks used

in connection with ammunition sales and setting a firm deadline for plaintiff to stop

infringing before defendants would undertake litigation. See Remington, 2004 WL

444574 at 1. One day before the expiration of this period, plaintiff filed a declaratory

judgment action against the defendants in North Carolina. See id. at 3. Defendants

subsequently filed their own complaint in Minnesota before being served. See id.

Defendants then moved to dismiss the North Carolina action. See id. The Court in

Remington explicitly reasoned that because plaintiff's action was for declaratory judgment

and because the cease and desist letter gave plaintiff notice that defendants would pursue

legal action, there were special circumstances sufficient to ignore the long settled first-filed

rule. See id. at 11. The Court found that, in essence, plaintiff was attempting to reverse

the natural roles of plaintiff and defendant in the dispute in order to gain a more favorable

venue. See id. at 10-15.

      The facts of Remington are the opposite of the situation before this Court. See id.

at 1-5. Whereas the Remington plaintiff was the obvious and natural defendant in a

trademark infringement action, in this case, Reidy is the natural plaintiff pursuing a claim

for damages from Defendants' failure to make payments under the Agreement. See id. In
Remington, the plaintiff filed a declaratory judgment action in order to preempt the claims
against it; in the present case, AirWater and AirWater Patents filed a declaratory judgment
action to preempt Reidy's claim. See id. at 17. In Remington, plaintiff had notice that
defendants were likely to take imminent legal action against it; in this case, it was Reidy
who notified the Defendants that it was likely to pursue breach of contract remedies in
Massachusetts court. See id. This disparity of circumstances clearly distinguishes
Remington from the present case and demonstrates that it is Defendants themselves who fit
the profile of forum shoppers. See Veryfine Products, Inc., 124 F. Supp.2d at 22;
Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122, 124-25 (D. Mass. 2000).

Defendants also erroneously rely on Nutrition & Fitness, Inc. v. Blue Stuff, Inc. in
support of their argument that the Court should make an exception to the first-filed rule.
Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp.2d 357 (D.N.C. 2003). In
Nutrition, plaintiff filed three intent-to-use trademark applications that allegedly infringed
on defendant's active trademarks. See Nutrition, 264 F.Supp.2d at 358. At about the time
that plaintiff began selling the allegedly infringing products, it also filed suit against the
defendant in North Carolina, alleging false advertising against defendant, but withheld
service. See id. Without knowledge of the North Carolina action, defendant filed suit
against plaintiff in Oklahoma, alleging federal trademark infringement. See id. Defendant
served Plaintiff and was immediately served by Plaintiff with the North Carolina suit. See
id.

In Nutrition, the Court allowed the defendant's motion to transfer venue to
Oklahoma based on the anticipatory filing exception to the first-filed rule. See id. at 364.

The Court based its decision on the fact that plaintiff, in filing the first action in North Carolina, did not bring the true dispute regarding trademarks into court. See id. at 361. The Court reasoned that allowing the plaintiff to choose the forum based on filing essentially its counterclaim to defendant's trademark infringement action would be tantamount to allowing a tortfeasor to file a lawsuit against a victim prior to committing a tort, then requiring the victim to litigate in the forum where the tortfeasor filed prior to committing the tort. See id. at 361-62. The court held that plaintiff could not circumvent the law by silently filing a substantive lawsuit which is really akin to a counterclaim. See id. at 362.

In contrast, Reidy's claim for breach of contract is not akin to a counterclaim and goes directly to the heart of the conflict between the parties. Reidy claims that Defendants have breached the Agreement and seeks redress for these breaches. It is the Defendants who have attempted to file a declaratory judgment action seeking a ruling that they do not owe Reidy further payments under the Agreement. The essential facts on which the court in Nutrition based its decision to transfer venue are completely inapposite to the facts of this case; therefore, Nutrition offers no support for Defendants' argument in favor of disregarding the first-filed rule. See id. at 359-64.

Finally, Defendants urge this Court to ignore the first-filed rule based on McJunkin Corp. v. Cardinal Systems, Inc., which is also readily distinguishable from the present action. McJunkin Corp. v. Cardinal Systems, Inc., 190 F.Supp.2d 874 (D.W.Va. 2002). In McJunkin, plaintiffs secretly filed a declaratory judgment action in West Virginia while the parties were negotiating a settlement to a dispute over an asset purchase agreement. See McJunkin, 190 F.Supp.2d at 875. Several months later, defendants filed a breach of

contract action against plaintiffs in Missouri. See id. The court allowed defendants'
subsequent motion to transfer venue to Missouri, reasoning that an exception to the first-
filed rule was proper because plaintiffs filed the West Virginia suit during supposedly good
faith negotiations, the first suit was for declaratory judgment and thereby suggested an
improper race to the courthouse, and because the contract issue was not local to either
venue and the law of Texas governed the dispute. See id. at 879-80.

Unlike in McJunkin, Reidy did not covertly file its lawsuit during the course of
negotiations with Defendants. Indeed, Defendants' November 10, 2004 letter made their
position clear that they would not pay Reidy the royalties he sought pursuant to the
Agreement. Moreover, Reidy's claim is for breach of contract, not for declaratory
judgment, and thus does not suggest forum shopping. The same cannot be said of
Defendants' Florida claim. Finally, whereas the dispute in McJunkin was governed by the
law of a state not implicated in the venue controversy, the present case is governed by
Massachusetts law pursuant to the unambiguous terms of the Agreement. Accordingly, the
three cases Defendants rely on in their argument for transfer of venue contain drastically
different facts than this case and fail to support their argument in favor of disregarding the
first-filed rule.

### C.    Convenience and the Interests of Justice Favor Venue in Massachusetts.

Defendants' Motion should also be denied because their claims that Zwebner is
unable to travel to Massachusetts fly in the face of Zwebner's continuous and extensive
travels throughout the world and his pursuit of litigation in a host of venues, including the
Commonwealth of Massachusetts. Notably, Zwebner is currently involved in two cases in

United State District Court for the District of Massachusetts which were transferred from the United State District Court for the Southern District of Florida in 2005. Reidy Aff., Exh. N (docket sheets for Universal Communication Systems, Inc. and Michael J. Zwebner v. Lycos, Inc. (1:05-CV-11172-REK) (transferred on May 25, 2005) and Universal Communication Systems, Inc. and Michael J. Zwebner v. Lycos, Inc. d/b/a The Lycos Network (1:05-CV-10435-REK) (transferred on February 28, 2005)). Zwebner has also recently been both a plaintiff and a defendant in Massachusetts Superior Court. Id., Exh. O (docket sheets from Zwebner v. Villasenor, SUCV2000-02239 (Mass. Super. Ct.) and Polk v. Zwebner, SUCV2003-01176 (Mass. Super. Ct.)). Zwebner has also pursued litigation in New Hampshire, Oregon, Utah, Texas, and California. Id., Exh. P ( Zwebner v. Dumont, 1998-CV-682 (D.N.H. 1998); Zwebner v. John Does Anonymous Found, Inc., 2000-CV-01322 (D. Or.); Reddi Brake Supply Corp. v. Corporate Stock Transfer, Inc., No.020911604 (3rd D. Ct. Salt Lake County, Utah) (filed June, 2004); Electric & Gas Tech., Inc. v. Universal Communication Systems, Inc., 2003-CV-01798 (N.D. Texas) (filed August 2003); Talk Visual Corp. v. John Doe, No. 901274 (3d D. Ct. Salt Lake County, Utah) (filed February 2000); and Zwebner, Universal Communication Systems, Inc., and AirWater Corp. v. Coughlin, 05-CV-1263 (S.D. Ca.) (filed June 21, 2005)). All but one of these lawsuits were filed after 1999, the year in which Zwebner states he was confined to a wheelchair. Zwebner, therefore, is able to litigate in courts outside southern Florida.

The ability of Defendants to litigate outside their home state is clearly greater than that of Reidy. It would constitute a greater hardship on Reidy than on AirWater to be required to travel to another venue. Reidy Aff., ¶ 21 and 22. James J. Reidy is 64 years of

age and he and his family were dependent on the royalty income from Defendants, which income terminated at the end of October 2004. Id. Defendants, by contrast, are subsidiaries of a public company and AirWater has recently reported receipts of $100,000 for an exclusive license in India. As this Court has stated:

> [The plaintiff] should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) inappropriate because of considerations affecting the court's own administrative or legal problems.

Reebock, 2004 U.S. Dist. LEXIS at 8 (quoting Nowak, 94 F.3d at 720 (quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). Because Reidy will suffer significant hardship if this case is transferred to Southern Florida and because Defendants and Zwebner are clearly able to undertake litigation in foreign fora, Defendants have failed to show that their burden in litigating in Massachusetts is "out of all proportion" to Reidy's convenience. See id. As this case is presently ongoing in Massachusetts and is governed by Massachusetts law, there are no considerations affecting the Court's own administrative or legal problems.[2] See id.

Moreover, as several courts have expressly noted, transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for the other

---

[2] The Agreement contains the following choice of law clause:

> Inasmuch as the transactions, which may arise or occur between the parties and/or their principals may cross boundaries of national or international jurisdiction, this Agreement shall be construed and interpreted in Accordance with the laws of the United States of America and the resident state of the Plaintiff.
>
> Agreement, p. 15

{J:\CLIENTS\lit\304269\0002\00564970.DOC;2}

party.  See Trans national Travel, inc. d/b/a TNT Vacations v. Sun Pacific Int'l, inc., 10 F.

Supp.2d 79, 81 (D. Mass. 1998); Vandeveld v. Christoph, 877 F. Supp. 1160, 1167 (N.D.

Ill. 1995); Superior Precast, Inc. v. Safeco Ins. Co. of America, 71 F. Supp. 2d 438, 447

(E.D. Pa. 1999) ("transfer cannot simply shift the inconvenience from the defendant to the

plaintiff"); Merchants Nat'l Bank v. Safrabank (California), 776 F. Supp 538, 542 (D. Kan.

1991) (motion to transfer should be denied where effect would be "simply [to] shift the

inconvenience of conducting this litigation from one side to the other.").

CONCLUSION

For the foregoing reasons, Plaintiff J.J. Reidy & Company, Inc. respectfully requests

that this Court deny Defendants AirWater Corporation and AirWater Patents Corporation's

Motion to Transfer Venue for Forum Non Conveniens.

Respectfully submitted,

J.J. REIDY & COMPANY, INC.,

By Its Attorneys,


Thomas J. Conte (BBO #566092)
Daniel P. Flynn (BBO #655180)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 926-3415
FAX: (508) 929-3006

July 19, 2005

{J:\CLIENTS\lit\304269\0002\00564970.DOC;2}

<u>CERTIFICATE OF SERVICE</u>

       I, Daniel P. Flynn, hereby certify that I have on this 19th day of July 2005 I served the foregoing by mailing copy thereof, postage prepaid, to:

> Richard Kirby, Esquire
> Matthew P. Zayotti, Esquire
> Keegan, Werlin & Pabian, LLP
> 265 Franklin Street
> Boston, MA 02110-3113

                                            _____
                                       Daniel P. Flynn

{J:\CLIENTS\lit\304269\0002\00564970.DOC;2}