UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                    CIVIL ACTION NO. 05-40049-FDS

| | |
|---|---|
| J.J. REIDY & CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AIRWATER CORPORATION and | ) |
| AIRWATER PATENTS CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF JAMES J. REIDY

I, James J. Reidy, on oath depose and say on personal knowledge as follows:

1.      I am president, director and an owner of J. J. Reidy & Co., Inc. ("Reidy"), a small, closely-held Massachusetts corporation located in Holden, Massachusetts.

2.      In February of 2002, Universal Communication Systems, Inc. ("UCS"), the parent company and 100% owner of AirWater Corporation ("AirWater") and AirWater Patents Corporation's ("AirWater Patents"), contacted me, seeking to acquire rights to Reidy's United States Patents related to a water purification system.

3.      UCS followed up this initial email with a series of phone calls and written correspondences soliciting Reidy to enter into a licensing agreement with its wholly owned subsidiary, AirWater.  I spoke with Michael Zwebner ("Zwebner"), the Chief Executive Officer of UCS, and President of AirWater and AirWater Patents, on an almost daily basis in the next months and had frequent email correspondence with Zwebner.

4.      These phone and email negotiations between me, on behalf of Reidy and in Massachusetts, and Zwebner, in Israel, Miami, Toronto, Los Angeles, the United Kingdom, and New York, continued for several months.

5.    On or about March 15, 2003, at Zwebner's suggestion, Zwebner traveled to Boston to meet with me to further negotiate an agreement regarding the patents.

6.    Sometime in late March, Zwebner and I agreed to the basic terms of what became the Global Manufacturing and Marketing Licensing Agreement (the "Agreement"). In the following months, email and phone calls from Zwebner to me in Massachusetts remained frequent, often occurring many times in a single day.  These communications were undertaken for the purpose of securing and formalizing what would become the Agreement.

7.    In or about late June of 2003, Reidy and Zwebner executed the written Agreement, back-dating it to March 21, 2003.  Zwebner soon thereafter solicited Reidy's assent to assign the Agreement to UCS's newly formed subsidiary, AirWater Patents.

8.    Zwebner and Defendants also purposefully and frequently contacted me in Massachusetts during the performance of the Agreement.

9.    Zwebner traveled to Massachusetts and regularly contacted me there seeking advice and consultation on matters pertaining to the Agreement, technical assistance regarding design and production of products, the maintenance of existing patents, and application for additional patents.

10.    Per Zwebner's suggestion, he and I met in Boston on July 28, 2003 to discuss technical details regarding the production and design of AirWater products.

11.    AirWater repeatedly contacted me and sought my assistance in connection with various lawsuits involving Zwebner, UCS, and AirWater throughout the country. Zwebner also contacted my attorney at the time, Brian Dingman, regarding litigation.

12.    Pursuant to the Agreement, AirWater made monthly payments of royalties to Reidy in Massachusetts and frequently engaged in telephone and  email communications with me regarding these payments.

13.    On November 15, 2004, in response to my reminders about the lack of royalty payments, AirWater sent me a letter stating that it had the right to halt its payments because of disputes over patents.  This letter was dated November 10, 2004.

14.    In response to AirWater's lack of cooperation in resolving the payment dispute, I exercised Reidy's rights under the Agreement, and, through counsel, sent AirWater a notice of default for failure to make minimum monthly royalty payments on December 15, 2004.

15.    Zwebner replied in a December 27, 2004 letter denying that he owed Reidy any payments.

16.    In light of AirWater's refusal to negotiate, Reidy filed a complaint in Massachusetts Superior Court for breach of contract against AirWater on December 16, 2004.  Because of uncertainty as to the identities of the proper Defendants, service of the Complaint was withheld.

17.    Subsequently, I realized that the Agreement had been assigned to AirWater Patents in June of 2003.  Accordingly, I, through counsel, sent a second notice of default to AirWater Patents on January 13, 2005, which also triggered a fourteen (14) day cure period.  When AirWater Patents did not respond to this letter within the fourteen days, on January 31, 2005, I notified AirWater Patents that the Agreement had been terminated.

18.    On February 17, 2005, Reidy amended its Complaint to add AirWater Patents as a defendant.  I, through counsel, attempted to make service on Defendants by certified mail, return receipt requested, on February 18, 2005.  Defendants, and, in particular Zwebner, refused to accept the certified mailing and it was eventually returned to my counsel in mid-March.

19.    I did not make any representations to Zwebner or Defendants that I would forego litigation and enter into negotiations.

20.    I had no knowledge that Defendants planned to file a lawsuit against me at any time.

21.    It would constitute a greater hardship on me than on Defendants to be required to travel to another venue. I am 64 years of age and my family and I were dependent on the royalty income from Defendants, which income terminated at the end of October 2004.

22.    Defendants, by contrast, are subsidiaries of a public company and AirWater has recently reported receipts of $100,000 for an exclusive license in India.

23.    Attached hereto as Exhibit A is a true and accurate copy of a February 17, 2003 email from USC to me.

24.    Attached hereto as Exhibit B is a true and accurate copy of a March 16, 2003 email from me to Zwebner.

25.    Attached hereto as Exhibit C are true and accurate copies of certain 2003 correspondence between Zwebner and me.

26.    Attached hereto as Exhibit D are true and accurate copies of May and June 2003 emails between Zwebner and me.

27.    Attached hereto as Exhibit E is a true and accurate copy of the Agreement.

28.    Attached hereto as Exhibit F is a true and accurate copy of a July 4, 2003 email from Zwebner to me.

29.    Attached hereto as Exhibit G are true and accurate copies of emails between Zwebner and me regarding Reidy's provision of technical advice to Defendants.

30.    Attached hereto as Exhibit H are true and accurate copies of emails between Zwebner and me regarding Reidy's provision of information concerning various litigation to Defendants.

31.    Attached hereto as Exhibit I are true and accurate copies of 2003 emails between Zwebner and me concerning royalty payments.

32.    Attached hereto as Exhibit J is a true and accurate copy of a November 10, 2004 letter from Zwebner to me.

33.    Attached hereto as Exhibit K is a true and accurate copy of the December 15, 2004 notice of default.

34.    Attached hereto as Exhibit L is a true and accurate copy of the Complaint and accompanying letter to the court on December 16, 2004.

35.    Attached hereto as Exhibit M is a true and accurate copy of the February 18, 2005 letter sent to Zwebner in an attempt to effectuate service on Defendants and true and accurate copies of the envelopes which were returned after they were refused by Zwebner.

36.    Attached hereto as Exhibit N are true and accurate copies of the electronic dockets relating to two lawsuits in the United States District Court for the District of Massachusetts in which Zwebner is a plaintiff.

37.    Attached hereto as Exhibit O are true and accurate copies of the electronic dockets relating to two lawsuits in Massachusetts Superior Court in which Zwebner is a party.

38.    Attached hereto as Exhibit P are true and accurate copies of documents found through internet research which discuss and reference Zwebner's litigation in various courts throughout the country.

39.    Attached hereto as Exhibit Q are true and accurate copies of email communication between Reidy, in Massachusetts, and Defendants.

Subscribed and sworn to under the pains and penalties of perjury this 19th of July, 2005.

 

 

_____

James J. Reidy, President
J. J. Reidy & Co., Inc.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.