UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                                CIVIL ACTION NO. 05-40049-FDS

J.J. REIDY & CO., INC.,                       )
                                              )
            Plaintiff,                        )
                                              )
v.                                            )
                                              )
AIRWATER CORPORATION and                      )
AIRWATER PATENTS CORPORATION,                 )
                                              )
            Defendants.                       )

### AFFIDAVIT OF DANIEL P. FLYNN, ESQUIRE

I, Daniel P. Flynn, Esquire, on oath depose and say on personal knowledge as follows:

1.  I am an attorney at the firm Bowditch & Dewey, LLC, which represents the Plaintiff in this lawsuit.

2.  Attached hereto as Exhibit A is a true and accurate copy of relevant portions of Universal Communication Systems, Inc.'s Annual Report filed with the Securities and Exchange Commission on January 13, 2004.

Subscribed and sworn to under the pains and penalties of perjury this 19th of July, 2005.

_____
Daniel P. Flynn, Esquire

{J:\CLIENTS\lit\304269\0002\00565809.DOC;1}

# EXHIBIT A

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 GB0UyyJ81O07/YZPHPzsC6jxSWwDaA6jF9FCARc7jgnZP98OW9xw70o/+9iuiCGX
 /2Q5LWwQVSqjWdZblRQq7g==

<SEC-DOCUMENT>0001116502-04-000058.txt : 20040113
<SEC-HEADER>0001116502-04-000058.hdr.sgml : 20040113
<ACCEPTANCE-DATETIME>20040113171914
ACCESSION NUMBER:            0001116502-04-000058
CONFORMED SUBMISSION TYPE:   10KSB
PUBLIC DOCUMENT COUNT:       6
CONFORMED PERIOD OF REPORT:  20030930
FILED AS OF DATE:            20040113

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:            UNIVERSAL COMMUNICATION SYST
                CENTRAL INDEX KEY:                 0001098207
                STANDARD INDUSTRIAL CLASSIFICATION: TELEPHONE COMMUNICATIONS (NO
                IRS NUMBER:                        860887822
                STATE OF INCORPORATION:            NV
                FISCAL YEAR END:                   0930

        FILING VALUES:
                FORM TYPE:            10KSB
                SEC ACT:              1934 Act
                SEC FILE NUMBER:      000-30405
                FILM NUMBER:          04523387

        BUSINESS ADDRESS:
                STREET 1:             407 LINCOLN ROAD
                STREET 2:             SUITE 6K
                CITY:                 MIAMI
                STATE:                FL
                ZIP:                  33139
                BUSINESS PHONE:       5108396100

        MAIL ADDRESS:
                STREET 1:             407 LINCOLN ROAD
                STREET 2:             SUITE 6K
                CITY:                 MIAMI
                STATE:                FL
                ZIP:                  33139

        FORMER COMPANY:
                FORMER CONFORMED NAME: WORLD WIDE WIRELESS COMMUNICATIONS INC
                DATE OF NAME CHANGE:   20000124
</SEC-HEADER>
<DOCUMENT>
<TYPE>10KSB
<SEQUENCE>1
<FILENAME>ucsy-10ksb.txt
<DESCRIPTION>ANNUAL REPORT
<TEXT>
```

U.S. SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 10-KSB

[x]   ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

       For the fiscal year ended September 30, 2003

[ ]   TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

       For the transition period from _____ to _____

Commission file number: 000-30405

Universal Communication Systems, Inc.
------------------------------------------
(Name of small business issuer in its charter)

| Nevada | 860887822 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| 407 Lincoln Road, Ste 12F, Miami Beach, Florida | 33139 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

| 407 Lincoln Road, Ste 6K, Miami Beach, Florida | 33139 |
|---|---|
| (Address of former principal executive offices) | (Zip Code) |

Issuer's telephone number: (305) 672-6344

Name of each exchange on which registered:  OTC Bulletin Board under the trading symbol UCSY

Securities registered under Section 12(b) of the Act:   None

Securities registered under Section 12(g) of the Exchange Act:

Common Stock, $.001 par value per share
(Title of class)

       Check whether the issuer (1) filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the past 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.
Yes [X] No [ ].

       Check if disclosure of delinquent filers in response to Item 405 of Regulation S-B is not contained in this form, and no disclosure will be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-KSB or any amendment to this Form 10KSB. [ ]

Issuer's revenues for its most recent fiscal year:  $0

Aggregate market value of voting stock held by non-affiliates of the issuer as of December 30, 2002: $5,670,640

State the number of shares outstanding of each of the issuer's classes of common equity, as of the latest practicable date. 103,123,070 shares of common stock as of December 30, 2003.

Documents incorporated by reference:          None.

Transitional Small Business Disclosure Format:  Yes [ ]   No   [X]


<PAGE>
                    Universal Communication Systems, Inc.

                                Index to Annual
                             Report on Form 10-KSB
                     For The Fiscal Year Ended September 30, 2003

                                                                            Page

ITEM 1.     DESCRIPTION OF BUSINESS..............................................3

ITEM 2.     DESCRIPTION OF PROPERTY..............................................6

ITEM 3.     LEGAL MATTERS........................................................7

ITEM 4.     SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS..................7

ITEM 5.     MARKET FOR COMMON EQUITY AND RELATED STOCKHOLDER MATTERS.............8

ITEM 6.     MANAGEMENT'S DISCUSSION AND ANALYSIS OR PLAN OF OPERATIONS..........11

ITEM 7.     FINANCIAL STATEMENTS................................................16

ITEM 8.     CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING
               AND FINANCIAL DISCLOSURE.........................................16

ITEM 8A.     CONTROLS AND PROCEDURES............................................16

ITEM 9.     DIRECTORS, EXECUTIVE OFFICERS, PROMOTERS AND CONTROL PERSONS;
               COMPLIANCE WITH SECTION 16(A) OF THE EXCHANGE ACT ...............17

ITEM 10.    EXECUTIVE COMPENSATION..............................................19

ITEM 11.    SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT......19

ITEM 12.    CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS......................20

ITEM 13.    EXHIBITS AND REPORTS ON FORM 8-K....................................21

ITEM 14.    PRINCIPAL ACCOUNTANT FEES AND SERVICES..............................22

SIGNATURES..............................................................................23

&lt;PAGE&gt;

PART I

Introductory Statement
- ----------------------

    All statements contained herein that are not historical facts, including but not limited to, statements regarding the Company's current business strategy, the Company's projected sources and uses of cash, and the Company's plans for future development and operations, are based upon current expectations. These statements are forward-looking in nature and involve a number of risks and uncertainties. Actual results may differ materially. Among the factors that could cause actual results to differ materially are the following: the availability of sufficient capital to finance our business plans on terms satisfactory to us; competitive factors; changes in labor, equipment and capital costs; changes in regulations affecting our business; future acquisitions or strategic partnerships; general business and economic conditions; and factors described from time to time in the reports filed by us with the Securities and Exchange Commission. Readers are cautioned not to place undue reliance on any such forward-looking statements, which statements are made pursuant to the Private Litigation Reform Act of 1995 and, as a result, are pertinent only as of the date made.

    All of the share price information presented herein has been adjusted to reflect the 1 for 1,000 reverse split of our outstanding common stock effective August 23, 2002.

ITEM 1.  DESCRIPTION OF BUSINESS

Introduction

    In February of 1997, Worldwide Wireless, Inc., a Nevada corporation, was formed to coordinate the operations of TSI Technologies, Inc., a Nevada corporation, and National Micro Vision Systems, Inc., a Nevada corporation. Its purpose was to complete the development of its patented advanced distributed wireless telephone and network designs and to finance, manufacture, and market these units and systems. TSI Technologies, Inc. was the research and development company formed for the purpose of creating and developing the distributed wireless call processing system. National Micro Vision Systems, Inc. was formed to operate a network of wireless Internet sites. In April of 1998, Worldwide Wireless, Inc., TSI Technologies, Inc. and National Micro Vision Systems, Inc. acquired Upland Properties, Inc., a Nevada corporation, for stock and transferred their assets to Upland Properties, Inc. Upland Properties, Inc. then changed its name to World Wide Wireless Communications, Inc. and began trading on the OTC Bulletin Board (OTC:BB) under the symbol WLGS.

    During the fiscal year ended September 30, 2002, we moved our offices from Oakland, California to Miami Beach, Florida and changed our name to Universal Communication Systems, Inc. We then changed our OTC:BB symbol to UCSI (and after our one-to-one-thousand reverse stock split, to UCSY).

-3-

&lt;PAGE&gt;

    On November 1, 2001, we changed management. On March 21, 2003, we acquired exclusive worldwide rights to patents held by J.J. Reidy & Co., relating to water production/generation system. In connection with this activity, two subsidiaries were formed, AirWater Corporation, to produce and market the system and AirWater Patents Corporation, to hold our licensed patent

rights.

We completed an agreement to purchase all of the stock of Millennium Electric T.O.U. Ltd., ("Millenium") an Israeli company, on September 29, 2003. Millenium specializes in development and installation of solar power systems worldwide. In connection with the Millenium acquisition, a new U. S. subsidiary, Solar One Corporation, was formed to market solar power products and systems.

We are currently focusing our operations on the design, manufacture and sale of water production and generation systems along with solar power systems.

Our strategy

We will require short-term outside investment on a continuing basis to finance our current operations and capital expenditures. If we do not obtain short term financing we may not be able to continue as a viable concern. We do not have a bank line of credit and there can be no assurance that any required or desired financing will be available through bank borrowings, debt, or equity offerings, or otherwise, on acceptable terms. If future financing requirements are satisfied through the issuance of equity securities, investors may experience significant dilution in the net book value per share of common stock.

Under the auspices of new management, we have made considerable progress in restructuring prior obligations and removing debt. We have actively engaged in a number of efforts to revise our business plan to develop new revenue sources and direction for the Company. We have minimized our participation in the wireless internet market, disposed of assets for cash and we continue our negotiations with creditors to compromise, extend, convert and/or forgive debt prior to the new management.

On February 10, 2000 we acquired all of the shares of Digital Way, S.A., a Peruvian telecommunications company. In June of 2001, we received a notice of default from the sellers of Digital Way, claiming a breach of the terms of our purchase agreement. On May 10, 2002, we executed a settlement agreement with those sellers. Under the terms of the agreement, we re-aligned the stock ownership of Digital Way, by returning 73% of the common shares owned by us to the former owners. In addition, we retained a 50% interest in the first $6.2 million of equity value of Digital Way, in the event of a sale or other disposition. Any value beyond the first $6.2 million will be divided based on shareholdings. Our chairman, Michael Zwebner, remains on the Board of Directors of Digital Way, S. A. The settlement agreement fully cancels all debts, claims and counter claims between us and the sellers, and allows for future co-operation in the ongoing development or sale of Digital Way. Although we have reached this settlement, management of Digital Way has not provided the necessary financial information for Digital Way to be included in our financial reporting, and the results of the Company's investment in Digital Way is unclear at this time. The Company has fully impaired this investment. Management is now actively seeking a third party buyer for our 23% interest in Digital Way SA.

-4-

<PAGE>

Although we initiated negotiations with businesses in Puerto Rico and Portugal in 1999, no further negotiations or affiliations are currently pending in those areas. On July 20, 2001, WSI, Inc., a Puerto Rican corporation, and its principal officer and shareholder Howard Hager, filed suit against the Company in the U.S. District Court in Puerto Rico for breach of contract and

damages in the amount of $4,675,000. The claims arise out of an alleged agreement on the part of the Company to acquire WSI and provide it with substantial financing. A default judgment was entered in WSI's favor. On November 26, 2002 a settlement agreement was reached with Mr. Hager and the trustee in bankruptcy for WSI. Under the agreement, we issued $200,000 in value of shares of common stock. In addition to the stock, $50,000 was paid to the trustee of WSI and a two year consulting contract, valued at $120,000, was executed with Mr. Hager. The settlement had a total cost of $370,000.

On April 30, 2003 we executed a letter of intent to acquire CinemaElectric, Inc., a Los Angeles based multimedia messaging service company for a purchase price of $10 million. On August 12th, 2003, and by mutual agreement, we withdrew from this Letter Of Intent. We withdrew our letter of intent so that Brenex Oil Corporation could issue their letter of intent to acquire CinemaElectric, Inc., which they did on August 12, 2003. Under the proposed transaction, we will receive 10% of the entity resulting from the acquisition of CinemaElectric by Brenex Oil Corporation. Our Board of Directors is evaluating distributing these shares to our shareholders.

Early in 2003, we identified a new business venture and adopted a new business plan. We formed a wholly owned subsidiary, AirWater Corporation, whose purpose and mission is to design, build and market machines that produce drinkable water from the air. The first step in the endeavor was to obtain licensing rights to the technology. To that end, we acquired four patents by agreement dated March 24, 2003, relating to this technology from J. J. Reidy Company of Holden, Massachusettes. Under the terms of the agreement, we paid $400,000, and we are obligated to pay a royalty payment of between 5 to 7.5% on all sales of equipment which uses the patented technology. Of $400,000, the company paid $100,000 in cash, and the balance of $300,000 was settled by the issuance of restricted common shares.

From March 2003 through August 2003, we entered into various consulting, marketing and sales agreements with several international entities, in the US, France, Brazil and Israel. The activities covered by these agreements include, product design, electrical and mechanical engineering, systems integration, research and development, conceptual designs, global contacts, mergers and acquisitions, product and company publicity, marketing, sales and general business consulting.

In certain global areas where electricity and or gas power sources are either not available or in short supply, there is a need for a power alternative to conventional sources. As previously mentioned, on September 29, 2003 we completed the acquisition of Millennium Electric T.O.U., Ltd. to fulfill this technological need of providing Photo Voltaic (PV) Electric Energy to provide the necessary power for the air-water system.

-5-

<PAGE>

This company and its president, Mr. Ami Elazari, are one of Israel's foremost entities operating in the latest high technology field of solar energy, solar panels, and solar powered consumer products. The company and Mr. Elazari are the holders of more than 21 international patents relating to both Photo Voltaic ("PV") and solar energy systems and products. They have for many years been involved in multi million dollar projects on a world wide basis.

For the six months prior to year end, we have worked to design, research and develop as well as source the manufacture of our AirWater machines. The result of this search has concluded with manufacturing and licensing agreements with entities in Israel and Brazil, and more recently in Australia.

We have now embarked on a worldwide sales and marketing program.

On September 17, 2003, we announced that we have entered into a letter of intent to acquire a 51% interest in GiraSOLAR, BV, a Dutch company that operates and specializes in the photo voltaic solar energy industry. This Dutch group is made up of two separate operating subsidiaries, with projected combined sales in excess of $25 million. As of December 30, 2003, both parties are conducting due diligence in connection with this acquisition.

Patents/Intellectual Property

We currently hold a patent for our distributed wireless call processing system. We are looking to license this technology to a third party developer in order to potentially create a royalty stream of income. However, we cannot guarantee that we will enter into such an agreement.

As previously mentioned, we hold the exclusive global patent and licensing rights to four air to water patents under an agreement with J.J. Reidy Company, relating to atmospheric extraction of water and its purification process. Further, through our Millenium subsidiary, we own 21 international patents in the photo voltaic solar power and energy system area. Employees

As of December 31, 2003, we had no full time employees in the United States.

ITEM 2.   DESCRIPTION OF PROPERTY

We own no real estate. Effective February 1, 2002, we leased a 1400 square foot corporate and administrative office facility at 407 Lincoln Road, Suite 6K, Miami Beach, FL 33139. The lease provides for a three-year term. The lease provided for cancellation with ninety days notice after the first year. On November 1, 2002 we exercised this provision and we currently rent on a month to month basis with the landlord at the same address. On October 1, 2003 we moved our office to suite 12F in the same building.

Millenium Electric T.O.U., Ltd., rents administration and manufacturing offices in the Herzliah Industrial zone in Israel under a lease which ends in 2005. The minimum remaining payments under this lease are $60,180 for 2004 and $55,165 for 2005.

-6-

<PAGE>

ITEM 3.   LEGAL MATTERS

On August 26, 1999, we filed suit against Credit Bancorp, in U.S. District Court in San Francisco, regarding improprieties on the part of Credit Bancorp relating to a loan. The case was settled on October 11, 1999. As part of the settlement agreement, Credit Bancorp agreed to convert the original loans granted to us to a convertible debenture in the amount of $740,000. On October 11, 1999, we issued a convertible unsecured debenture for $740,000 to Credit Bancorp in settlement of this obligation. The terms of this convertible unsecured debenture are 7% interest per annum payable, semiannually on the last day of February and September, with the principal due September 30, 2002. All amounts of unpaid principal and accrued interest of this debenture are convertible at any time at the conversion price of $1,600 per share of unregistered, restricted shares of our common stock. Credit Bancorp has agreed

    (i) Filed with the registration statement on Form SB-2 with the Securities and Exchange Commission on May 31, 2000.

<PAGE>                                -21-

    (ii) Filed with the registration statement on Form SB-2 with the Securities and Exchange Commission on December 15, 2000.

    (iii) Filed with Form 10-KSB for the period September 30, 2002.

    (iv) Filed with Form DEF14A on April 25, 2002.

(b) The following Form 8-K was filed during the fourth quarter.

September 29, 2003, Item 2. Acquisition or Disposition of Assets. Reporting the completion of the acquisition of Millenium Electric T.O.U., Ltd, pursuant to a stock purchase agreement dated August 22, 2003.

ITEM 14. PRINCIPAL ACCOUNTANT FEES AND SERVICES

Pursuant to SEC Release No. 33-8183 (as corrected by Release No. 33-8183A), the disclosure requirements of this Item are not effective until our Annual Report on Form 10-KSB for our first fiscal year ending after December 15, 2003.

<PAGE>                                -22-

SIGNATURES

In accordance with Section 13 or 15(d) of the Securities Exchange Act of 1934, the Registrant caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, on January 13, 2004.

                        Universal Communication Systems, Inc.

                    By:  /s/ MICHAEL ZWEBNER
                        -------------------
                        Michael J. Zwebner
                        Chief Executive Officer

In accordance with the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the Registrant in the capacities indicated on January 13, 2004:

<TABLE>
<CAPTION>

| Signature | Title | Date |
|---|---|---|
| <S> | <C> | <C> |
| /s/ MICHAEL J. ZWEBNER | Director, Chief Executive Officer, and Chairman of the Board (Principal | January 13, 2004 |

```
Michael J. Zwebner           Financial and Accounting Officer)

/s/ ALEXANDER WALKER JR      Director and Secretary              January 13, 2004
- ------------------------
Alexander Walker, Jr.

/s/ RAMSEY SWEIS             Director                            January 13, 2004
- ------------------------
Ramsey Sweis

/s/ CURTIS ORGIL             Director and Chief Financial Officer   January 13, 2004
- ------------------------
Curtis Orgil

/s/ AMI R. ELAZARI           Director                            January 13, 2004
- ------------------------
Ami R. Elazari
</TABLE>
```

-23-

\<PAGE\>

UNIVERSAL COMMUNICATION SYSTEMS, INC.

REPORT ON AUDIT OF FINANCIAL STATEMENTS

AS OF SEPTEMBER 30, 2003

REUBEN E. PRICE & COMPANY
PUBLIC ACCOUNTANCY CORPORATION

\<PAGE\>

UNIVERSAL COMMUNICATION SYSTEMS, INC.

CONTENTS