UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40049-FDS

| | |
|---|---|
| J.J. REIDY & CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AIRWATER CORPORATION and | ) |
| AIRWATER PATENTS CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF J.J. REIDY & CO., INC. IN SUPPORT OF MOTION TO COMPEL DEFENDANTS' INITIAL DISCLOSURES, STRIKE DEFENDANT AIRWATER PATENTS CORPORATIONS OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS AND COMPEL AIRWATER PATENTS CORPORATION TO SUPPLEMENT ITS RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS AND PRODUCE RESPONSIVE DOCUMENTS

Pursuant to Rule 37 (a) of the Federal Rules of Civil Procedure, the Plaintiff J.J. Reidy & Co., Inc. ("J. J. Reidy") submits this Memorandum in Support of its Motion that this Court issue an Order: (a) compelling Defendants AirWater Corporation ("AirWater Corp.") and AirWater Patents Corporation ("AirWater Patents") to file Initial Disclosures; (b) striking AirWater Patents objections to J.J. Reidy's First Set of Interrogatories and Request for Production of Documents; and (c) compelling AirWater Patents to supplement its responses to J.J. Reidy's First Set of Interrogatories and Request for Production of Documents and produce documents responsive thereto.  In support of its Motion, the Plaintiff J.J. Reidy states as follows:

1.      J.J. Reidy filed a Complaint on December 16, 2004 in the Worcester Superior Court alleging that the Defendants breached an agreement for payment of royalties for the

licensing of J. J. Reidy's United States Patents.  The Defendants removed the case to the United States District Court on March 18, 2005.

2.      J.J. Reidy served a First Set of Interrogatories and a Request for Production of Documents to AirWater Patents on May 17, 2005, copies of which are attached hereto as Exhibit A.

3.      The Defendant, AirWater Patents, responded to the Interrogatories and the Request for Production of Documents with the blanket objection that there is purportedly no colorable basis for personal jurisdiction and therefore the Interrogatories and Requests were unduly burdensome.  Defendant AirWater Patents Corporation's Responses to Plaintiff's First Set of Interrogatories are attached hereto as Exhibit B.  Defendant AirWater Patents Corporation's Responses to Plaintiff's First Request for Production of Documents are attached hereto as Exhibit C.

4.      The Defendants, AirWater Corp. and AirWater Patents, have not yet filed Initial Disclosures as required by Rule 26 of the Federal Rules of Civil Procedure.  The Scheduling Conference was held on October 27, 2005.  Pursuant to the Court's Scheduling Order of the same date, the Initial Disclosures were due on November 18, 2005.  The Scheduling Order is attached hereto as Exhibit D.

5.      The Court (F. Dennis Saylor IV, J.) denied the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer for Forum Non Conveniens and vacated the stay of discovery on September 27, 2005.  The Court's Memorandum and Order is attached hereto as Exhibit E.

6.      Despite the Plaintiff's request that the Defendants supplement their responses to the discovery requests and provide Initial Disclosures, they have not done so.

7.     The parties by their attorneys, Maura A. Greene for J.J. Reidy & Co., Inc. and Matthew Zayotti for AirWater Corporation and AirWater Patents Corporation, held a telephone conference on December 15, 2005 pursuant to Local Rules 7.1 and 37.1 regarding the overdue discovery and required disclosures.  Counsel for the Defendants agreed to provide the discovery and Initial Disclosures by December 31, 2005.  The letter of Attorney Maura A. Greene confirming the conference and the extension of time is attached hereto as <u>Exhibit F</u>.

8.     Despite the extension, the Defendants have not yet responded.

9.     Accordingly, the Plaintiff has filed this Motion.

WHEREFORE, the Plaintiff J.J. Reidy & Company, Inc. requests that this Court issue an Order:

(a)     Compelling the Defendants to file Initial Disclosures as required under Rule 26 of the Federal Rule of Civil Procedure within seven (7) days of issuance of the order;

(b)     Striking the Defendant AirWater Patents objections to J.J. Reidy's First Set of Interrogatories and Request for Production of Documents;

(c)     Compelling the Defendant AirWater Patents to supplement its responses to J.J. Reidy's First Set of Interrogatories within seven (7) days of issuance of the order; and

(d)     Compelling the Defendant AirWater Patents to supplement its responses to J.J. Reidy's Request for Production of Documents and produce documents responsive thereto within seven (7) days of issuance of the order.

{Client Files\LIT\304269\0002\F0334831.DOC;1}

J.J. REIDY & COMPANY, INC.
By its attorneys,


/s/ Thomas J. Conte
Thomas J. Conte (BBO #566092)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511
tconte@bowditch.com


Dated: January 24, 2006




CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 24, 2006.

/s/ Thomas J. Conte
Thomas J. Conte

4

# EXHIBIT A
## (Ints. Pages 1-9 & RPD pages 1-7)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                                    CIVIL ACTION NO. 05-40049-FDS

J.J. REIDY & CO., INC.,                 )
                                        )
                Plaintiff,              )
                                        )
v.                                      )
                                        )
AIRWATER CORPORATION and                )
AIRWATER PATENTS CORPORATION,           )
                                        )
                Defendants.             )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT AIRWATER PATENTS CORPORATION

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff J.J. Reidy & Company, Inc. ("Reidy") directs the following first set of interrogatories to Defendant AirWater Patents Corporation who shall serve an answer, under oath and in writing, within thirty (30) days of service.

### INSTRUCTIONS

(A)    You are to supplement your answers to the following interrogatories in accordance with Rule 33 of the Federal Rules of Civil Procedure.

(B)    If you object to, or otherwise decline to answer, any portion of an interrogatory, provide all information requested by that portion of the interrogatory to which you do not object or otherwise decline to answer.  If you object to an interrogatory on the ground that it is too broad, provide all information that you concede is relevant.  If you object to an interrogatory on the ground that to provide an answer would constitute an undue burden, provide all requested information that can be supplied without undertaking what you claim to be an undue burden.

<u>DEFINITIONS</u>

(A)     As used herein, the terms "plaintiff" and "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party such as "you" or "your" means the party and, where applicable, its agents, officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, representatives and all other persons acting or purporting to act on its behalf.

(B)     As used herein, the term "document" includes, but is not limited to correspondence, memoranda, email, notes, speeches, press releases, diaries, calendars, appointment books, statistics, letters, telegrams, minutes, contracts, agreements, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, offers, prospectuses, inter-office and intra-office communications, notations or memoranda of any sort of conversations, telephone calls, meetings or other communication, notations or memoranda or any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, purchase orders, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or aural, records or representations of any kind (including without limitation, photographs, drawings, charts, sketches, graphs, microfilm, videotapes, recordings, motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and recordings) and any other information capable of comprehension by audible or visible means.

(C)     As used herein, the word "person" includes natural persons, proprietorship, partnerships, firms, corporations, public corporations, municipal corporations, federal, state and local governments, all departments and agencies thereof, any other governments, all departments

and agencies thereof, any other governmental agencies, political subdivisions, groups, associations or organizations, including the parties hereto.

(D)    As used herein, the term "identify" means:

When used with reference to a person, to state the person's: full name, present business address, telephone number, or, if unavailable, last known business address, and employer.

When used with reference to a document or written communication, whether or not that document is presently in existence, to state: the date the document bears or bore, or, if undated, the date the document was written or generated; a description of the document, as, for instance, "letter", "memorandum", etc.; a summary of its contents; and its present location and the custodian, or if unknown, its last known location and custodian.  It shall be sufficient in lieu of such identification to produce copies of such documents attached to answers of these interrogatories.  Each such document reproduced shall be designated with paragraph and subparagraph number of the Interrogatory or Interrogatories requiring its identification.

When used in connection with a communication, to state: a description of the subject matter communicated; the date when the communication took place; the means of communication (e.g., personal conversation, correspondence, telephone or telegram); place or places where the communication occurred; and the identity of each person who participated in the communication.

(E)    As used herein, the term "date" means the exact day, month and year, if ascertainable, or if not, your best approximation thereof.

(F)    As used herein, the term "Complaint" means the complaint and/or amended complaint(s) filed by the Plaintiff in the above-captioned lawsuit.

(G)    The term "Licensed Patents" as used herein shall refer to the patents licensed to AirWater Corporation and/or AirWater Patents Corporation pursuant to the Global Manufacturing and Marketing Licensing Agreement between the parties.

(H)    The term "Licensed Products" as used herein shall refer to the Water Production/Generation System Products, and components thereof, falling under the scope of any Licensed Patent.

## INTERROGATORIES

Interrogatory No. 1

With respect to each of these interrogatories, identify each person consulted in preparing a response by name, title, and relationship to AirWater Corporation and/or AirWater Patents Corporations (collectively referred to herein as "AirWater").

Interrogatory No. 2

Identify all persons with knowledge of any matter set forth in the Complaint and as to each, set forth the subject matter(s) upon which he or she has knowledge.

Interrogatory No. 3

Identify each person whom you expect to call as an expert witness at trial and state:

    a.    the subject matter upon which the expert is expected to testify;

    b.    the substance of the facts and opinions to which the expert is expected to testify; and

    c.    the summary of the grounds for each opinion, including the facts or assumed facts on which the expert has relied to form the basis for the opinion.

Interrogatory No. 4

Identify all persons, other than expert witnesses, whom you expect to call as witnesses at trial and for each state the general nature of the facts to which he or she is expected to testify.

Interrogatory No. 5

Identify each document that defendant intends to use as an exhibit at trial.

Interrogatory No. 6

Identify and describe in detail all communications between Reidy and AirWater concerning the Global Manufacturing and Marketing License Agreement (the "License"), making certain to include in your response the date of each such communication, the substance of each such communication, the manner of communication (i.e., correspondence, telephone conference, meeting, etc.), and the identity of the parties to each such communications.

Interrogatory No. 7

Identify and describe in detail each and every payment made by AirWater to Reidy pursuant to the License, making certain to include in your response the date of each such payment, the amount of each such payment, the person or entity who made each such payment, and the method of delivery of each such payment.

Interrogatory No. 8

Identify and describe in detail each and every sublicense agreement that AirWater has executed concerning the Licensed Patents, making certain to include in your response the date of the execution of each such sublicense, the substance of each such sublicense and the identity of the parties to each such sublicense.

Interrogatory No. 9

Identify and describe in detail all communications between AirWater and any person concerning the sublicense of any Licensed Products, making certain to include in your response the date of each such communication, the substance of each such communication, the manner of

communication (i.e., correspondence, telephone conference, meeting, etc.) and the identity of the parties to each such communication.

Interrogatory No. 10

Identify and describe in detail any and all accountings of units shipped, units billed, and receivables aging that AirWater created, making certain to include in your response the date of each such accounting, the date on which such accounting was transmitted to Reidy, and a brief description of the substance of the document.

Interrogatory No. 11

Identify and describe in detail all resources and efforts put forth by AirWater to establish and maintain the awareness and exposure of products manufactured by or for AirWater based on the Licensed Patents and to enhance sales and future growth.

Interrogatory No. 12

Identify each and every specimen of proposed changes in goods sold under trademark that AirWater provided to Reidy, making certain to include in your response the date that each specimen was provided to Reidy, the nature of each such specimen, and the address to which each specimen was sent.

Interrogatory No. 13

Identify and describe in detail any and all non-compete and non-disclosure agreements entered into between Reidy and any third party manufacturer of Licensed Products, making certain to include in your response the date each such agreement was entered into, the substance of each such agreement, and the identity of the parties to each such agreement.

Interrogatory No. 14

Identify and describe in detail each and every insurance policy concerning the production and sale of Licensed Products that names Reidy as an additional insured with respect to any claims made against Reidy as a result of AirWater's or any of its sublicensees' sales of Licensed Products, making certain to include in your response the date of each such insurance policy, the duration of each such insurance policy, the amount of coverage provided to Reidy under each such insurance policy, the named insured of each such insurance policy, and a brief description of the substance of each such insurance policy.

Interrogatory No. 15

Identify and describe in detail all communications between AirWater and Watermaker PVT Limited of Mumbia, India, making certain to include in your response the date of each such communication, the substance of each such communication, the manner of communication (i.e., correspondence, telephone conference, meeting, etc.), and the identify of the parties to each such communication.

Interrogatory No. 16

Identify and describe in detail each sublicense contract between AirWater and any third parties that AirWater has delivered to Reidy, making certain to include the parties to each such sublicense contract, the date of contract, the essential terms of the contract, and the date of transmittal to Reidy.

Interrogatory No. 17

Identify and describe in detail any changes AirWater has made to goods sold under trademark pursuant to the License.

Interrogatory No. 18

Identify and describe in detail each and every safety feature used in the production of the

Licensed Products by AirWater.

Interrogatory No. 19

Identify and describe in detail the complete factual bases for each affirmative defense asserted by

AirWater in its answer to the Complaint.

J.J. REIDY & COMPANY, INC.

By its attorneys,

Thomas J. Conte (BBO #566092)
Daniel P. Flynn (BBO #655180)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 926-3415
FAX: (508) 929-3006

Dated:  May 17, 2005

## CERTIFICATE OF SERVICE

I, Thomas J. Conte, hereby certify, that on this 17th day of May 2005, I served a copy of the foregoing by mailing same, postage prepaid, to:

Richard B. Kirby
Matthew P. Zayotti
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, MA 02110-3113

_____
Thomas J. Conte

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                          CIVIL ACTION NO. 05-40049-FDS

J.J. REIDY & CO., INC.,                 )
                                        )
              Plaintiff,                )
                                        )
v.                                      )
                                        )
AIRWATER CORPORATION and                )
AIRWATER PATENTS CORPORATION,           )
                                        )
              Defendants.               )

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
## OF DOCUMENTS TO DEFENDANT AIRWATER PATENTS CORPORATION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff J.J. Reidy &

Company, Inc. ("Reidy") requests that Defendant AirWater Patents Corporation ("AirWater")

produce for inspection and copying the documents described below at the offices of Bowditch &

Dewey, LLP, 311 Main Street in Worcester, Massachusetts.

## DEFINITIONS AND INSTRUCTIONS

1.      The word "document" or "documents" as used herein shall mean any original

written record or graphic matter (or when the original is not in plaintiff's possession, custody, or

control, a carbon or other identical copy), however produced or reproduced and each copy of the

original that contains any attachments, notes or markings not contained in or on the original,

including without limitation the following, whether printed, recorded or produced by hand:

agreements, communications, correspondence, email, telegrams, memoranda, summaries or

records of personal conversations or interviews, diaries, graphs, reports, notebooks, charts, plans

and specifications, drawings, notes, reports, sketches, maps, summaries or records of meetings or

conferences, summaries or reports of investigations or negotiations, progress reports, opinions or reports of consultants, photographs, motion picture film, brochure, pamphlets, advertisements, circulars, press releases, drafts, letters, any marginal comments appearing on any documents, sound records and transcripts thereof, accounts ledgers, financial records, corporate records, newspapers, magazines and other publications and clippings therefrom, estimates, engineer's reports, licenses, permits, requisitions, invoices, leases, assignments, microfilm, and computer printouts or other data together with any materials required for the reasonable interpretation thereof, in your possession or control, or that of your agents, employees, servants or assigns. A document in the possession, custody or control of another person is considered to be in your possession, custody or control if you have a right or privilege to examine it upon request or demand.

2.     As used herein, the terms "plaintiff" and "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party such as "you" or "your" means the party and, where applicable, its agents, officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, representatives and all other persons acting or purporting to act on its behalf.

3.     The term "Complaint" as used herein refers to the complaint and/or amended complaint(s) filed by the Plaintiff in the above-captioned lawsuit.

4.     If any documents responsive to this request have been destroyed, please describe such documents and state: (a) the date of the destruction of such documents; (b) the names of the persons who destroyed such documents; and (c) the reasons why such documents were destroyed.

5.    If you contend that any requested document is privileged or is otherwise not subject to discovery, please:

    (a)    state the name of each signatory to the document and the capacity in which each signed;

    (b)    state the date of the document;

    (c)    state the name of each addressor of the document and the capacity in which each was acting at the time he or she addressed the document;

    (d)    state the name of each addressee of the document (including all persons to whom copies were sent) and the capacity in which each such addressee was addressed;

    (e)    set forth the subject matter of the document; and

    (f)    set forth the specific grounds or reasons asserted for withholding the document.

6.    The term "Licensed Patents" as used herein shall refer to the patents licensed to AirWater Corporation and/or AirWater Patents Corporation pursuant to the Global Manufacturing and Marketing Licensing Agreement between the parties.

7.    The term "Licensed Products" as used herein shall refer to the Water Production/Generation System Products, and components thereof, falling under the scope of any Licensed Patent.

## DOCUMENTS REQUESTED

Request No. 1

All documents that evidence, reflect or reference all communications between Reidy and AirWater, whether oral or written, concerning the Global Manufacturing and Marketing Licensing Agreement (the "License").

Request No. 2

All documents concerning communications between AirWater and any person or entity, whether oral or written, pertaining to the License for the period from 2000 to date.

Request No. 3

All documents concerning any payments made by AirWater to Reidy pursuant to the License.

Request No. 4

All sublicenses AirWater has entered into concerning or involving the License.

Request No. 5

All correspondence between AirWater and any person or entity concerning each sublicense entered into by AirWater with any person or entity pertaining to the License.

Request No. 6

All accountings of units shipped, units billed, and receivables aging prepared by you concerning the License or Licensed Products.

Request No. 7

All documents concerning AirWater's attempts to establish and maintain the awareness and exposure of products manufactured by or for AirWater based on the Licensed Patents and to enhance sales and future growth.

Request No. 8

All documents concerning any changes AirWater made to goods sold under trademark pursuant to the License.

Request No. 9

All insurance policies concerning sublicensees' sales of Licensed Products.

Request No. 10

All non-compete and non-disclosure agreements concerning AirWater's contracts with any third party manufacturers of Licensed Products.

Request No. 11

All documents concerning any manufacturing agreement entered into by AirWater by any person or entity for the manufacture of Licensed Products.

Request No. 12

All communications between AirWater and Watermaker PVT, Limited of Mumbia, India for the period from 2002 to date.

Request No. 13

All documents concerning sublicenses for Watermaker PVT, Limited of Mumbia, India.

Request No. 14

All documents concerning safety features used in the production of Licensed Products by AirWater.

Request No. 15

All documents and tangible things which you intend to offer into evidence at any trial of this matter.

Request No. 16

All documents concerning any Licensed Products, including, but not limited to, photographs, press releases, sales literature, annual reports, and SEC filings.

Request No. 17

All internal communications, including, without limitation, email, concerning the License, Licensed Patents and/or Licensed Products.

Request No. 18

All documents which evidence, reflect or reference the bases for each affirmative defense asserted in your answer to the Complaint.

                            J.J. REIDY & COMPANY, INC.

                            By its attorneys,

                            _Thomas J. Conte_ (signature)
                            Thomas J. Conte (BBO #566092)
                            Daniel P. Flynn (BBO #655180)
                            Bowditch & Dewey, LLP
                            311 Main Street, P.O. Box 15156
                            Worcester, MA 01615-0156
                            (508) 926-3415
                            FAX: (508) 929-3006

Dated: May 17, 2005

CERTIFICATE OF SERVICE

I, Thomas J. Conte, hereby certify, that on this 17th day of May 2005, I served a copy of the foregoing by mailing same, postage prepaid, to:

Richard B. Kirby
Matthew P. Zayotti
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, MA 02110-3113

_____
Thomas J. Conte

# EXHIBIT B
## (Responses to Ints. Pages 1-9)

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40049-FDS

| |
|---|
| **J.J. REIDY & CO., INC.,** |
| **Plaintiff,** |
| **v.** |
| **AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,** |
| **Defendants.** |

## DEFENDANT AIRWATER PATENTS CORPORATION'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 26 and 33, Defendant, Harley Marine Services, Inc. ("Harley") hereby responds as follows to Plaintiff's First Set of Interrogatories.

### GENERAL OBJECTIONS

1.     Defendant objects generally to the interrogatories to the extent that they seek information described as "relating to" or "referring to" on the grounds that such interrogatories do not describe with particularity the information sought.

2.     Defendant objects generally to the interrogatories insofar as they purport to seek information or documents protected by the attorney-client privilege, the work-product or trial preparation doctrines, or any other applicable privilege or protective doctrine.

3.     Defendant objects generally to the interrogatories to the extent they request information or documents already in the possession, control and/or custody of Plaintiff.

4.    Defendant objects generally to the interrogatories to the extent that they are overly broad, unduly vague, burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

5.    Defendant objects generally to the interrogatories to the extent that they seek information that is not relevant to the subject matter of this action and are not reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSES AND SPECIFIC OBJECTIONS

The foregoing general objections are hereby made a part of and incorporated by this reference in each and every specific response hereinafter made to the respective numbered paragraphs of the Plaintiff's' First Set of Interrogatories.  Subject to such general objections, the Defendant responds to the respective numbered paragraphs of the Plaintiff's First Set of Interrogatories as follows:

Interrogatory No.1:

With respect to each of these interrogatories, identify each person consulted in preparing a response by name, title, and relationship to AirWater Corporation and/or AirWater Patents Corporations (collectively referred to herein as "AirWater").

Response No. 1:

The Defendant objects to this interrogatory on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Interrogatory No.2:

Identify all persons with knowledge of any matter set forth in the Complaint and as to each, set forth the subject matter(s) upon which he or she has knowledge.

Response No. 2:

  The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No.3:

  Identify each person whom you expect to call as an expert witness at trial and
state:

a.  the subject matter upon which the expert is expected to testify;
b.  the substance of the facts and opinions to which the expert is expected to testify;
   and
c.  the summary of the grounds for each opinion, including the facts or assumed facts
   on which the expert has relied to form the basis for the opinion.

Response No. 3:

  The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No.4:

  Identify all persons, other than expert witnesses, whom you expect to call as
witnesses at trial and for each state the general nature of the facts to which he or she is
expected to testify.

Response No. 4:

  The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No.5:

  Identify each document that defendant intends to use as an exhibit at trial.

<u>Response No. 5</u>:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

<u>Interrogatory No.6</u>:

Identify and describe in detail all communications between Reidy and AirWater concerning the Global Manufacturing and Marketing License Agreement (the "License"), making certain to include in your response the date of each such communication, the substance of each such communication, the manner of communication (i.e., correspondence, telephone conference, meeting, etc.), and the identity of the parties to each such communications.

<u>Response No. 6</u>:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

<u>Interrogatory No.7</u>:

Identify and describe in detail each and every payment made by AirWater to Reidy pursuant to the License, making certain to include in your response the date of each such payment, the amount of each such payment, the person or entity who made each such payment, and the method of delivery of each such payment.

<u>Response No. 7</u>:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

<u>Interrogatory No.8</u>:

Identify and describe in detail each and every sublicense agreement that AirWater has executed concerning the Licensed Patents, making certain to include in your response the date of the execution of each such sublicense, the substance of each such sublicense and the identity of the parties to each such sublicense.

Response No. 8:

The Defendant objects to this interrogatory on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Interrogatory No.9:

Identify and describe in detail all communications between AirWater and any person concerning the sublicense of any Licensed Products, making certain to include in your response the date of each such communication, the substance of each such communication, the manner of communication (i.e., correspondence, telephone conference, meeting, etc.) and the identity of the parties to each such communication.

Response No. 9:

The Defendant objects to this interrogatory on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Interrogatory No.10:

Identify and describe in detail any and all accountings of units shipped, units billed, and receivables aging that AirWater created, making certain to include in your response the date of each such accounting, the date on which such accounting was transmitted to Reidy, and a brief description of the substance of the document.

Response No. 10:

The Defendant objects to this interrogatory on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 11:

Identify and describe in detail all resources and efforts put forth by AirWater to establish and maintain the awareness and exposure of products manufactured by or for AirWater based on the Licensed Patents and to enhance sales and future growth.

Response No. 11:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 12:

Identify each and every specimen of proposed changes in goods sold under
trademark that AirWater provided to Reidy, making certain to include in your response
the date that each specimen was provided to Reidy, the nature of each such specimen, and
the address to which each specimen was sent.

Response No. 12:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 13

Identify and describe in detail any and all non-compete and non-disclosure
agreements entered into between Reidy and any third party manufacturer of Licensed
Products, making certain to include in your response the date each such agreement was
entered into, the substance of each such agreement, and the identity of the parties to each
such agreement.

Response No. 13:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 14:

Identify and describe in detail each and every insurance policy concerning the
production and sale of Licensed Products that names Reidy as an additional insured with
respect to any claims made against Reidy as a result of AirWater's or any of its
sublicensees' sales of Licensed Products, making certain to include in your response the
date of each such insurance policy, the duration of each such insurance policy, the

6

amount" of coverage provided to Reidy under each such insurance policy, the named insured of each such insurance policy, and a brief description of the substance of each such insurance policy.

Response No. 14:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 15:

Identify and describe in detail all communications between AirWater and Watermaker PVT Limited of Mumbia, India, making certain to include in your response the date of each such communication, the substance of each such communication, the manner of communication (i.e., correspondence, telephone conference, meeting, etc.), and the identify of the parties to each such communication.

Response No. 15:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No.16:

Identify and describe in detail each sublicense contract between AirWater and any third parties that AirWater has delivered to Reidy, making certain to include the parties to each such. sublicense contract, the date of contract, the essential terms of the contract, and the date of transmittal to Reidy.

Response No. 16:

The Defendant objects to this interrogatory on the grounds that there is no

colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts

and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 17:

Identify and describe in detail any changes AirWater has made to goods sold under trademark pursuant to the License.

Response No. 17:

The Defendant objects to this interrogatory on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 18:

Identify and describe in detail each and every safety feature used in the production of the Licensed Products by AirWater.

Response No. 18:

The Defendant objects to this interrogatory on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Interrogatory No. 19:

Identify and describe in detail the complete factual bases for each affirmative defense asserted by AirWater in its answer to the Complaint.

Response No. 19:

The Defendant objects to this interrogatory on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

## DEFENDANT'S RESERVATION OF RIGHT
## TO SUPPLEMENT RESPONSES AND OBJECTIONS

The Defendant has moved to dismiss this action for lack of personal jurisdiction.

Additionally, the Defendant has moved for a protective order to stay discovery pending

disposition of the Defendant's Motion to Dismiss.  The Defendant hereby reserves the

right to supplement the foregoing responses and objections in the event that the

Defendant's motions are denied.

DEFENDANT AIRWATER PATENTS CORPORATION

As to objections by its attorneys,

_Matthew P Zayotti_

Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan Werlin, LLP
265 Franklin Street
Boston, Massachusetts  02110-3113
(617) 951-1400

Dated:  June 20, 2005

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document(s) was served upon the attorney of record for each other party by ~~hand-delivery~~ - US Mail on _June 20, 2005_ .

_Matthew P Zayotti._

# EXHIBIT C
## (Responses to RPD pages 1-9)

{}

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40049-FDS

J.J. REIDY & CO., INC.,

**Plaintiff,**

v.

**AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,**

**Defendants.**

## DEFENDANT AIRWATER PATENTS CORPORATION'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, the Defendant, AirWater Patents Corporation, hereby responds to the Plaintiff's First Request for Production of Documents.

## GENERAL OBJECTIONS

1.      The Defendant objects generally to the requests for production in each and every instance in which they request information protected by the attorney-client privilege, work product doctrine or which is otherwise protected from discovery.

2.      The Defendant objects generally to the requests for production in each and every instance in which they are beyond the permissible scope of discovery as provided by Rule 26(b) of the Federal Rules of Civil Procedure or are an annoyance, embarrassing, oppressive, or unduly burdensome or expense.

3.    Where a response to any request for production may be derived or ascertained only from a detailed examination, audit or inspection of such records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the responsiveness of each document or thing is substantially the same for all parties, the Defendant reserves the right to produce generally the documents and to afford the requesting party reasonable opportunity to examine, audit or inspect such records, and to make copies, compilations, abstracts or summaries thereof at the requester's expense.

4.    Defendant objects generally to each request to the extent and degree to which it calls for the production of documents or things not within the custody or control of the Defendant.

5.    Defendant objects generally to each request that identifies a document by use of the terms "relating to" or "referring to" on the grounds that such terms fail to describe the document or thing sought to be produced with reasonable particularity required as by Rule 34(b).

6.    Defendant objects generally to each request which fails to specify a relevant time period to which it pertains on the grounds that such request is overbroad, unduly burdensome and insufficient to satisfy the requirements that the documents be specified with reasonable particularity in conformity with Rule 34(b).  Defendant further objects to any request to the extent that it calls for the production of documents which post date the filing of the Complaint in this action or which were prepared in contemplation of or in response to the instant litigation, or otherwise constitutes or represents the mental impressions, conclusions, opinions, or legal theories of any attorney or other representative of the Defendant concerning the litigation.

2

7.     Defendant objects generally to making production by copying documents and transmitting them to counsel for the requesting party on the grounds that the Defendant is not required to do so under Rule 34 of the Federal Rules of Civil Procedure.

8.     The Defendant generally objects to the "Definitions and Instructions" to the extent the requesting party seeks information beyond the scope of discovery under Rules 26 and 34 of the Federal Rules of Civil Procedure. Such "Definitions and Instructions" are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## SPECIFIC RESPONSES AND OBJECTIONS

The foregoing General Objections are hereby made a part of and incorporated by this reference in each and every specific response hereinafter made to the respective numbered paragraphs of Plaintiffs' Request for Production of Documents. Subject to such General Objections, the Defendant responds to the respective numbered paragraphs of the Plaintiffs' request for documents as follows:

Request No. 1:

All documents that evidence, reflect or reference all communications between Reidy and AirWater, whether oral or written, concerning the Global Manufacturing and Marketing Licensing Agreement (the "License").

Response No. 1:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No.2:

All documents concerning communications between AirWater and any person or entity, whether oral or written, pertaining to the License for the period from 2000 to date.

Response No. 2:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No.3:

All documents concerning any payments made by AirWater to Reidy pursuant to the License.

Response No. 3:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No.4:

All sublicenses AirWater has entered into concerning or involving the License.

Response No. 4:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No.5:

All correspondence between AirWater and any person or entity concerning each sublicense entered into by AirWater with any person or entity pertaining to the License.

Response No. 5:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No.6:

All accountings of units shipped, units billed, all (receivables aging prepared by you concerning the License or Licensed Products.

Response No. 6:

The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No.7:

All documents concerning AirWater's attempts to establish and maintain the awareness and exposure of products manufactured by or for AirWater based on the Licensed Patents and to enhance sales and future growth.

Response No. 7:

The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No.8:

All documents concerning any changes AirWater made to goods sold under trademark pursuant to the License.

Response No. 8:

The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No.9:

All insurance policies concerning sublicensees' sales of Licensed Products.

Response No. 9:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No. 10:

All non-compete and non-disclosure agreements concerning AirWater's contracts with any third party manufacturers of Licensed Products.

Response No. 10:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No. 11:

All documents concerning any manufacturing agreement entered into by AirWater by any person or entity for the manufacture of Licensed Products.

Response No. 11:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No. 12:

All communications between AirWater and Watermaker PVT, Limited of Mumbia, India for the period from 2002 to date.

Response No. 12:

The Defendant objects to this request on the grounds that there is no colorable basis for subjecting the Defendant to personal jurisdiction in Massachusetts and, therefore, the requested discovery is unduly burdensome.

Request No. 13:

      All documents concerning sublicenses for Watermaker PVT, Limited of Mumbia, India.

Response No. 13:

      The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No. 14:

      All documents concerning safety features used in the production of Licensed Products by AirWater.

Response No. 14:

      The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No. 15:

      All documents and tangible things which you intend to offer into evidence at any trial of this matter.

Response No. 15:

      The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No. 16:

      All documents concerning any Licensed Products, including, but not limited to, photographs, press releases, sales literature, annual reports, and SEC filings.

Response No. 16:

      The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No. 17:

      All internal communications, including, without limitation, email, concerning the
License, Licensed Patents and/or Licensed Products.

Response No. 17:

      The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

Request No. 18:

      All documents which evidence, reflect or reference the bases for each affirmative
defense asserted in your answer to the Complaint.

Response No. 18

      The Defendant objects to this request on the grounds that there is no colorable

basis for subjecting the Defendant to personal jurisdiction in Massachusetts and,

therefore, the requested discovery is unduly burdensome.

## DEFENDANT'S RESERVATION OF RIGHT
## TO SUPPLEMENT RESPONSES AND OBJECTIONS

      The Defendant has moved to dismiss this action for lack of personal jurisdiction.

Additionally, the Defendant has moved for a protective order to stay discovery pending

disposition of the Defendant's Motion to Dismiss.  The Defendant hereby reserves the

right to supplement the foregoing responses and objections in the event that the

Defendant's motions are denied.

DEFENDANT AIRWATER PATENTS
CORPORATION

By its attorneys,

*Matthew P. Zayotti*

Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, Massachusetts  02110-3113
(617) 951-1400

Dated: June 20, 2005

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document(s) was served upon the attorney of record for each other party by ~~hand delivery~~ - US Mail on *June 20, 2005*.

*Matthew P. Zayotti*

---

9

# EXHIBIT D

(Scheduling Order pages 1-4)

{}

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**J.J. Reidy & Co., Inc.,**

      **Plaintiff,**

    **v.**                                **CIVIL ACTION**
                                        **NO.  05-40049-FDS**

**Airwater Corporation, et al.,**

      **Defendant.**

### SCHEDULING ORDER

**SAYLOR, J.**

      This Scheduling Order is intended to provide a reasonable timetable for discovery and motion practice in order to help ensure a fair and just resolution of this matter without undue expense or delay.

### Timetable for Discovery and Motion Practice

      Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and Local Rule 16.1(F), it is hereby ORDERED that:

1.    **Initial Disclosures.**  Initial disclosures required by Fed. R. Civ. P. 26(a)(1) must be completed by
     11/18/05    .

2.    **Amendments to Pleadings.**  Except for good cause shown, no motions seeking leave to add new parties or to amend the pleadings to assert new claims or defenses may be filed after   1/15/06  .

3.    **Fact Discovery - Interim Deadlines.**

      a.    All requests for production of documents and interrogatories must be served by   3/1/06  .

      b.    All requests for admission must be served by   3/1/06   .

      c.    All depositions, other than expert depositions,  must be completed by
        4/15/06    .

4.    **Fact Discovery - Final Deadline.**  All discovery, other than expert discovery, must be completed by ____4/15/06____.

5.    **Status Conference.**  A status conference will be held on ____4/27/06 at 3:00PM .

6.    **Expert Discovery.**

    a.    Plaintiff(s)' trial experts must be designated, and the information contemplated by Fed. R. Civ. P. 26(a)(2) must be disclosed, by ___5/1/06_____.

    b.    Plaintiff(s)' trial experts must be deposed by __7/1/06_____.

    c.    Defendant(s)' trial experts must be designated, and the information contemplated by Fed. R. Civ. P. 26(a)(2) must be disclosed, by ___6/1/06_____.

    d.    Defendant(s)' trial experts must be deposed by __7/1/06_____.

7.    **Dispositive Motions.**

    1.    Dispositive motions, such as motions for summary judgment or partial summary judgment and motions for judgment on the pleadings, must be filed by ____7/31/06___.

    2.    Oppositions to dispositive motions must be filed within _14_ days after service of the motion.

8.    **Pretrial Conference.**  A pretrial conference will be held on __9/20/06_____ at _3:00_ p.m.

### Procedural Provisions

1.    **Extension of Deadlines.**

    a.    **Fact Discovery - Interim Deadlines.**  The parties may extend any interim deadline for fact discovery by mutual written agreement filed with the court.

    b.    **Fact Discovery - Final Deadline; Expert Discovery.**  The parties may extend the final deadline for fact discovery or the deadlines for expert discovery for a combined total of up to 30 days by mutual written agreement filed with the court.

    c.    **Dispositive Motions and Pretrial Conference.**   The parties may not extend the deadline for filing dispositive motions or the date of the

pretrial conference without leave of court. No extension of discovery deadlines shall modify or affect deadlines for filing dispositive motions or the date of the pretrial conference unless the court expressly orders otherwise.

     **d.**    **Procedure for Seeking Extensions from Court.** Motions to extend or modify deadlines will be granted only for good cause shown. Good cause may be shown where discovery has been delayed or a deadline otherwise has been affected by the time taken by the court to consider a motion. All motions to extend shall contain a brief statement of the reasons for the request; a summary of the discovery, if any, that remains to be taken; and a specific date when the requesting party expects to complete the additional discovery, join other parties, amend the pleadings, or file a motion.

**2.**    **Motions to Compel or Prevent Discovery.** Except for good cause shown, motions to compel discovery, motions for protective orders, motions to quash, motions to strike discovery responses, and similar motions must be filed no later than the close of fact discovery or the close of expert discovery, whichever deadline is relevant. If additional discovery is compelled by the court after the relevant deadline has passed, the court may enter such additional orders relating to discovery as may be appropriate.

**3.**    **Reply Memoranda.** Parties need not seek leave of court to file a reply memorandum in response to an opposition to any motion, provided that such a reply memorandum does not exceed twelve pages, double-spaced, and is filed within seven days (excluding intermediate Saturdays, Sundays, and legal holidays) after service of the opposition memorandum. Parties may otherwise file reply or surreply memoranda only with leave of court. When such leave is sought, the moving party may file a proposed reply or surreply memorandum with the motion for leave.

**4.**    **Additional Conferences.** Upon request of counsel, or at the court's own initiative, additional case-management or status conferences may be scheduled. Parties may request telephonic conferences where appropriate to avoid undue inconvenience or expense.

**5.**    **Early Resolution of Issues.** The court recognizes that, in some cases, resolution of one or more preliminary issues may remove a significant impediment to settlement or otherwise expedite resolution of the case. Counsel are encouraged to identify any such issues and to make appropriate motions at an early stage in the litigation.

**6.**    **Pretrial Conference.** Lead trial counsel are required to attend any pretrial conference.

By the Court,

_____10/27/05_____                    _/s/ Martin Castles_
         Date                           Deputy Clerk

# EXHIBIT E

(Memorandum & Order pages 1-18)

{}

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| J. J. REIDY & CO., INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No.** |
| **v.** | ) | **05-40049-FDS** |
| | ) | |
| AIRWATER CORPORATION AND | ) | |
| AIRWATER PATENTS CORPORATION, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND MOTION IN THE ALTERNATIVE TO
TRANSFER VENUE FOR FORUM NON CONVENIENS**

**SAYLOR, J.**

This matter is before the Court on defendants' motion to dismiss for lack of personal

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and motion in the alternative to

transfer venue for forum non conveniens, both filed on June 20, 2005. For the reasons stated

below, both motions are denied, and the stay of discovery ordered by the Court on July 19, 2005,

is vacated.

**I.    Factual Background**

The following are the facts as asserted by the plaintiff.

J. J. Reidy & Co., Inc., is a Massachusetts corporation with a principal place of business in

Holden, Massachusetts. Its President, James J. Reidy, is a Massachusetts resident. For the sake

of convenience, both the company and the individual will be referred to as "Reidy."

1

In February 2003, Universal Communication Systems, Inc. ("UCS"), the parent company of AirWater Corporation ("AirWater") and AirWater Patents Corporation ("AirWater Patents"), contacted Reidy via e-mail. (Reidy Aff. Ex. A)  The purpose of the e-mail was to seek to acquire rights to Reidy's United States patents related to a water purification system. (Reidy Aff. ¶ 2).

UCS then contacted Reidy through a series of phone calls and written correspondence, soliciting the plaintiff to enter into a licensing agreement with its wholly-owned subsidiary, AirWater. (Reidy Aff. ¶ 3).  Reidy spoke with Michael Zwebner, the CEO of UCS and President of AirWater and AirWater Patents, on an almost-daily basis over the next several months. (Id.). Reidy was in Massachusetts during the telephone calls, while Zwebner was in Israel, Miami, Toronto, Los Angeles, the United Kingdom, and New York. (Reidy Aff. ¶ 4).  The parties also exchanged frequent e-mails; the e-mails from Zwebner were sent to Reidy in Massachusetts. (Reidy Aff. ¶ 3).

On March 15, 2003, Zwebner traveled to Boston and negotiated with Reidy concerning a possible agreement as to the patents. (Reidy Aff. ¶ 5).  The meeting occurred in Boston, at Zwebner's suggestion. (Id.).  Sometime late in March, the parties reached an agreement as to the basic terms of what became the Global Manufacturing and Marketing Licensing Agreement (the "Agreement").  Over the next few months, Reidy and Zwebner exchanged e-mail and phone calls frequently, often many times in one day, for the purpose of securing and formalizing the Agreement. (Id.).  Again, Reidy was in Massachusetts during all such telephone calls, and sent and received e-mails in Massachusetts. (Id.).

Sometime in late June of 2003, the parties executed the Agreement in Florida, back-dating it to March 21, 2003. (Reidy Aff. ¶ 7; Zwebner Decl. ¶ 8).  Under the subheading

2

"Construction/Jurisdiction," the Agreement states the following: "Inasmuch as the transactions, which may arise or occur between the parties and/or their principals may cross boundaries of national and or [sic] international jurisdiction, this Agreement shall be construed and interpreted in Accordance with the laws of the United States of America and the resident state of the Plaintiff." (Zayotti Aff. Ex. A at 15).

After the execution of the Agreement, Zwebner and other representatives of the defendants regularly contacted Reidy in Massachusetts seeking advice and consultation on various matters. (Reidy Aff. ¶¶ 8-9). Zwebner and Reidy met again in Boston on July 28, 2003, to discuss technical details regarding the production and design of AirWater products. (Reidy Aff. ¶ 10). AirWater continued to contact Reidy to seek his advice for various lawsuits and issues relating to the products and to make the monthly royalty payments. (Reidy Aff. ¶¶ 11-12). On June 25, 2003, AirWater assigned all rights and liabilities under the Agreement to AirWater Patents; Reidy consented to the assignment. (Amended Complaint ¶¶ 4-5).

On November 1, 2004, AirWater stopped paying royalties to Reidy. In November and December of 2004, Zwebner and Reidy exchanged several letters regarding the lack of royalty payments. (Reidy Aff. ¶¶ 13-15, 17). On December 15, 2004, Reidy sent a Notice of Default to AirWater for alleged nonpayment.

The present lawsuit was filed on December 16, 2004, in Massachusetts Superior Court against AirWater. Reidy sent another Notice of Default to AirWater Patents on January 13, 2005. On February 11, 2005, AirWater Patents filed suit against Reidy in the Circuit Court for the 11th Judicial District in and for Miami-Dade County, Florida, asserting claims against Reidy for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing,

and unjust enrichment.

On February 16, 2005, Reidy filed a First Amended Complaint, adding AirWater Patents as a party defendant. He then served an original summons and copies of the Civil Action Cover Sheet, Complaint, and First Amended Complaint on the defendants on February 18. On March 7, Reidy filed a Notice of Removal in the Florida action, removing it to the United States District Court for the Southern District of Florida. On March 18, the defendants removed this suit to this Court asserting diversity jurisdiction.

## II.     Personal Jurisdiction

### A.     Standard of Proof

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendants. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). A district court faced with a motion to dismiss under Rule 12(b)(2) may choose among several methods for determining whether the plaintiff has met its burden: the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. *Id.* at 50-51 & n.5. The "most conventional" and "most commonly used" of these methods is the "prima facie" standard. *Id.* at 51; *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992).

Under the prima facie standard, the court is permitted to "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit*, 967 F.2d at 675. The court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Foster-Miller*, 46 F.3d at 145. The court may then consider

the "facts put forward by the defendants, to the extent that they are uncontradicted." *Mass. Sch. of Law at Andover v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998). The Court will use this method.

As alleged by the plaintiff, the defendants' contacts with Massachusetts are as follows: (1) Defendants solicited and negotiated the license agreement via e-mail, telephone, and written correspondence directed into Massachusetts, and met with the plaintiff in Boston; (2) Defendants solicited Plaintiff via e-mail and telephone to assign the license agreement; (3) after execution of the Agreement, Defendants met with Plaintiff in Boston for technical assistance regarding the design and production of products, the maintenance of existing patents, and application for additional patents; (4) Defendants frequently requested technical advice from the plaintiff via e-mail and telephone after execution of the Agreement; (5) Defendants contacted Plaintiff regarding several lawsuits involving the parties after execution of the Agreement; (6) Defendants paid monthly royalty payments to Plaintiff in Massachusetts and made various communications relating to those payments; and (7) the terms of the Agreement expressly provide that it should be constructed and interpreted in accordance with the resident state of the plaintiff. As these allegations are properly supported in the record by the Affidavit of James J. Reidy and the accompanying exhibits, the Court accepts these facts as true in determining whether the plaintiff has made a prima facie showing of personal jurisdiction.

**B.     Personal Jurisdiction under the Massachusetts Long-Arm Statute**

"To subject a non-resident defendant to its jurisdiction in a diversity case, a court—and for this purpose, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state—must find contacts that, in the aggregate, satisfy the

5

requirements of both the forum state's long-arm statute and the Fourteenth Amendment."
*Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994) (citation omitted). The long-arm statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth . . . ." Mass. Gen. Laws ch. 223A, § 3(a). Therefore, in order for jurisdiction to exist pursuant to § 3(a), (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767 (1994).

In Massachusetts, federal courts "may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" *Daynard,* 290 F.3d at 52, *quoting "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 361 Mass. 441 (1972). *See also Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir. 1995) ("[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the . . . constitutional standards."). The Court therefore will analyze the issue under the constitutional requirements.

### C.    Personal Jurisdiction under the Due Process Clause

### 1.    Standard

For a court to assert personal jurisdiction, the Due Process Clause of the Fourteenth Amendment requires that the defendant have certain minimum contacts with the forum such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial

justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In a case involving a contract dispute, the court should evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

In the present case, plaintiff alleges that the cause of action arises directly out of, or relates to, the defendant's forum-based contacts; therefore, plaintiff is asserting specific personal jurisdiction, rather than general personal jurisdiction, which arises where the defendant has "engaged in continuous and systematic activity, unrelated to the suit, in the foreign state". *Foster-Miller*, 46 F.3d at 144. In order to determine whether exercising specific personal jurisdiction comports with the requirements of the Constitution, a court must examine three factors: relatedness, purposeful availment (or minimum contacts), and reasonableness. *Id.* First, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Id.*, quoting *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). Second, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Id.* Finally, the exercise of jurisdiction must be reasonable. The Supreme Court has identified five criteria relevant to assessing reasonableness:

> (1) [T]he defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*163 Pleasant St.*, 960 F.2d at 1088, *citing Rudzewicz*, 471 U.S. at 477. The First Circuit

Court of Appeals has labeled these criteria the "Gestalt factors." *Donatelli v. Nat'l*

*Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990).

### 2.     Analysis

#### a.     Relatedness

The first factor requires that the claim underlying the litigation arise out, or relate to,

defendants' forum-state activities. Although brought under multiple theories, this case

essentially alleges breach of the Agreement, and defendant's Massachusetts contacts relate

entirely to the negotiation and execution of the Agreement and the interpretation of its terms.

That claim clearly arises out of or relates to defendants' Massachusetts activities, and is therefore

sufficiently related to the defendants' contacts with the forum.

#### b.     Purposeful Availment

The second factor, the purposeful availment requirement, is intended to assure that

"personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous'

contacts with the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995), *citing*

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). There are two "cornerstones" of

purposeful availment: voluntariness and foreseeability. *Ticketmaster-N.Y., Inc. v. Alioto*, 26

F.3d 201, 207 (1st Cir. 1994).

First, "[t]he defendant's contacts with the forum state must be voluntary—that is, not

based on the unilateral actions of another party or a third person." *Nowak v. Tak How Invs.,*

*Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996). Second, "defendant's conduct and connection with the

forum State [must be] such that he should reasonably anticipate being haled into court there."

8

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

In the present case, defendants (1) contacted the plaintiff by e-mail to solicit an agreement with the plaintiff; (2) engaged in numerous phone calls, e-mails, and written correspondence both prior to the execution of the agreement and after its execution; (3) participated in one meeting in Boston during negotiations; and (4) participated in another meeting in Boston after execution of the contract relating to technical support arising from the Agreement.[1]  Furthermore, the Agreement provides that the choice of law for construing and interpreting its terms will be the laws of the United States and "the resident state of the plaintiff." As the plaintiff's state of residence at the execution of the contract was Massachusetts and so remains, it was not only reasonably foreseeable that the defendant might be haled into a Massachusetts court, but the application of Massachusetts law was expressly contemplated by the parties when they executed the Agreement.

The Court finds that the defendants' contacts in Massachusetts were both voluntary and sufficient to make it reasonably foreseeable that they would be haled into court here.

---

[1]  The fact that defendants initiated contact with a Massachusetts resident while the resident was in Massachusetts, and later traveled to Massachusetts, distinguishes the present case from the cases relied upon by the defendants.  *See Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,* 132 F.3d 111 (1st Cir. 1997) (dismissing for lack of personal jurisdiction where the Massachusetts plaintiff approached the foreign defendant and no meetings to negotiate the contract occurred in Massachusetts); *Droukas v. Divers Training Acad.,* 375 Mass. 149 (1978) (dismissing for lack of personal jurisdiction where the Massachusetts plaintiff saw the defendant's advertisement in a national nautical publication, telephoned the defendant in Florida to place the order, and mailed a check to Florida; defendants only contacts with Massachusetts were letters relating to the sale and the shipment of the product); *'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 361 Mass. 441 (1972) (dismissing for lack of personal jurisdiction where New York defendant called plaintiff's New Jersey office, never visited Massachusetts, and only sent a purchase order and partial payment to plaintiff's Massachusetts division); *Nichols Assoc., Inc. v. Starr,* 4 Mass. App. Ct. 91 (1976) (dismissing for lack of personal jurisdiction where the Connecticut defendant approached the Massachusetts plaintiff in Connecticut for a land survey of land in Connecticut and the defendant's only contact with Massachusetts was that the plaintiff surveyor performed some work in plaintiff's Massachusetts office and defendant occasionally sent an employee to Massachusetts to pick up plans when plaintiff did not have an available messenger).

Accordingly, the defendants have purposefully availed themselves of the privilege of conducting business in the Commonwealth.

### c.     Reasonableness

As noted, the so-called "Gestalt factors" used to determine reasonableness include (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Id.* at 150. The Court finds that, weighing these factors, it would be reasonable in this instance to exercise personal jurisdiction over the defendants.

### (1)     The Burden of Appearing in Massachusetts

Defendants argue that serious hardships would arise if they were forced to appear in Massachusetts, because (1) the majority of AirWater's non-party witnesses are located in Florida and overseas; (2) the absence of AirWater's employees for any extended period of time would work a substantial hardship on AirWater's small business; and (3) all of AirWater's documents relating to the dispute are located in Florida. While the Court acknowledges that it will be burdensome for the defendants to appear in Massachusetts, "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996). Thus, for this factor to have any significance, "the defendant must demonstrate that the 'exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Id., quoting Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). The burdens cited by the defendants are the ordinary burdens of defending an

action in another state. Furthermore, the Court also notes that the hardship on witnesses traveling from overseas is only minimally, if at all, impacted by trial a in Massachusetts rather than in Florida.

Defendants also argue that the burden of appearing would create substantial hardship because Michael Zwebner, the president of both defendant companies, is confined to a wheelchair. While the court sympathizes with Mr. Zwebner, the record suggests that he is in fact highly mobile; he maintains homes in Israel, the United Kingdom, and Miami, and he has traveled to Israel, Toronto, Los Angeles, New York, Peru, and Brazil since February 2003. While defending the action in this forum would undoubtedly create some hardship for Mr. Zwebner, in light of his frequent travel over the past three years, the Court does not believe that appearing in Massachusetts would offend "traditional notions of fair play and substantial justice."[2]

### (2)    Interest of the Forum

"A state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985) (citation omitted); *see also Daynard,* 290 F.3d at 62; *Marine Charter & Storage Ltd., Inc.* 701 F. Supp. at 936. Massachusetts has a particularly strong interest in adjudicating this matter because, as the case currently stands, Massachusetts law will govern the dispute. *See Champion Exposition Servs. v. Hi-Tech Elec., LLC,* 273 F. Supp. 2d 172, 179 (D. Mass. 2003).

---

[2] There is no evidence that the plaintiff brought the present suit in order to harass the defendants. *See Ticketmaster-N.Y., Inc. v. Alioto,* 26 F.3d 201, 211 (1st Cir.1994).

11

### (3)    Plaintiff's Convenience

The Court should give deference to the plaintiff's choice of forum. *Foster-Miller*, 46

F.3d at 151. In the present case, a Massachusetts forum is clearly the most convenient forum for

the plaintiff and an inconvenience might result from forcing the plaintiff to bring suit elsewhere,

cutting in favor of jurisdiction.

There is an additional, and somewhat peculiar, aspect to this case. If the Court were to

dismiss the current action in favor of the pending suit in Florida, Florida law would apply to the

interpretation of the Agreement. Dismissing the action would work to deny the plaintiff the

opportunity to have its own state's law apply to the Agreement, as expressly provided in the

Agreement.

### (4)    Administration of Justice

This factor examines the "judicial system's interest in obtaining the most efficacious

resolution of the controversy [and] counsels against furcation of the dispute among several

different jurisdictions." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). "Such a result would

both contravene the goal of judicial economy and conjure up the chimera of inconsistent

outcomes." *id.,* and would thus cut in favor of finding a lack of personal jurisdiction. In this

case, however, the efficient administration of justice favors jurisdiction in Massachusetts, where

this action is already proceeding against the defendants. *Daynard*, 290 F.3d 42, 62 -63 (1st Cir.

2002).

### (5)    Public Policy

Finally, there is no public policy reason disfavoring the exercise of jurisdiction. Plaintiff

did not engage in forum shopping; indeed, it filed suit in its own state. Furthermore, per the

Agreement, Massachusetts law would apply regardless of whether the plaintiff filed suit in Florida or Massachusetts.

Accordingly, and on balance, the "Gestalt factors" weigh in favor of a Massachusetts forum. The burden placed on the defendant is similar to that placed on any party that must litigate in a foreign jurisdiction. Massachusetts has a strong interest in the litigation, and the Court finds no weighty administrative or public policy rationale against jurisdiction here. The Court therefore concludes that the exercise of jurisdiction is reasonable.

Plaintiff has provided sufficient evidence to satisfy all three prongs of the due process inquiry, demonstrating that jurisdiction here comports with traditional notions of fair play and substantial justice. Accordingly, this Court concludes that the exercise of personal jurisdiction over the defendants in Massachusetts is proper.

## IV.   Transfer of Venue

Alternatively, defendants seek transfer of venue pursuant to 28 U.S.C. § 1404(a), which provides as follows: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) codifies in part the doctrine of forum non conveniens. *Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir. 1999). The decision of whether to transfer a case rests with the sound discretion of the court. *Filmline (Cross-Country) Prod., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989).

"Where identical actions are proceeding concurrently in two federal courts, the first-filed action is generally preferred in a choice-of-venue decision." *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). In such a situation, there is a strong presumption in favor of

a plaintiff's forum choice, and "the defendant must bear the burden of proving both the

availability of an adequate alternative forum and that considerations of convenience and judicial

efficiency strongly favor litigating the claim in the alternative forum." *Nowak*, 94 F.3d at 719.

As the Supreme Court has observed:

> Where there are only two parties to a dispute, there is good reason why it should be
> tried in the plaintiff's home forum if that has been his choice. He should not be
> deprived of the presumed advantages of his home jurisdiction except upon a clear
> showing of facts which either (1) establish such oppressiveness and vexation to a
> defendant as to be out of all proportion to plaintiff's convenience, which may be
> shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate
> because of considerations affecting the court's own administrative or legal problems.

*Koster v. Lumbermens Mut. Co.*, 330 U.S. 518, **524 (1997)**.

Courts have, however, recognized exceptions to the first-filed rule where "(1) there are

special circumstances justifying a transfer or (2) convenience favors the later-filed action."

*Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass.

2002); *see also Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 22-25 (D. Mass 2000);

*Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124 (D. Mass. 2000).  The Court will

examine each exception in turn.

### A.     Special Circumstances

Although the "plaintiff's choice of forum should rarely be disturbed," *Gulf Oil Corp. v.

Gilbert*, 330 U.S. 501, 508 (1947), courts in this district have in numerous instances transferred

a case based on findings of "special circumstances." *See Holmes Group*, 249 F. Supp. 2d at 16

(collecting cases).  "The pattern that emerges from the cases indicates that transfer may be

appropriate where a party has won the race to the courthouse by misleading his opponent into

staying his hand in anticipation of negotiation; or by reacting to notice of imminent filing by

literally sprinting to the courthouse the same day." *Veryfine*, 124 F. Supp. 2d at 22.

Defendants here argue that the plaintiff improperly engaged in forum shopping by "jumping the gun" when it "prematurely commenc[ed] this 'hip pocket' action through the anticipatory filing of its complaint." (Defs.' Mem. at 10). Thus, defendants claim that plaintiff is not entitled to the protection of the first-filed rule. This Court disagrees.

Because defendants did not provide notice of their imminent intention to litigate, the plaintiff cannot be said to have "sprint[ed] to the courthouse" in order to file before the defendants. *Cf. Remington Arms Co. v. Alliant Techsystems, Inc.*, No. 1:03CV1051, 2004 U.S. Dist. LEXIS 3848 (exception to first-filed rule applied in trademark dispute where defendants issued cease and desist letter threatening litigation after a particular date, and plaintiffs filed declaratory action one day in advance of that date). Moreover, the Court finds that there is no evidence to suggest that the plaintiff intentionally misled the defendants to keep them from filing litigation. *Cf. McJunkin Corp. v. Cardinal Sys.*, Inc. 190 F. Supp. 2d 874 (S.D. W. Va. 2002) (declaratory action filed silently while parties' negotiations continued). Under the terms of the Agreement, regardless of the opportunity to cure, defendants arguably are in breach of the contract. As the record reflects that defendants denied owing plaintiff any royalty payments, it was not unreasonable for the plaintiff to continue in pursuit of the funds it was allegedly owed and for foreseeable damages resulting from the delay in payment.

The Court notes that the filing of a suit one day after sending a notice of default and opening a fourteen-day opportunity to cure suggests is questionable, but finds that it does not go so far as to become an improper "anticipatory filing." Rather, plaintiff appears to have believed in good faith that the defendants were in breach and filed to remedy that breach and collect the

15

appropriate damages.  Furthermore, plaintiff filed suit in its own home-state forum, not in a

jurisdiction with no connection to the dispute. *See Veryfine*, 124 F. Supp. 2d at 22 (special

circumstances justifying transfer exist where "one party has won a race to the courthouse by

jumping the gun and filing a declaratory judgment action in a forum that has little relation to the

dispute.").  The fact that there was a delay in service of process, although relevant, does not

inexorably lead to the conclusion that Plaintiff was engaging in improper forum shopping. *See*

*Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398 (D. Mass. 1996) (under the circumstances,

no forum shopping where plaintiff's "decision to file but not to serve its suit immediately

manifested a desire on its part both to avoid litigation if at all possible and to attempt to secure

the convenience of a Massachusetts forum if litigation was required.").

### B.    Convenience

The Court may also transfer a matter to another district for the convenience of the parties

and witnesses and in the interest of justice under § 1404(a).

> The Supreme Court has provided a list of relevant considerations [for this
> determination].  "Private interest" factors include relative ease of access to sources
> of proof, availability of compulsory process, comparative trial costs, ability to
> enforce a judgment, "and all other practical problems that make trial of a case easy,
> expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).
> "Public interest" factors include the practical difficulties of unnecessarily imposing
> upon a busy court the obligation to hear a case more fairly adjudicated elsewhere, the
> imposition on jurors called to hear a case that has no relation to their community, and
> the familiarity of the court with applicable laws. *Id.* at 508-509.

*Nowak*, 94 F.3d at 719 -720.[3]

---

[3]Although *Nowak* dealt with a motion to dismiss for forum non conveniens, as opposed to a motion to transfer under 28 U.S.C. § 1404(a), the factors to be considered in either instance "are generally the same." 17-111 Moore's Federal Practice - Civil § 111.13. *See also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("forum non conveniens considerations are helpful in deciding a § 1404 transfer motion).  The Court notes, however, that it has broader discretion to transfer a case under § 1404(a) than to dismiss the case for forum non conveniens. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981).

As the First Circuit has stated, "The plaintiff's forum choice 'should rarely be disturbed'; thus, 'the moving defendant . . . must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'" *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (citations omitted). Here, the defendants have not met this burden.

Defendants contend that trial in Massachusetts will seriously inconvenience the principal witness, Mr. Zwebner, and non-party witnesses located in Florida and overseas. For reasons discussed *supra*, the Court does not find these the private interest factors sufficient override the strong preference for the plaintiff's choice of forum. Nor will hearing this case in Massachusetts pose burdens on this court or community that justify a transfer to a Florida court.

Accordingly, this lawsuit was appropriately filed in this jurisdiction, and defendants' motion in the alternative to transfer will be denied.

## V.    **Stay of Discovery**

On July 19, 2005, the Court granted defendants' motion for a protective order to stay discovery pending a ruling on defendants' motion to dismiss for lack of personal jurisdiction. In light of the Court's ruling on the motion to dismiss, that ruling is hereby vacated, and the parties may undertake discovery in accordance with the Federal Rules of Civil Procedure and the District Court Local Rules.

VI.    **Conclusion**

For the reasons state above, defendants' motion to dismiss for lack of personal

jurisdiction or, in the alternative, to transfer for forum non conveniens, is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: September 27, 2005

18

# EXHIBIT F

(Letter of Attorney Maura Greene – one page)

{}



**Bowditch
&Dewey**
ATTORNEYS

Direct telephone: (508) 416-2421
Direct facsimile: (508) 929-3021
Email: mgreene@bowditch.com

December 15, 2005

Matthew P. Zayotti, Esq.
Keegan Werlin LLP
265 Franklin Street
Boston, MA 02110-3113

Re:    J.J. Reidy & Co., Inc. v. AirWater Corporation
       U.S. District Court - Worcester, MA; Case No. 05-40049-FDS

Dear Matthew:

       I am writing to confirm our conversation pursuant to Rule 37 regarding your clients'
outstanding answers to interrogatories, responses to the request for production of documents and
initial disclosures. As you know, on September 27, 2005 the Court vacated its ruling on the
defendants' motion for a protective order to stay discovery. We have not yet received the
defendants' discovery responses and the required disclosures. As we discussed, you have agreed
to serve answers to interrogatories, document responses and initial disclosures by December 31,
2005. If we do not receive responses by the end of the year, we will move to compel them.
Thank you.

                              Very truly yours,

                              Maura A. Greene

MAG/sb

cc:  Thomas J. Conte, Esq.

{Client Files\LIT\304269\0002\CPR\P0132254.DOC;1}

BOWDITCH & DEWEY, LLP  161 WORCESTER ROAD  PO BOX 9320  FRAMINGHAM, MA 01701-9320