UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **J.J. REIDY & CO., INC.,** | |
| **Plaintiff,** | CIVIL ACTION NO. 05-40049-FDS |
| **v.** | |
| **AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,** | |
| **Defendants.** | |
| **AIRWATER PATENTS, INC.** | |
| **Plaintiff,** | CIVIL ACTION NO. 06-10137-FDS |
| **v.** | |
| **J.J. REIDY & CO., INC.** | |
| **Defendant.** | |

**MEMORANDUM OF LAW OF AIRWATER CORPORATION AND
AIRWATER PATENTS, INC. IN SUPPORT OF THEIR MOTION TO
COMPEL FURTHER RESPONSES TO INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

AirWater Corporation and AirWater Patents, Inc. collectively, ("AirWater")

hereby submit this Memorandum of Law in support of their Motion to Compel Further

Responses to Interrogatories and Requests for Production of Documents.

## I. PROCEDURAL HISTORY

The parties commenced separate actions against each other which were recently

consolidated before this Court in Civil Actions Nos. 05-40049-FDS and 06-10137-FDS.

In its First Amended Complaint, J.J. Reidy asserts a sole count for breach of contract

against AirWater Corporation and AirWater Patents, alleging that AirWater Corporation breached the Agreement by failing to make required Minimum Monthly Royalty Payments. Additionally, J.J. Reidy alleged that both AirWater Patents, Inc. and AirWater Corporation breached the Agreement by failing to commit resources and put forth best efforts to market the J.J. Reidy air to water system.

AirWater Corporation has moved for summary judgment on J.J. Reidy's breach of contract claims based on its assignment of all rights and obligations under the Agreement to AirWater Patents, Inc. and J.J. Reidy's assent thereto. AirWater Corporation's motion for summary judgment is presently pending.

In response to AirWater Corporation's motion for summary judgment, J.J. Reidy filed a motion for leave to amend its complaint by adding a claim for intentional misrepresentation against AirWater Corporation. J.J. Reidy's motion to amend is presently pending.

In AirWater's complaint against J.J. Reidy, AirWater seeks, in part, a declaratory judgment that its obligation regarding Minimum Monthly Royalty Payments was limited to a one-year period; that J.J. Reidy wrongfully sought to terminate the Agreement; that AirWater's exclusive rights under the Agreement continue in force; and that J.J. Reidy is barred from licensing the J.J. Reidy Patents to any third parties during the term of the Agreement. Further, AirWater asserts claims against J.J. Reidy for breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

## II. BACKGROUND

In or about February, 2003, AirWater and J.J. Reidy commenced negotiations for AirWater's exclusive license to manufacture, market and sell J.J. Reidy's water

2

production generation system, including four patents associated therewith, U.S. Patent Nos. 5,106,512; 5,149,446; 5,203,989; and 5,366,705 (the "J.J. Reidy Patents"). The parties agreed in principle upon certain basic terms for a licensing agreement, which included J.J. Reidy's grant to AirWater of an exclusive, world-wide license for J.J. Reidy's water production generation system for a 10-year term upon AirWater's payment to J.J. Reidy of $100,000 cash, 4 million shares of stock issued and valued at approximately $300,000, and quarterly royalty payments during the term of the license. Throughout the course of their negotiations, both parties reasonably anticipated and expressly acknowledged that there would be substantial delay in the flow of AirWater's royalty payments to J.J. Reidy because sales of J.J. Reidy's water production generation system would not be immediately generated for a number of reasons, including (a) the time needed to re-design J.J. Reidy's water production generation machines, (b) the time needed to develop and build a range of new air to water machines, (c) the time necessary to obtain national and international permits and licenses for the sale of the air to water machines, and, finally, (d) the need to allow reasonable time for AirWater's sales and marketing efforts to generate sales. In that regard, AirWater estimated and J.J. Reidy agreed, that this start-up process would take at least one to one and one-half years from the date of execution of a global licensing agreement. AirWater Complaint, at ¶¶ 7-9.

Since the stock J.J. Reidy would receive was legally restricted pursuant to SEC rules and could not be traded for one year, and because quarterly royalties were not anticipated during the start-up phase of the water air to water system's design, manufacture, marketing and sales, J.J. Reidy requested, and AirWater agreed, to a

3

minimum monthly royalty of $10,000 for a limited period of one year, after which AirWater's quarterly royalty payments would commence. Id. at ¶ 10.

In or about late June of 2003, J.J. Reidy and AirWater Corporation executed a written Global Manufacturing and Marketing Licensing Agreement (the "Agreement"), back-dating it to March 21, 2003. Thereafter, on June 25, 2003, AirWater Corporation assigned all of its rights and obligations under the Agreement to AirWater Patents, Inc., which assignment was consented to in writing by J.J. Reidy. Id. at ¶ 12; Reidy Affidavit, Dated April 14, 2006, at ¶ 10.

Pursuant to the terms of the Agreement, J.J. Reidy granted AirWater an exclusive, world-wide license of the J.J. Reidy Patents for a term of the later of 10 years of the life of the last-expiring J.J. Reidy Patent. See Agreement at 3. AirWater timely performed its obligations under the Agreement by paying J.J. Reidy $100,000, and transferring 4 million shares of stock to J.J. Reidy. AirWater Complaint, Exh. A at 3-4. Further, consistent with the parties' negotiations and intent, and because there would be no sales and therefore no royalties during the initial start-up phase of the air to water venture, AirWater agreed to Minimum Monthly Royalty Payments to J.J. Reidy of $10,000 per month for twelve months, commencing November 1, 2003, through October 31, 2004. During this 12-month period, J.J. Reidy was required to credit any unearned monthly royalty to any earned royalties. Id. at 5. Under the terms of the Royalty Payments provisions of the Agreement, AirWater's first quarterly royalty payment for the period ending December 31, 2004, was due January 31, 2005. Id. at 4. Additionally, the Agreement provided for a 15-day grace period for payment of royalties. Id. at 5. Accordingly, AirWater had until February 15, 2005 to make its first quarterly royalty

4

payment, after which time J.J. Reidy could elect to accept late payment fees from AirWater in the amount of two percent (2%) of any gross amount due to J.J. Reidy.  Id.

Immediately upon the execution of the Agreement, AirWater commenced its recruitment of individuals and corporations on a world-wide basis to help develop, design, and build state-of-the-art water production generation machines.  Through its parent corporation and sister company AirWater Corporation, AirWater spent in excess of $2 million in direct and indirect costs, wholly attributable to the J.J. Reidy air to water venture.  The details of these substantial expenditures, including research and development costs, manufacture and shipping of sample machines, advertising, promotion, exhibitions, travel and marketing expenses, were fully disclosed in public filings with the SEC.  Whereas J.J. Reidy's Patents and the concept of air to water technology was relatively unknown and even less exploited prior to the execution of the Agreement, as a result of AirWater's substantial efforts, the air to water concept, J.J. Reidy's Patents and the reality of the technology, had become well-publicized on a world-wide basis to the substantial benefit of J.J. Reidy.  AirWater Complaint, at ¶¶ 17-18.

Unfortunately, throughout the first eighteen (18) months of the term of the Agreement, a significant amount of AirWater's time, money and effort were diverted away from the J.J. Reidy air to water venture as a result of a lawsuit in which AirWater was forced to defend the validity of the J.J. Reidy Patents.  In particular, on or about August 8, 2003, AirWater and its parent company, Universal Communication Systems, Inc. ("UCSY"), were served with a complaint for patent infringement by a Texas company, Electric Gas & Technologies, Inc. ("ELGT").  In essence, ELGT alleged that

J.J. Reidy had fraudulently obtained and registered patents for the air to water technology from another inventor who was the rightful owner thereof.  Id. at ¶¶ 19-21 and Exh. B thereto.

In response to this lawsuit, J.J. Reidy deliberately avoided service of process (ELGT claimed, under oath, that it attempted to serve J.J. Reidy's registered agent, Mr. James J. Reidy, on 12 separate occasions without success) and took no steps to defend the validity of the J.J. Reidy Patents, leaving the entire burden of the defense of ELGT's action upon AirWater.  Rather, J.J. Reidy stood by silently, failed to cooperate in good faith with AirWater's defense of the validity of the J.J. Reidy Patents, and even refused to contribute funds to the costs of the defense of the patent litigation.  Ultimately, on grounds other than the validity of the J.J. Reidy Patents, AirWater was able to negotiate a settlement with ELGT, and the action was settled in favor of AirWater.  However, the questions raised by ELGT as to the validity of the J.J. Reidy Patents remained and remain unresolved.  Id. at ¶¶ 22-23.

In defending the validity of the J.J. Reidy Patents, AirWater incurred attorney's fees and costs in excess of $180,000.  Additionally, as a direct consequence of the ELGT action, AirWater suffered damage to its reputation, loss of international credibility, considerable business downturn; and loss of many business opportunities.  Further, AirWater lost valuable time which further postponed and delayed the arrival of the J.J. Reidy air to water system and its deployment in the market.  Notably, even during the time that AirWater was forced to defend the validity of the J.J. Reidy Patents, AirWater honored its obligations under the Agreement and continued to pay J.J. Reidy the Minimum Monthly Royalty of $10,000.  Id. at ¶¶ 24-26.

Pursuant to the terms of the Agreement, J.J. Reidy represented that the J.J. Reidy Patents were valid all over the world without restrictions. Indeed, the Agreement is entitled, "*Global* Manufacturing and Marketing Licensing Agreement. During all times relevant, J.J. Reidy also represented that the J.J. Reidy Patents were valid, registered and enforceable "world-wide". Contrary to J.J. Reidy's representation, however, J.J. Reidy had only obtained patents in the United States and in three other overseas countries. Id. at ¶¶ 27-29.

Upon learning that J.J. Reidy's Patents were not protected in several foreign countries that were known targets of AirWater's marketing efforts, AirWater made demand upon J.J. Reidy to obtain appropriate patent protection for the same. Although the Agreement expressly provided that J.J. Reidy is required to make applications for foreign trademark and trade name registration and for filing any foreign patents, J.J. Reidy refused to cooperate and file the essential applications for foreign patent and trademark protection for the J.J. Reidy Patents and the air to water system, despite AirWater's continuing demands. In that regard, J.J. Reidy subsequently sought to excuse J.J. Reidy's performance of its obligations under the Agreement, claiming that the time limits for filing such patent protections in the various overseas countries had lapsed and that the J.J. Reidy Patents could therefore no longer be registered in those overseas countries. As a result, AirWater was deprived of the benefit of its bargain with J.J. Reidy to license the J.J. Reidy Patents. Id. at ¶¶ 30-33.

In addition to the Royalty Payments of either 5% or 7%, based on the size and number of the air to water machines sold, the Agreement also contained the following

provision for AirWater's payment to J.J. Reidy of a Minimum Monthly Royalty for a

period of twelve months:

> LICENSEE is to pay to LICENSOR a monthly Royalty
> payment in the amount of $10,000 per month commencing
> November 1st, 2003, or the Royalty payments due in
> accordance with those stated above whichever is the more.

> LICENSEE agrees that for a period of 12 months
> commencing November 1st, 2003, any unearned minimum
> monthly royalty shall be credited to any earned Royalties
> and may (if applicable) be applied at any time during this
> 12-month period.

Id. at ¶ 34.

In accordance with these terms, from November 1, 2003, through October 31,

2004, AirWater made monthly royalty payments to J.J. Reidy. Commencing November

1, 2004, in accordance with the Royalty Payments provisions of the Agreement,

AirWater's quarterly royalty fee (of either 5% or 7%) on gross sales was due to be paid to

J.J. Reidy for the last quarter of 2004, on February 15, 2005. Id. at ¶ 35.

Contrary to J.J. Reidy's negotiations inducing AirWater to enter into the

Agreement, contrary to the express terms of the Agreement set forth above, and contrary

to the clear intent of the parties as manifest in their course of prior performance under the

Agreement, J.J. Reidy claimed that AirWater was obligated to continue to pay Minimum

Monthly Royalty Payments beyond the limited one year term, in addition to AirWater's

quarterly Royalty Payments of either 5% or 7% based on AirWater's actual sales. On

January 13, 2005, J.J. Reidy sent written notice of default to AirWater Corporation,

thereby triggering a thirty-day cure period. In that regard, the Agreement expressly

provided that "termination shall become effective thirty (30) days following receipt of the

notice given by the party against whom the termination is sought, if such default or

8

breach is not rectified to the reasonable satisfaction of the parties within that time."
Rather than wait the mandatory 30 days required under the Agreement, however, J.J.
Reidy sent AirWater a second letter dated January 31, 2005, whereby J.J. Reidy
purported to terminate the parties' Agreement. Id. at ¶¶ 36-39.

In the meantime, J.J. Reidy engaged in a smear campaign against AirWater, going
public with J.J. Reidy's allegation that AirWater breached the Agreement by way of non-
payment of the disputed Minimum Monthly Royalty. In interviews with the press, J.J.
Reidy announced its intention to reject AirWater's tender of the disputed Minimum
Monthly Royalty Payment (under J.J. Reidy's interpretation, due thirty days from the
date of his January 13, 2005 demand letter), because "its too late. I don't want to have
anything to do with them." In the meantime, in furtherance of its strategy to prematurely
terminate the Agreement, J.J. Reidy negotiated most, if not all, of the shares of UCSY
stock received from AirWater in consideration for the exclusive, world-wide license for
the Reidy Patents. Further, J.J. Reidy publicly announced that it was looking for a new
group of investors and a new manufacturer to produce J.J. Reidy's air to water system
and actively recruited licensees and sub-licensees. Indeed, prior to November, 2004, J.J.
Reidy openly solicited licensees via J.J. Reidy's website:
www.drinkwaterfromtheair.com, offered international patent license agreements, and
offered to accept candidates for awarding new licenses and distributorships for J.J.
Reidy's air to water system. Additionally, prior to seeking to terminate the Agreement,
J.J. Reidy secretly negotiated with potential companies and licensees, including
AirWater's direct competitors, offering opportunities to obtain the J.J. Reidy Patents
directly from J.J. Reidy. Id. at ¶¶ 41-43.

Notwithstanding J.J. Reidy's numerous breaches and anticipatory breaches of the

Agreement as aforesaid, AirWater stood ready, willing and able to tender quarterly

royalty payments, and even proposed to pay such amounts into the Registry of the Circuit

Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida upon entry of a

Court Order authorizing the clerk thereof to accept the same. Id. at ¶ 44.

### III.  STATEMENT OF FACTS

On March 1, 2006, AirWater served on J.J. Reidy & Co., Inc. ("J.J. Reidy")

AirWater's first set of interrogatories and first request for production of documents.

Zayotti Affidavit, Exhs. A and B.

On April 4, 2006, AirWater served its responses to AirWater's first request for

production of documents.  Id., Exh. C.

On June 13, 2006, AirWater's counsel conferred with J.J. Reidy's counsel

pursuant to Local Rule 37.1. Id. at ¶ 6.

On June 19, 2006, J.J. Reidy served its unsworn responses to interrogatories.  Id.,

Exh. D.

On July 11, 2006, J.J. Reidy produced certain limited documents responsive to

AirWater's document requests. Id. at ¶ 8.

### IV.  ARGUMENT

### A.    SCOPE OF DISCOVERY

Pursuant to Fed. R. Civ. P. 26(b)(1)the scope and limits of discovery are defined

as follows:

> In General. Parties may obtain discovery regarding any
> matter, not privileged, which is relevant to the subject
> matter involved in the pending action, whether it relates to
> the claim or defense of the party seeking discovery or to the
> claim or defense of any other party, including the existence,

10

> description, nature, custody, condition, and location of any
> books, documents, or other tangible things and the identity
> and location of persons having knowledge of any
> discoverable matter. The information sought need not be
> admissible at the trial if the information sought appears
> reasonably calculated to lead to the discovery of admissible
> evidence.

Klonoski v. Mahlab, 156 F.3d 255, 267 (1ˢᵗ Cir. 1998), quoting, Fed.R.Civ.P. 26(b)(1).

Moreover, as the United States Supreme Court stated in Oppenheimer Fund, Inc.

v. Sanders, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), the word "relevant"

encompasses

> any matter that bears on, or that reasonably could lead to
> other matter that could bear on, any issue that is or may be
> in the case. . . .  Discovery is not limited to issues raised by
> the pleadings, for discovery itself is designed to help define
> and clarify the issues. Nor is discovery limited to the merits
> of a case, for a variety of fact-oriented issues may arise
> during litigation that are not related to the merits.

Klonoski, 156 F.3d at 267, citing, Oppenheimer, 437 U.S. at 351, 98 S.Ct. 2380 (citing

Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

In Hickman, the Court described the purpose of the discovery rules as follows:

> Under the prior federal practice, the pre-trial functions of
> notice-giving, issue-formulation and fact-revelation were
> performed primarily and inadequately by the pleadings.
> Inquiry into the issues and the facts before trial was
> narrowly confined and was often cumbersome in method.
> The new rules, however, restrict the pleadings to the task of
> general notice-giving and invest the deposition-discovery
> process with a vital role in the preparation for trial.  The
> various instruments of discovery now serve (1) as a device,
> along with the pre-trial hearing under Rule 16, to narrow
> and clarify the basic issues between the parties, and (2) as a
> device for ascertaining the facts, or information as to the
> existence or whereabouts of facts, relative to those issues.
> Thus civil trials in the federal courts no longer need be
> carried on in the dark.  The way is now clear, consistent
> with recognized privileges, for the parties to obtain *the*

> *fullest possible knowledge of the issues and facts before trial.*

Id. at 267, citing, Hickman, 329 U.S. at 500-01, 67 S.Ct. 385.  The Court added that the

discovery rules are to be accorded a "broad and liberal treatment" because

> [m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession.  *The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise.*

Klonoski, 156 F.3d at 268, citing, Hickman, 329 U.S. at 500-01, 67 S.Ct. 385.

Similarly, in United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983,

2 L.Ed.2d 1077 (1958), the Supreme Court stated that "[m]odern instruments of

discovery serve a useful purpose. . . .· They together with pretrial procedures make a trial

less a game of blindman's bluff and more a fair contest with the basic issues and facts

disclosed to the *fullest practicable extent.*  Only strong public policies weigh against

disclosure."  Klonoski, 156 F.3d. at 268, quoting, Proctor & Gamble, 356 U.S. at 682, 78

S.Ct. 983.

**B.    AIRWATER'S MOTION TO COMPEL FURTHER RESPONSES TO DOCUMENT REQUESTS MUST BE GRANTED BECAUSE J.J. REIDY'S RESPONSES ARE INCOMPLETE, EVASIVE AND RAISE INVALID OBJECTIONS**

**REQUEST NO. 1:**

> All documents requested to be identified in AirWater Patent's first (or any subsequent) set of interrogatories to Plaintiff.

**RESPONSE NO. 1:**

> The plaintiff objects to this request to the extent that it is overly broad, unduly burdensome and not reasonably

calculated to lead to the discovery of admissible evidence.
Subject to and without waiving its foregoing objections, the
plaintiff states that documents responsive to this request, if
any, will be produced.

**ARGUMENT: This request is neither overly broad nor unduly burdensome**

**and, therefore, J.J. Reidy should be ordered to produce all responsive documents.**

**Moreover, pursuant to Fed. R. Civ. P. 34(b) "if objection is made to part of an item**

**or category, the part shall be specified and inspection permitted of the remaining**

**part."**

### REQUEST NO. 2:

All documents upon which you rely in asserting this
action against AirWater Patents Corporation and/or
AirWater Corporation.

### RESPONSE NO. 2:

The plaintiff objects to this request to the extent that
it seeks documents which are protected from disclosure by
the attorney-client privilege, work product doctrine, and/or
trial strategy. The plaintiff objects to this request to the
extent that it is ambiguous, overly broad, unduly
burdensome and not reasonably calculated to lead to the
discovery of admissible evidence. Subject to and without
waiving the foregoing objections, the plaintiff states that
documents responsive to this request, if any, will be
produced.

**ARGUMENT: AirWater's request for documents upon which J.J. Reidy**

**relies in asserting this action is clearly reasonably calculated to lead to the discovery**

**of admissible evidence, and such request is neither ambiguous, nor overly broad,**

**nor unduly vague. Moreover, with respect to any documents that J.J. Reidy may**

**have withheld from disclosure on grounds of attorney-client privilege, work product**

**and/or trial strategy doctrines, J.J. Reidy was obligated Fed. R. Civ. P. 26(b)(3) to**

**provide a privilege log but failed to do so.**

13

**REQUEST NO. 4:**

All documents or communications that constitute, relate or refer to the Global Manufacturing and Marketing Licensing Agreement.

**RESPONSE NO. 4:**

The plaintiff objects to this request to the extent it is overly broad, unduly burdensome and not reasonable calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

**ARGUMENT:  The Global Manufacturing and Marketing Licensing Agreement, and its interpretation, are central to this case.  Accordingly, the requested documents are discoverable and J.J. Reidy's objections that this request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence are patently without merit.**

**REQUEST NO. 7:**

All documents or communications that relate or refer to the action entitled <u>Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al.</u>, United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 03-1798G.

**RESPONSE NO. 7:**

The plaintiff objects to this request to the extent it seeks documents which are protected by the attorney-client privilege, work product doctrine, and or trial strategy. The plaintiff further objects to this request to the extent that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

**REQUEST NO. 8:**

All documents that relate or refer to your efforts in defending the action entitled <u>Electric & Gas Technology,</u>

Inc. et al. v. Universal Communications, Inc., et al., United
States District Court for the Northern District of Texas,
Dallas Division, Civil Action No. 03-1798G, and or your
contribution of funds in connection therewith.

**RESPONSE NO. 8:**

The plaintiff objects to this request to the extent it
seeks documents which are protected by the attorney-client
privilege, work product doctrine, and or trial strategy. The
plaintiff further objects to this request to the extent that it is
not reasonably calculated to lead to the discovery of
admissible evidence. Subject to and without waiving the
foregoing objections, the plaintiff states that documents
responsive to this request, if any, will be produced.

**ARGUMENT:** **Request No. 7 and No. 8 seek documents that relate to the
litigation commenced by third parties in Texas challenging the validity of the
patents that J.J. Reidy licensed to AirWater. As a result of the Texas litigation,
AirWater asserted Plaintiff's prior material breach of the contract as an affirmative
defense to J.J. Reidy's claims. Additionally, AirWater has asserted a claim against
J.J. Reidy for unjust enrichment based on AirWater's defense of that litigation and
J.J. Reidy's refusal to assist therewith and/or contribute to the costs thereof. As
such, J.J. Reidy's assertion that this request is not reasonably calculated to lead to
the discovery of admissible evidence is baseless. Moreover, with respect to any
documents that J.J. Reidy may have withheld from disclosure on grounds of
attorney-client privilege, work product doctrine and/or trial strategy doctrine, J.J.
Reidy was obligated pursuant to Fed. R. Civ. P. 26(b)(3) to provide privilege log.**

**REQUEST NO. 10:**

All documents or communications that relate or
refer to the patents referred to in paragraph 4 of your First
Amended Complaint.

**RESPONSE NO. 10:**

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff further objects to the request to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that the documents responsive to this request, if any, will be produced.

**REQUEST NO. 11:**

All documents or communications that relate or refer to Patent Nos. 5,106,512; 5,149,446; 5,203,989; and 5,366,705.

**RESPONSE NO. 11:**

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff further objects to the request to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that the documents responsive to this request, if any, will be produced.

**REQUEST NO. 12:**

All documents or communications that reflect, relate or refer to the world-wide registration, enforceability and or validity of the patents for the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

**RESPONSE NO. 12:**

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. Subject to and without waiving the foregoing objections, the plaintiff states that the documents responsive to this request, if any, will be produced.

**ARGUMENT:** **The patents that J.J. Reidy licensed to AirWater, and the**

**world-wide registration, enforceability and/or validity thereof were at the heart of**

16

the parties' contractual relationship. Indeed, J.J. Reidy represented and warranted that it had the "entire right, title and interest" in the patents that J.J. Reidy licensed to AirWater on an exclusive basis, and agreed that the proprietary rights therein were to be "valid all over the world without restrictions." Almost immediately after licensing the patents from J.J. Reidy, AirWater was sued in Texas for patent infringement based on its promotion and sales of products based on the J.J. Reidy patents. In this action, AirWater is claiming, in relevant part, that J.J. Reidy has been unjustly enriched by virtue of AirWater's defense of that litigation. Additionally, AirWater has asserted J.J. Reidy's prior material breach of contract in failing to deliver to AirWater valid, world-wide enforceable patents as called for in the parties' contract. As such, J.J. Reidy's objections are without merit and the requested documents that relate or refer to the patents, patent infringement litigation and the world-wide registration, enforceability and/or validity of the patents are discoverable. Moreover, with respect to any documents as to which J.J. Reidy claims a privilege, J.J. Reidy failed to fulfill its obligation to provide a privilege log as required by the rules of procedure.

### REQUEST NO. 16:

All documents that support your computation of damages.

### RESPONSE NO. 16:

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

17

**ARGUMENT**:  J.J. Reidy has failed to produce any documents responsive to this request.  As to any documents that J.J. Reidy may have withheld from disclosure based on its claim of any privilege, J.J. Reidy has failed to provide the requisite privilege log.

### REQUEST NO. 17:

All documents which you intend to offer into evidence at the trial of this matter.

### RESPONSE NO. 17:

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy.  Subject to and without waiving the foregoing objections, the plaintiff answers as follows:  the plaintiff has not yet determined what documents it intends to offer into evidence at the trial of this matter.

**ARGUMENT**:  As to any documents that J.J. Reidy may have withheld from disclosure based on its claim of any privilege, J.J. Reidy has failed to provide the requisite privilege log.

### REQUEST NO. 18:

All documents relating to the subject matter of this litigation.

### RESPONSE NO. 18:

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy.  The plaintiff objects to this request to the extent it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**ARGUMENT**:  As to any documents that J.J. Reidy may have withheld from disclosure based on its claim of any privilege, J.J. Reidy has failed to provide the

requisite privilege log. **Moreover, since this request seeks documents that relate to the subject matter of this litigation, it is difficult to imagine how J.J. Reidy can object in good faith on the grounds that this request is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.**

### REQUEST NO. 19:

All documents that constitute, relate or refer to communications between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael J. Zwebner on the other hand.

### RESPONSE NO. 19:

The plaintiff objects to this request to the extent that it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**ARGUMENT: Documents that constitute, relate or refer to communications by and between the parties to this litigation and their principals are patently relevant and discoverable, and this request is obviously calculated to lead to the discovery of admissible evidence. There is simply nothing ambiguous about this request, nor is this request overly broad or unduly burdensome.**

### REQUEST NO. 25:

All documents or communications that constitute, relate or refer to the issuance of stock by AirWater Corporation, AirWater Patents and or UCSY to you.

### RESPONSE NO. 25:

The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

**ARGUMENT**:  This request, which seeks documents and communications regarding the issuance of stock to Plaintiff as called for in the parties' agreement, seeks documents that are clearly both relevant and reasonably calculated to lead to the discovery of admissible evidence.  Indeed, the parties' agreement called for the issuance of 4 millions shares of UCSY stock (valued at approximately $300,000) to J.J. Reidy as part of the consideration for the exclusive rights granted to AirWater.

### REQUEST NO. 26:

All documents that constitute, relate or refer to newspaper articles, press articles and or any other publications regarding the subject matter of this action.

### RESPONSE NO. 26:

The plaintiff objects to this request to the extent that it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

**ARGUMENT**:  This request for newspaper articles, press articles and/or any other publications regarding the subject matter of this action seeks documents that are relevant and discoverable.  Specifically, AirWater has alleged, among other things, that J.J. Reidy publicly announced its intention to reject AirWater's tender of the disputed Minimum Monthly Royalty Payment, termination of the parties' agreement, and that J.J. Reidy was looking for a new group of investors and a new manufacturer relative to the patents licensed to AirWater, all in breach of contract and the covenant of good faith and fair dealing.

### REQUEST NO. 27:

All documents that constitute, relate or refer to the
disposition of the UCSY, AirWater Corporation and or
AirWater Patents stock issued to you.

**RESPONSE NO. 27:**

The plaintiff objects to this request to the extent that
it is not reasonably calculated to lead to the discovery of
admissible evidence.

**ARGUMENT:  This request for documents relating to J.J. Reidy's**

**disposition of UCSY stock seeks documents that are discoverable and relevant to**

**AirWater's allegation that it transferred 4 million shares of stock to J.J. Reidy in**

**consideration, in part, for an exclusive, world-wide license for the Reidy patents,**

**and further, that J.J. Reidy negotiated said shares in furtherance of its strategy to**

**wrongfully terminate the parties' agreement, and that J.J. Reidy has been unjustly**

**enriched through its bad faith dealings with AirWater.**

**REQUEST NO. 28:**

All documents that constitute, relate or refer to any
and all agreements by and between you and or any third
party to license, sublicense, market and or manufacture the
patents and or water production/generation system referred
to in paragraph 4 of your Amended Complaint.

**RESPONSE NO. 28:**

The plaintiff objects to this request to the extent it is
not reasonably calculated to lead to the discovery of
admissible evidence.

**REQUEST NO. 29:**

All documents that constitute, relate or refer to any
and all gross revenues and profits you have received as a
result of any and all agreements by and between you and or
any third party to license, sublicense, market and or
manufacture the patents and or water production/generation
system referred to in paragraph 4 of your Amended
Complaint.

**RESPONSE NO. 29:**

  The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 30:**

  All documents that constitute, relate or refer to any and all efforts on your part to solicit licensing, sublicensing, marketing and or manufacturing agreements by and between you and any third party regarding the patents and or water production/generation system referred to in paragraph 4 of your Amended Complaint.

**RESPONSE NO. 30:**

  The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence.

**ARGUMENT: Request No. 28, No. 29 and No. 30 seek documents that are discoverable and relevant to AirWater's allegation that J.J. Reidy wrongfully offered and licensed the Reidy patents to third parties in breach of AirWater's exclusive rights and has profited thereby. Under these circumstances, J.J. Reidy is required to disgorge any and all profits it has received as a result of licensing the Reidy patents to third parties in violation of AirWater's exclusive rights.**

**REQUEST NO. 32:**

  All documents that constitute, relate or refer to communications by and between you and or James J. Reidy on the one hand, and Brian Dingman on the other hand regarding the subject matter of this litigation, including without limitation the patents referred to in paragraph 4 of your First Amended Complaint.

**RESPONSE NO. 32:**

  The plaintiff objects to this request to the extent it seeks documents which are protected by disclosure by the attorney-client privilege and the work product doctrine. The plaintiff further states that an attorney-client

relationship exists between James J. Reidy and Brian
Dingman and any documents the defendant seeks in request
no. 32 are protected by the attorney-client privilege and the
work product doctrine.

**ARGUMENT:  With respect to any and all documents as to which J.J. Reidy**

**has withheld based on a claim of privilege, J.J. Reidy was obligated to provide a**

**privilege log but failed to do so.  Moreover, Attorney Dingman provided legal advice**

**to both J.J. Reidy and AirWater relative to the alleged validity and superiority of**

**the Reidy patents, overseas registration thereof, and the defense of the Texas patent**

**infringement litigation and counterclaims relative thereto and, therefore, the**

**attorney-client privilege does not protect communications regarding these subjects**

**from disclosure to AirWater.  Zayotti Affidavit, Exh. E.**

### REQUEST NO. 33:

All documents that constitute, relate or refer to
communications by and between you and or James J. Reidy
on the one hand, and any third party regarding the subject
matter of this litigation.

### RESPONSE NO. 33:

The plaintiff objects to this request to the extent it
seeks documents which are protected by disclosure by the
attorney-client privilege and the work product doctrine.
The plaintiff objects to this request to the extent that it is
ambiguous, overly broad, unduly burdensome and not
reasonably calculated to lead to the discovery of admissible
evidence.  Subject to and without waiving the foregoing
objections, the plaintiff states that documents responsive to
this request, if any, will be produced.

**ARGUMENT:  This request for documents that constitute, relate or refer to**

**communications by and between J.J. Reidy and/or its principal on the one hand,**

**and third parties on the other hand, is clearly reasonably calculated to lead to the**

**discovery of admissible evidence and is simply not ambiguous, overly broad or**

unduly burdensome.  Moreover, with respect to any documents as to which J.J.

Reidy has withheld based on a claim of privilege, J.J. Reidy was obligated to provide

a privilege log.

### REQUEST NO. 34:

All documents or communications that relate or
refer to the financial condition of J.J. Reidy, including but
not limited to any and all tax returns, financial statements,
income statements and balance sheets from 2000 through
the present.

### RESPONSE NO. 34:

The plaintiff objects to this request as it is overly
burdensome, not relevant and not reasonably calculated to
lead to the discovery of admissible evidence.

**ARGUMENT:  J.J. Reidy's objection to this request as overly burdensome,**

not relevant and not reasonably calculated to lead to the discovery of admissible

evidence cannot be sustained.  AirWater has alleged that J.J. Reidy licensed the

Reidy patents to third parties in violation of the exclusive rights granted to

AirWater.  Under these circumstances, J.J. Reidy is required to disgorge any and all

profits it has received as a result of licensing the Reidy patents to third parties in

violation of AirWater's exclusive rights.  Thus the requested documents regarding

J.J. Reidy's financial condition, income and the like are relevant and discoverable.

### REQUEST NO.  36:

All documents or communications with respect to
J.J. Reidy that constitute, relate or refer to any and all:

a.      minutes and consent actions of the
directors and shareholders;

b.      meetings of the directors and
shareholders;

24

c.      corporate filings including but not
limited to articles of organization, changes
of officers and directors, and annual reports;

d.      shareholder agreements and any
amendments thereto;

e.      by-laws and any amendments
thereto.

**RESPONSE NO. 36:**

The plaintiff objects to this request to the extent that
it is ambiguous, overly broad, unduly burdensome and not
reasonably calculated to lead to the discovery of admissible
evidence. Subject to and without waiving the foregoing
objections, the plaintiff states that documents responsive to
this request, if any, will be produced.

**ARGUMENT: J.J. Reidy's objections to this request are similarly baseless.**

**Documents and communications that constitute, relate or refer to minutes and**

**consent actions of the directors and shareholders; meetings of the directors and**

**shareholders; corporate filings including but not limited to articles of organization,**

**changes of officers and directors, and annual reports; shareholder agreements and**

**any amendments thereto; by-laws and any amendments thereto, are likely to**

**contain information probative of the parties' respective claims and defenses in these**

**consolidated actions. Moreover, pursuant to Fed. R. Civ. P. 34(b) "if objection is**

**made to part of an item or category, the part shall be specified and inspection**

**permitted of the remaining part."**

**C.      AIRWATER'S MOTION TO COMPEL FURTHER RESPONSES TO
INTERROGATORIES MUST BE GRANTED BECAUSE J.J. REIDY'S
RESPONSES ARE INCOMPLETE, EVASIVE AND RAISE INVALID
OBJECTIONS**

**INTERROGATORY NO. 7:**

Please state each and every material fact that supports your breach of contract claim against AirWater Corporation.

**RESPONSE NO. 7:**

Objection. The plaintiff has moved to amend the Complaint to include a claim for intentional misrepresentation against AirWater Corporation. The claim is based upon the intentional misrepresentation of AirWater Corporation that it had $2 million in financing available to market the products based upon J.J. Reidy's patents.

**ARGUMENT:  J.J. Reidy states no valid basis (indeed it states no basis whatsoever) for its objection, and the balance of its response is entirely nonresponsive to this interrogatory.**

**INTERROGATORY NO. 8:**

Please identify and describe the content of all communications by and between you and or James J. Reidy on the one hand, and Brian Dingman on the other hand, regarding the subject matter of this litigation, including without limitation the patents referred to in paragraph 4 of your First Amended Complaint.

**RESPONSE NO. 8:**

The plaintiff objects to this interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff further objects on the grounds of attorney-client privilege, work product doctrine and/or trial strategy.

**ARGUMENT:  Attorney Dingman provided legal advice to both J.J. Reidy and AirWater relative to the alleged validity and superiority of the Reidy patents, overseas registration thereof, and the defense of the Texas patent infringement litigation and counterclaims relative thereto.  <u>Zayotti Affidavit</u>, Exh.**

**E. Accordingly, the substance of J.J. Reidy's communications with Attorney Dingman regarding this litigation, which arises out of the very same matters as to which Attorney Dingman provided legal advice to AirWater, are not protected by the attorney-client privilege. Moreover, because this interrogatory seeks the substance of communications regarding this lawsuit, this interrogatory is reasonably calculated to lead to the discovery of admissible evidence and is neither overly broad nor unduly burdensome.**

<u>**INTERROGATORY NO. 9:**</u>

Please identify and describe the content of all communications by and between you and or James J. Reidy on the one hand, and any third party regarding the subject matter of this litigation.

<u>**RESPONSE NO. 9:**</u>

The plaintiff objects to this interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff further objects on the grounds of attorney-client privilege, work product doctrine and/or trial strategy.

<u>**ARGUMENT**</u>**: Attorney Dingman provided legal advice to both J.J. Reidy and AirWater relative to the alleged validity and superiority of the Reidy patents, overseas registration thereof, and the defense of the Texas patent infringement litigation and counterclaims relative thereto. <u>Zayotti Affidavit</u>, Exh. E. Accordingly, the substance of J.J. Reidy's communications with Attorney Dingman regarding this litigation, which arises out of the very same matters as to which Attorney Dingman provided legal advice to AirWater, are not protected by the attorney-client privilege. Moreover, because this interrogatory seeks the substance of communications regarding this lawsuit, this interrogatory is reasonably**

calculated to lead to the discovery of admissible evidence and is neither overly broad nor unduly burdensome.

### INTERROGATORY NO. 10:

Please identify each and every contract by and between you and any third party relating to the patents and or water production/generation system referred to in paragraph 4 of your First Amended Complaint, including but not limited to any licenses, sublicenses, marketing and or manufacturing agreements.

### RESPONSE NO. 10:

The plaintiff objects to this interrogatory to the extent that it seeks information following the proper termination of the Licensing Agreement on the grounds that such information is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without the foregoing obligation [sic], the plaintiff states as follows:

There are no contracts prior to the termination of the Licensing Agreement.

**ARGUMENT:** J.J. Reidy's objection is patently improper, and the balance of its response is incomplete as it is limited to contracts prior to J.J. Reidy's termination of the contract. Indeed, AirWater claims, among other things, that J.J. Reidy wrongfully terminated the parties' contract and licensed the Reidy patents to third parties in violation of AirWater's exclusive rights. For example, J.J. Reidy received and accepted from AirWater the benefits of an up-front lump sum payment of $100,000, 4 million shares of UCSY stock valued at approximately $300,000, minimum monthly royalties for a period of twelve months totaling $120,000, AirWater's defense of litigation challenging the validity of the Reidy patents at a cost of approximately $180,000, and expenditures by AirWater, by and through its sister corporation and parent company, in excess of $2 million on

research, development, manufacturing, shipping and marketing of the products

based on the Reidy patents. In the meantime, it would appear that J.J. Reidy was

simultaneously in negotiations dating back to 2001 or 2002 to license the patents to

with Mike Klein, World Wide Water, LLC, World Wide Water, Inc. and/or

Air2Water, LLC for $3 to $4 million. Zayotti Affidavit, Exh. F. Under these

circumstances, J.J. Reidy is obligated to disgorge any and all profits he has received

as a result of his violation of AirWater's exclusive license. Accordingly, AirWater is

entitled to the requested information.

### INTERROGATORY NO. 12:

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding quarterly royalty payments under the Global Manufacturing and Marketing Licensing Agreement.

### RESPONSE NO. 12:

I recall having communications with Michael Zwebner regarding quarterly royalty payments.

**ARGUMENT:** J.J. Reidy response is incomplete in that it indicates that it

had conversations by and through its principal, Mr. James Reidy, with Michael

Zwebner regarding quarterly royalty payments but does not describe the content

thereof.

### INTERROGATORY NO. 16:

If you contend that you cooperated, assisted and or contributed financially to the defense of the action entitled Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al., United States District Court for the Northern District of Texas, Dallas Division, Civil

Action No. 03-1798G, please state each and every material
fact that supports your contention.

**RESPONSE NO. 16:**

The plaintiff objects to this interrogatory to the
extent that it is not reasonably calculated to lead to the
discovery of admissible evidence.

**ARGUMENT: The requested information is relevant and the interrogatory
reasonably calculated to lead to the discovery of admissible evidence because
AirWater alleges that J.J. Reidy did not assist, cooperate or participate in the cost of
defending the action entitled <u>Electric & Gas Technology, Inc. et al. v. Universal
Communications, Inc., et al.</u>, United States District Court for the Northern District
of Texas, Dallas Division, Civil Action No. 03-1798G, wherein the plaintiff in that
case challenged the validity of the patents that J.J. Reidy licensed to AirWater. As a
result, AirWater contends that J.J. Reidy was unjustly enriched by AirWater's
defense of the Reidy patents in that action at a cost of approximately $180,000.**

**INTERROGATORY NO. 17:**

Please identify and describe the content of any and
all communications by and between you and or James J.
Reidy on the one hand, and Electric & Gas Technology,
Inc., Atmospheric Water Technology, Inc. and or Richard
Ehrlich on the other hand.

**RESPONSE NO. 17:**

The plaintiff objects to this interrogatory to the
extent it is overly broad, unduly burdensome and not
reasonably calculated to lead to the discovery of admissible
evidence. Subject to and without waiving the foregoing
objection, the plaintiff states as follows:

Reidy has never met or communicated with Richard
Erlich in any manner.

**ARGUMENT:**  The requested information is relevant and the interrogatory reasonably calculated to lead to the discovery of admissible evidence because AirWater alleges that J.J. Reidy did not assist, cooperate or participate in the cost of defending the action entitled <u>Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al.</u>, United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 03-1798G, wherein the plaintiff in that case challenged the validity of the patents that J.J. Reidy licensed to AirWater. More specifically, the plaintiff in that case alleged that J.J. Reidy misappropriated the intellectual property upon which the Reidy patents are based.  At a minimum, if J.J. Reidy had knowledge of the claims in this case, which was commenced on August 12, 2003 almost immediately after AirWater and J.J. Reidy executed their agreement, J.J. Reidy's failure to disclose to AirWater the existence of these claims constituted fraudulent inducement of the agreement between AirWater and J.J. Reidy.  Moreover, J.J. Reidy's response is incomplete in that it indicates only that J.J. Reidy never communicated with or met Mr. Ehrlich.

### INTERROGATORY NO. 18:

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand, and World Wide Water, Inc., World Wide Water, LLC and or Mike Klein on the other hand.

### RESPONSE NO. 18:

The plaintiff objects to this interrogatory to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The plaintiff further objects to this interrogatory on the grounds that it is unlimited in time and scope rendering it unanswerable in its present form.

31

**ARGUMENT:**  The requested information is highly relevant to AirWater's claims that J.J. Reidy anticipatorily and wrongfully terminated its Agreement with AirWater and licensed the J.J. Reidy Patents to third parties in violation of AirWater's exclusive rights.  This information is also probative of J.J. Reidy's motive for prematurely terminating the parties' agreement and the pretextual nature of the reasons he offered for doing so.  Indeed, Mike Klein, World Wide Water, LLC, World Wide Water, Inc. and/or Air2Water, LLC engaged in negotiations with J.J. Reidy dating back to 2001 or 2002 to license the J.J. Reidy Patents for $3 to $4 million.  <u>Zayotti Affidavit</u>, Exh. F.  Finally, J.J. Reidy's response does not comply with Fed. R. Civ. P. 33(b), which provides, in relevant part, that "each interrogatory shall be answered separately and fully. . . unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."

### INTERROGATORY NO. 19:

Please identify each person you expect to call as a fact witness at trial and for each person state:

a)    his/her name;

b)    address;

c)    telephone number; and

d)    fully and completely, the substance
       of the testimony to be given.

### RESPONSE NO. 19:

The plaintiff objects to this interrogatory on the grounds of attorney-client privilege, work product doctrine and/or trial strategy.  Subject to and without waiving the foregoing objections, the plaintiff answers as follows:  the

32

plaintiff has not yet determined who will be called as a fact witness at the trial of this matter.

**ARGUMENT: This information is discoverable and J.J. Reidy's objections are improper.**

### INTERROGATORY NO. 20:

Please identify each person you expect to call as an expert witness at trial and for each person state:

    a)    his/her name;

    b)    address;

    c)    the subject matter upon which he/she is expected to testify;

    d)    the substance of the facts and opinions to which he/she is expected to testify; and

    e)    fully and completely the substance of the grounds for each opinion.

### RESPONSE NO. 20:

The plaintiff objects to this interrogatory on the grounds of attorney-client privilege, work product doctrine and/or trial strategy. Subject to and without waiving the foregoing objections, the plaintiff answers as follows: the plaintiff has not yet determined whether it intends to call an expert at trial. The plaintiff will seasonably supplement its response to this interrogatory, as appropriate, in accordance with the rules for expert disclosures.

**ARGUMENT: This information is discoverable and J.J. Reidy's objections are improper.**

**D.    AIRWATER'S MOTION TO COMPEL MUST BE GRANTED BECAUSE J.J. REIDY WAIVED ANY AND ALL OBJECTIONS PURSUANT TO LOCAL RULES 33.1 AND 34.1 BY FAILING TO TIMELY RESPOND TO AIRWATER'S INTERROGATORIES AND DOCUMENT REQUESTS**

Local Rules 33.1 and 34.1 provide, in relevant part, that "[a]ny ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived." Local Rule 33.1(C)(1); Local Rule 34.1(C)(1).

AirWater served its first set of interrogatories on J.J. Reidy on March 1, 2006, and J.J. Reidy failed to serve its responses until June 19, 2006 – 110 days later. ") AirWater's first set of interrogatories and first request for production of documents. Accordingly, because J.J. Reidy failed to respond and/or object to AirWater's first set of interrogatories within 30 days after the service thereof as provided by Fed. R. Civ. P. 33(b)(3), J.J. Reidy's untimely objections are deemed waived under Local Rule 33.1(C)(1). Moreover, it should be noted that J.J. Reidy failed to respond under oath to AirWater's first set of interrogatories as required by Fed. R. Civ. P. 33(b)(1).

By the same token, J.J. Reidy's responses to AirWater's first request for production of documents were untimely and, therefore, J.J. Reidy's objections thereto are deemed waived pursuant to Local Rule 34.1(C)(1). Indeed, although AirWater served its first request for production of documents on March 1, 2006, J.J. Reidy failed to serve its responses to AirWater's document requests until 34 days after the date of service thereof on Tuesday, April 4, 2006. Even with the benefit of the extra 3 days added to the prescribed for responding pursuant to Fed. R. Civ. P. 6(e), J.J. Reidy's responses to AirWater's request for documents were untimely and, therefore, all objections were waived.

## V. CONCLUSION

WHEREFORE, based upon the foregoing points and authorities AirWater

respectfully requests that this Honorable Court grant AirWater's Motion to Compel

Further Responses to Interrogatories and Request for Production of Documents.

AIRWATER CORPORATION AND
AIRWATER PATENTS, INC.

Respectfully submitted,

Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan Werlin LLP
265 Franklin Street
Boston, Massachusetts  02110-3113
(617) 951-1400

Dated: September 28, 2006

---

**CERTIFICATE OF SERVICE**
I hereby certify that this document filed through the ECF
system will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) and paper copies
will be sent to those indicated as non registered participants on
_September 28, 2006_.

---