## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **J.J. REIDY & CO., INC.,** | |
| **Plaintiff,** | CIVIL ACTION NO. 05-40049-FDS |
| **v.** | |
| **AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,** | |
| **Defendants.** | |
| **AIRWATER PATENTS, INC.** | |
| **Plaintiff,** | CIVIL ACTION NO. 06-10137-FDS |
| **v.** | |
| **J.J. REIDY & CO., INC.** | |
| **Defendant.** | |

## AFFIDAVIT OF MATTHEW P. ZAYOTTI, ESQ. IN SUPPORT OF MOTIONS AIRWATER CORPORATION AND AIRWATER PATENTS, INC. TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND TO AMEND SCHEDULING ORDER

I, Matthew P. Zayotti, Esquire, do hereby state and depose as follows:

1.  I am an associate with the law firm Keegan Werlin LLP, and I am an attorney in good standing of the bar of the Commonwealth of Massachusetts.

2.  Attorney Richard Kirby and I represent the Defendants AirWater Corporation and AirWater Patents, Inc. in connection with the above-captioned consolidated actions.

3.      On March 1, 2006, AirWater served on J.J. Reidy AirWater's first set of interrogatories and first request for production of documents, true and accurate copies of which are attached to this affidavit as Exhibits A and B.

4.      On April 4, 2006, J.J. Reidy served its responses to AirWater's first request for production of documents, a true and accurate copy of which is attached to this affidavit as Exhibit C.

5.      On June 7, 2006, I sent correspondence to Maura A. Greene, Esq., counsel for J.J. Reidy, delineating the numerous deficiencies in J.J. Reidy's responses to discovery, and requesting a discovery conference with counsel for J.J. Reidy pursuant to Local Rule 37.1.

6.      On June 13, 2006, I conferred with Attorney Greene pursuant to Local Rule 37.1, during which she promised to produce certain responsive documents and provide J.J. Reidy's responses to interrogatories. In light of the fact that we had scheduled a mediation and the possibility that the mediation might obviate the need for further litigation, Attorney Greene and I mutually agreed that pending the outcome of the mediation (1) the previously scheduled depositions of J.J. Reidy and AirWater would be postponed, (2) AirWater would refrain from filing a motion to compel and await J.J. Reidy's responses to interrogatories and document production, and (3) the parties would file a joint motion to extend discovery.

7.      On June 19, 2006, J.J. Reidy served unsworn responses to interrogatories, a true and accurate copy of which is attached hereto as Exhibit D.

8.      On July 11, 2006, Attorney Greene produced certain limited documents responsive to AirWater's document requests.

9.     On Friday, July 14, 2006, I sent Attorney Greene a draft joint motion to extend the discovery deadline, which was set to expire on July 17, 2006. Late that afternoon, after receiving my draft joint motion, Attorney Greene called me regarding the draft joint motion and advised me that T.J. Conte, Esq., the partner in her office responsible for the case, advised her that he wanted to limit any further discovery to the previously noticed depositions of the parties. In that regard, Attorney Greene advised me that the litigation had already resulted in substantial legal fees to J.J. Reidy, and that J.J. Reidy did not want to spend any more money on discovery.

10.     Having already previously agreed to jointly requesting an extension of the discovery deadline pending the outcome of the mediation, which would have permitted AirWater to freely conduct any and all additional discovery that was needed in the event that the case did not settle, I was caught off guard and taken aback by Attorney Greene's apparent refusal to honor our prior agreement to jointly request an extension of discovery. I suggested that we try to finalize the motion and file the same on Monday, July 17, 2006.

11.     On Monday, July 17, 2006, I contacted Attorney Greene and advised her that I would not agree to restrict the requested extension of the discovery deadline to completion of the previously noticed depositions. In that regard, I pointed out to Attorney Greene that our agreement to extend discovery contemplated a reservation of rights by both parties to conduct additional discovery in the event the mediation proved to be unsuccessful, that AirWater had sufficient time (more than one month) to complete the relevant discovery at the time we had agreed to jointly request the extension of discovery, that I had relied on our agreement in refraining from initiating and completing additional discovery, and that AirWater would now be unfairly prejudiced by J.J. Reidy's counsel's

3

refusal to honor the agreement to jointly request an extension of discovery since the deadline was about to expire.

12.     Notwithstanding the foregoing, after speaking again with Attorney Conte, Attorney Greene advised me that she would not join in a motion to extend the discovery deadline as previously agreed and suggested that the issue would become moot if the parties were able to resolve their differences through mediation.

13.     On July 25, 2006, the parties engaged in mediation as scheduled. In order to accommodate J.J. Reidy, whose principal place of business is located in Holden, Massachusetts, my client, Michael J. Zwebner, President of AirWater, agreed to conduct the mediation at the offices of J.J. Reidy's counsel in Worcester, Massachusetts. In order to attend, Mr. Zwebner made a special trip from Israel to Boston, and then from Boston to Worcester. Unfortunately, the mediation was unsuccessful.

14.     Until now, I have been unable to complete preparation of this motion. On August 1, 2006, my daughter was born and thereafter I took a significant period of time off to provide care and support for his new-born child and wife. Since returning to work, I have had at least nine (9) days of depositions in other cases, including but not limited to five (5) days of depositions that required two separate trips back and forth to Gainesville, Florida.

15.     Attached to this affidavit as Exhibit E are true and accurate copies of correspondence relating to Brian Dingman, Esq.

16.     Attached to this affidavit as Exhibit F are true and accurate copies of correspondence referring to negotiations between J.J. Reidy and Mike Klein, World Wide Water, LLC, World Wide Water, Inc. and or Air2Water, LLC.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS

_____ DAY OF SEPTEMBER, 2006.

Matthew P. Zayotti

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on

---

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 05-40049-FDS

| |
|---|
| **J.J. REIDY & CO., INC.,** |
| **Plaintiff,** |
| **v.** |
| **AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,** |
| **Defendants.** |

**DEFENDANT AIRWATER PATENTS CORPORATION'S**
**FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Pursuant to Fed. R. Civ. P. 33, the Defendant AirWater Patents Corporation hereby propounds the following interrogatories to the Plaintiff J.J. Reidy & Co., Inc. to be answered in writing and under oath within thirty (30) days after the service hereof.

The answers to these interrogatories must include information known to Plaintiff or its agents, including its attorneys, and all persons acting on its behalf or under its control. If the person answering these interrogatories does not have enough information to answer an interrogatory, it is his or her duty to make a reasonable effort to obtain such information and to supplement these responses immediately.

**I. DEFINITIONS**

A.    The term "document" is used in the broadest sense and includes but is not limited to originals and non-identical copies, drafts, alterations, modifications, changes or

amendments whether different from the originals by reason of any notation made on such copies or otherwise, of the following items, whether typed, printed, recorded, photographed, videotaped, filmed, taped, microfilmed, microfiched or reproduced by any other mechanical or electronic process, or written or produced by hand, namely: agreements; communications, including inter-office and intra-office communications; and inter-company and intra-company communications; bulletins; letters; correspondence; telegrams; emails; teletypes; telefax; memoranda; agenda; records; books; summaries of records or notations of any sort of personal or telephone conversations or interviews; telephone logs; diaries; forecasts; statistical statements; accountants' work papers; graphs; charts; accounts; analytical records; reports; studies; minutes or records of meetings or conferences; reports and/or summaries of interviews; reports and/or summaries of investigations; opinions or reports of consultants; reports or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; notes; projections; drafts of any documents; working paper; ledgers, checks, front and back; check stubs or receipts; purchase orders; statements; returns; summaries; invoices; work sheets; any other documents or writings of whatever description including, but not limited to, any information contained in any computer although not yet printed out within your possession, computer magnetic or optical disc in your possession, custody or control or the possession, custody or control of any agent, employee, or other persons acting or purporting to act on your behalf (including without limitation, attorneys, accountants and investment bankers or advisors).

B.      A document is deemed to be in the respondent's "control" if the deponent has the right to secure the document or a copy thereof from another person (including but

2

not limited to respondent's counsel) or public or private entity having actual physical possession thereof.

C.    The term "communication" shall mean any transfer of information, data, ideas, fact, non-fact, opinion, or contents of any document including but not limited to any utterance, conversation, notation, statement of any nature whatsoever, correspondence, electronic mail, photograph, image, sign or signal, gesture, or oral or telephonic conversation.

D.    The term "person" includes natural persons, corporations, partnerships, unincorporated associations, trusts, municipalities, government bodies, or any agent, division, or sub-part of any person defined above, and all other entities in law or in fact.

E.    The terms "relating to" or "relating thereto" means relating or pertaining in any way to, referring to, reflecting, recording, memorializing, mentioning, constituting, supporting or concerning, directly or indirectly.

F.    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "including" means including without limitation.

G.    The term "or" shall mean and/or.

H.    The term "AirWater Corporation" refers to the Defendant AirWater Corporation.

I.    The term "AirWater Patents" refers to the Defendant AirWater Patents Corporation.

J.    The term "UCSY" refers to Universal Communications Systems, Inc.

K.    The terms "J.J. Reidy," "Plaintiff," "you," "your" and "yours" refer to the Plaintiff J.J. Reidy & Co., Inc. and any of its agents, employees, servants or contractors, and any person, organization, or entity from which he has a right to request and receive any of the information or documents requested herein.

L.    The term "Global Manufacturing and Marketing Licensing Agreement" refers to the Global Manufacturing and Marketing Licensing Agreement by and between J.J. Reidy & Co., Inc. and AirWater Corporation dated March 21, 2003.

## II. INSTRUCTIONS

A.    Whenever in these interrogatories you are asked to "identify," you are requested:

(1)    when identifying a person to give such person's (i) full name, (ii) business and residence addresses, (iii) last known telephone number (iv) present or last known position and business affiliation, and (v) position and business affiliation at the time in question;

(2)    when identifying any communication to identify (i) the parties thereto, (ii) the date of the communication, (iii) the place of the communication, (iv) whether it was in person or by telephone, (v) the exact nature and substance of the communication, and (vi) whether such communication has since been reduced to writing and, if so, to identify each document and the present custodian thereof; and

(3)    when identifying a document to (i) identify the author thereof and the parties thereto, (ii) state its title or other identifying data, (iii)

4

state the date that the documents bears or, if no date appears thereon, the approximate date, (iv) state the exact nature and substance thereof, (v) identify each person having possession, care, custody or control of the original and any copies thereof, and (vi) if such document was, but no longer is, in your possession or subject to your control, state what disposition was made of it and state its content as completely and accurately as you can.

B.     In answering each interrogatory, the respondent is requested to identify in its answer to each interrogatory each document used in answering the interrogatory and each document in the possession, custody or control or of which the respondent has knowledge which contains any of the information requested in the interrogatory.

C.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Interrogatories are deemed to be continuing so as to require further and supplemental responses if the respondent hereto, witnesses and/or such other persons who are served herewith obtain additional information between the time of the initial response and the time of hearing or trial.

D.     If any information called for by any interrogatory herein is withheld because of a claim of privilege or immunity, identify as to each such document or communication:

(1)     its date;

(2)     its author(s);

(3)     the business or position of its author(s);

(4)     its recipient(s);

(5)  the business or position of its recipient(s);

(6)  its number of pages;

(7)  its subject matter;

(8)  the statute, rule or decision on which the claim of privilege or immunity is based; and

(9)  the paragraph of the interrogatory to which the document and/or communication is responsive.

E.    Where an interrogatory calls for both factual and opinion answers, each answer shall be designated as to whether it is factual or opinion in nature. Where an answer contains both factual and opinion information, the factual information shall be designated factual and the opinion information shall be designated opinion.

## III. INTERROGATORIES

### INTERROGATORY NO. 1:

Please state your full name, date of birth, residential address, social security number, educational background, and most recent occupation and employment, title, and business address.

### INTERROGATORY NO. 2:

Please describe any actions you have taken in connection with preparing your responses to these interrogatories, including but not limited to identifying separately, with respect to each of your responses, any documents reviewed, any persons you have consulted and the substance of the information obtained from each such document or person in connection with each such response.

### INTERROGATORY NO. 3:

Please identify all persons who have any knowledge of, or have expressed any opinion with respect to, any relevant facts relating to this litigation and as to each such person state fully and completely the knowledge and/or opinion such person has or has expressed.

**INTERROGATORY NO. 4:**

Please identify each communication, whether oral or written, between Benoit on the one hand and Wynne and or Wynne Oil on the other hand, which constitutes, relates or refers to the basis of, or any event, act, omission, fact or circumstance relating to, any claim made by Benoit in this litigation.

**INTERROGATORY NO. 5:**

Please state each and every material fact that supports your allegation in paragraph 9 of your First Amended Complaint that "Defendants failed to commit resources and put forth best efforts in accomplishing, completing, and fulfilling their promises to establish and maintain the awareness and exposure of products manufactured by Defendants base don the patents licensed by J.J. Reidy and to enhance sales and future growth."

**INTERROGATORY NO. 6:**

Please state each and every material fact that supports the allegation in paragraphs 8 and 11 of your First Amended Complaint to the effect that AirWater Patents breached the parties Global Manufacturing and Marketing Licensing Agreement by failing to make its required minimum monthly royalty payments to J.J. Reidy, including in your response without limitation identification of the specific provisions of the Global Manufacturing and Marketing Licensing Agreement that you contend AirWater Patemts breached.

**INTERROGATORY NO. 7:**

Please state each and every material fact that supports your breach of contract claim against AirWater Corporation.

**INTERROGATORY NO. 8:**

Please identify and describe the content of all communications by and between you and or James J. Reidy on the one hand, and Brian Dingman on the other hand, regarding the subject matter of this litigation, including without limitation the patents referred to in paragraph 4 of your First Amended Complaint.

**INTERROGATORY NO. 9:**

Please identify and describe the content of all communications by and between you and or James J. Reidy on the one hand, and any third party regarding the subject matter of this litigation.

**INTERROGATORY NO. 10:**

Please identify each and every contract by and between you and any third party relating to the patents and or water production/generation system referred to in paragraph 4 of your First Amended Complaint, including but not limited to any licenses, sublicenses, marketing and or manufacturing agreements.

**INTERROGATORY NO. 11:**

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding the anticipated lack of royalties during the Defendants' start-up phase in marketing the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

**INTERROGATORY NO. 12:**

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding quarterly royalty payments under the Global Manufacturing and Marketing Licensing Agreement.

**INTERROGATORY NO. 13:**

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding minimum monthly royalty payments under the Global Manufacturing and Marketing Licensing Agreement, including but not limited to the parties' intent to limit the minimum monthly royalty payment obligation to a period of one year.

**INTERROGATORY NO. 14:**

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding the anticipated lack of royalties during the Defendants' start-up phase in marketing the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

**INTERROGATORY NO. 15:**

Please state each and every material fact that supports the allegation in paragraph 13 of your First Amended Complaint that "J.J. Reidy has fulfilled all of its obligations under the License."

**INTERROGATORY NO. 16:**

If you contend that you cooperated, assisted and or contributed financially to the defense of the action entitled Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al., United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 03-1798G, Please state each and every material fact that supports your contention.

**INTERROGATORY NO. 17:**

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand, and Electric & Gas Technology, Inc., Atmospheric Water Technology, Inc. and or Richard Ehrlich on the other hand.

**INTERROGATORY NO. 18:**

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand, and World Wide Water, Inc., World Wide Water, LLC and or Mike Klein on the other hand.

**INTERROGATORY NO. 19:**

Please identify each person you expect to call as a fact witness at trial and for each person state:

    a)     his/her name;

    b)     address;

    c)     telephone number; and

    d)     fully and completely, the substance of the testimony to be given.

**INTERROGATORY NO. 20:**

Please identify each person you expect to call as an expert witness at trial and for each person state:

    a)     his/her name;

    b)     address;

    c)     the subject matter upon which he/she is expected to testify;

    d)     the substance of the facts and opinions to which he/she is expected to testify; and

    e)     fully and completely the substance of the grounds for each opinion.

DEFENDANT AIRWATER PATENTS
CORPORATION

By its attorneys,

Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, Massachusetts  02110-3113
(617) 951-1400

Dated:  March 1, 2006

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document(s) was served upon the attorney of record for each other party by hand-delivery - US Mail on _March 1, 2006_.

---

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 05-40049-FDS

| |
|---|
| **J.J. REIDY & CO., INC.,** |
| **Plaintiff,** |
| **v.** |
| **AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,** |
| **Defendants.** |

**DEFENDANT AIRWATER PATENTS CORPORATION'S**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Fed. R. Civ. P. 34, the AirWater Patents Corporation hereby requests in accordance with the definitions and instructions set forth herein, that the Plaintiff J.J. Reidy & Co., Inc. produce the following documents for inspection and copying at the offices of Keegan Werlin LLP, 265 Franklin Street, Boston, MA 02110 within thirty (30) days after service of this request.

**II. DEFINITIONS**

A.      The term "document" is used in the broadest sense and includes but is not limited to originals and non-identical copies, drafts, alterations, modifications, changes or amendments whether different from the originals by reason of any notation made on such copies or otherwise, of the following items, whether typed, printed, recorded, photographed, videotaped, filmed, taped, microfilmed, microfiched or reproduced by any

other mechanical or electronic process, or written or produced by hand, namely: agreements; communications, including inter-office and intra-office communications; and inter-company and intra-company communications; bulletins; letters; correspondence; telegrams; emails; teletypes; telefax; memoranda; agenda; records; books; summaries of records or notations of any sort of personal or telephone conversations or interviews; telephone logs; diaries; forecasts; statistical statements; accountants' work papers; graphs; charts; accounts; analytical records; reports; studies; minutes or records of meetings or conferences; reports and/or summaries of interviews; reports and/or summaries of investigations; opinions or reports of consultants; appraisals; reports or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; notes; projections; drafts of any documents; working paper; ledgers, including securities ledgers; checks, front and back; check stubs or receipts; purchase orders; statements; returns; summaries; invoices; work sheets; credit memoranda; loan agreements; loan commitments; loan documents; any other documents or writings of whatever description including, but not limited to, any information contained in any computer although not yet printed out within your possession, computer magnetic or optical disc in your possession, custody or control or the possession, custody or control of any agent, employee, or other persons acting or purporting to act on your behalf (including without limitation, attorneys, accountants and investment bankers or advisors).

B.     A document is deemed to be in the respondent's "control" if the respondent has the right to secure the document or a copy thereof from another person (including but not limited to Respondent's counsel) or public or private entity having actual physical possession thereof.

2

C.    The term "communication" shall mean any transfer of information, data, ideas, fact, non-fact, opinion, whether orally, in writing, by electronic data transfer or otherwise, including but not limited to any memorandum, report, order, note, meeting, utterance, conversation, notation, statement of any nature whatsoever, correspondence, electronic mail, photograph, image, sign or signal, gesture, or oral or telephonic conversation.

D.    The term "person" includes natural persons, corporations, partnerships, unincorporated associations, trusts, municipalities, government bodies, or any agent, division, or sub-part of any person defined above, and all other entities in law or in fact.

E.    The term "relating to" or "relating thereto" means relating or pertaining in any way to, referring to, reflecting, recording, memorializing, mentioning, constituting, supporting or concerning, directly or indirectly.

F.    The singular includes the plural and the plural includes the singular; the words "and" and "or" shall be both conjunctive and disjunctive; "any" means "any and all"; the word "including" means including without limitation.

G.    The term "or" shall mean and/or.

H.    The term "AirWater Corporation" refers to the Defendant AirWater Corporation.

I.    The term "AirWater Patents" refers to the Defendant AirWater Patents Corporation.

J.    The term "UCSY" refers to Universal Communications Systems, Inc.

K.    The terms "J.J. Reidy," "Plaintiff," "you," "your" and "yours" refer to the Plaintiff J.J. Reidy & Co., Inc. and any of its agents, employees, servants or contractors,

and any person, organization, or entity from which he has a right to request and receive any of the information or documents requested herein.

      L.     The term "Global Manufacturing and Marketing Licensing Agreement" refers to the Global Manufacturing and Marketing Licensing Agreement by and between J.J. Reidy & Co., Inc. and AirWater Corporation dated March 21, 2003.

## II. INSTRUCTIONS

      A.     Each request for documents set forth herein seeks production of the document in its entirety, without abbreviation or expurgation, including all attachments or other materials affixed thereto, incorporated by reference therein or referred to therein.

      B.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Request shall be deemed to be continuing so as to require further and supplemental production if the responding party or its agents or attorneys obtain additional documents between the time of the initial production and the time of hearing or trial.

      C.     All documents are to be produced as they are kept in the usual course of business so that the propounding party can ascertain the file in which they are located, their relative order in such files and how such files were maintained or, in the alternative, shall organize and label the documents produced so as to correspond with the category or categories of the request to which they are responsive.

      D.     <u>Segregated Responses</u>:  The responses to these requests shall set forth the number and subdivision of the request before each response and separate responses are sought with respect to each request and subdivision thereof.

      E.     <u>Privileged Documents and Communications</u>:  With respect to any document responsive to this request which you may decline to produce by reason of any

claim of privilege or immunity, provide a statement setting forth as to each such document:

      (1)   the name of the sender of the document;

      (2)   the name of the author of the document;

      (3)   the name of the person to whom all copies (both indicated and blind) of the document were sent or furnished or to whom, at any time, the document's contents have been disclosed;

      (4)   the job title of every person named in a, b, and c above;

      (5)   the date of the document;

      (6)   the date on which the document was received or sent by you;

      (7)   a brief description of the nature and subject matter of the document sufficient to permit the fullest evaluation of the claim of privilege pursuant to which it has been withheld, but without revealing privileged matter;

      (8)   the number of pages in the document; and

      (9)   the statute, rule or decision on which the claim of privilege or immunity is based.

      F.     <u>Documents No Longer In Existence</u>:  If any document requested was at one time in existence but is no longer in existence, or has been lost, destroyed, discarded or otherwise disposed of within the twelve months preceding the date of this Request, any such document is to be identified as completely as possible by including a statement setting forth the following as to each such document:

      (1)   the type of document:

(2)    the date upon which it ceased to exist;

(3)    the circumstances under which it ceased to exist including a true and

complete copy of any policy with respect to the retention of disposal

of documents claimed to be applicable thereto;

(4)    the identity of all persons having knowledge of the circumstances

under which it ceased to exist;

(5)    the identity of all persons having knowledge of the contents thereof.

## III. REQUESTS

**REQUEST NO. 1:**

All documents requested to be identified in AirWater Patent's first (or any subsequent) set of interrogatories to Plaintiff.

**REQUEST NO. 2:**

All documents upon which you rely in asserting this action against AirWater Patents Corporation and/or AirWater Corporation.

**REQUEST NO. 3:**

All documents identified in Plaintiff J.J. Reidy & Co., Inc.'s Automatic Discovery Disclosure.

**REQUEST NO. 4:**

All documents or communications that constitute, relate or refer to the Global Manufacturing and Marketing Licensing Agreement.

**REQUEST NO. 5:**

All documents or communications that relate or refer to the transfer or assignment of all the rights and liabilities of the Global Manufacturing and Marketing Licensing Agreement from AirWater Corporation to AirWater Patents Inc. dated June 25, 2003.

**REQUEST NO. 6:**

All documents or communications that relate or refer to any alleged default by AirWater Corporation and or AirWater Patents under the Global Manufacturing and Marketing Licensing Agreement.

**REQUEST NO. 7:**

All documents or communications that relate or refer to the action entitled
Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al., United
States District Court for the Northern District of Texas, Dallas Division, Civil Action No.
03-1798G.

**REQUEST NO. 8:**

All documents that relate or refer to your efforts in defending the action entitled
Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al., United
States District Court for the Northern District of Texas, Dallas Division, Civil Action No.
03-1798G, and or your contribution of funds in connection therewith.

**REQUEST NO. 9:**

All documents or communications that constitute, relate or refer to royalty
payments from AirWater Corporation and or AirWater Patents to J.J. Reidy.

**REQUEST NO. 10:**

All documents or communications that relate or refer to the patents referred to in
paragraph 4 of your First Amended Complaint.

**REQUEST NO. 11:**

All documents or communications that relate or refer to Patent Nos. 5,106,512;
5,149,446; 5,203,989; and 5,366,705.

**REQUEST NO. 12:**

All documents or communications that reflect, relate or refer to the world-wide
registration, enforceability and or validity of the patents for the water
production/generation system referred to in paragraph 4 of your First Amended
Complaint.

**REQUEST NO. 13:**

All documents or communications that relate or refer to the water
production/generation system referred to in paragraph 4 of your First Amended
Complaint.

**REQUEST NO. 14:**

All documents or communications that constitute, relate or refer to negotiations regarding any and all provisions of the Global Manufacturing and Marketing Licensing Agreement.

**REQUEST NO. 15:**

All documents or communications that constitute, relate or refer to Defendants' efforts to establish and maintain the awareness and exposure of products manufactured by Defendants based on the patents by J.J. Reidy and to enhance sales and future growth of such products" as referred to in paragraphs 7 and 9 of your First Amended Complaint.

**REQUEST NO. 16:**

All documents that support your computation of damages.

**REQUEST NO. 17:**

All documents which you intend to offer into evidence at the trial of this matter.

**REQUEST NO. 18:**

All documents relating to the subject matter of this litigation.

**REQUEST NO. 19:**

All documents that constitute, relate or refer to communications between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael J. Zwebner on the other hand.

**REQUEST NO. 20:**

All documents or communications that constitute, relate or refer to any and all payments other than royalty payments made by AirWater Corporation and or AirWater Patents to J.J. Reidy.

**REQUEST NO. 21:**

All documents that constitute, relate or refer to communications regarding minimum monthly royalty payments under the Global Manufacturing and Marketing Licensing Agreement.

**REQUEST NO. 22:**

All documents that constitute, relate or refer to communications regarding quarterly royalty payments under the Global Manufacturing and Marketing Licensing Agreement.

**REQUEST NO. 23:**

All documents or communications that constitute, relate or refer to tender of the disputed minimum monthly royalty payments by AirWater Corporation and or AirWater Patents, including but not limited to the parties' intent to limit the minimum monthly royalty payment obligation to a period of one year..

**REQUEST NO. 24:**

All documents that constitute, relate or refer to communications regarding the anticipated lack of royalties during the Defendants' start-up phase in marketing the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

**REQUEST NO. 25:**

All documents or communications that constitute, relate or refer to the issuance of stock by AirWater Corporation, AirWater Patents and or UCSY to you.

**REQUEST NO. 26:**

All documents that constitute, relate or refer to newspaper articles, press articles and or any other publications regarding the subject matter of this action.

**REQUEST NO. 27:**

All documents that constitute, relate or refer to the disposition of the UCSY, AirWater Corporation and or AirWater Patents stock issued to you.

**REQUEST NO. 28:**

All documents that constitute, relate or refer to any and all agreements by and between you and or any third party to license, sublicense, market and or manufacture the patents and or water production/generation system referred to in paragraph 4 of your Amended Complaint.

**REQUEST NO. 29:**

All documents that constitute, relate or refer to any and all gross revenues and profits you have received as a result of any and all agreements by and between you and or any third party to license, sublicense, market and or manufacture the patents and or water production/generation system referred to in paragraph 4 of your Amended Complaint.

**REQUEST NO. 30:**

All documents that constitute, relate or refer to any and all efforts on your part to solicit licensing, sublicensing, marketing and or manufacturing agreements by and between you and any third party regarding the patents and or water production/generation system referred to in paragraph 4 of your Amended Complaint.

## REQUEST NO. 31:

All documents or communications that constitute, relate or refer to termination of the Global Manufacturing and Marketing Licensing Agreement.

## REQUEST NO. 32:

All documents that constitute, relate or refer to communications by and between you and or James J. Reidy on the one hand, and Brian Dingman on the other hand regarding the subject matter of this litigation, including without limitation the patents referred to in paragraph 4 of your First Amended Complaint.

## REQUEST NO. 33:

All documents that constitute, relate or refer to communications by and between you and or James J. Reidy on the one hand, and any third party regarding the subject matter of this litigation.

## REQUEST NO. 34:

All documents or communications that relate or refer to the financial condition of J.J. Reidy, including but not limited to any and all tax returns, financial statements, income statements and balance sheets from 2000 through the present.

## REQUEST NO. 35:

All documents or communications relate or refer to the parties' rights and obligations under the Global Manufacturing and Marketing Licensing Agreement.

## REQUEST NO. 36:

All documents or communications with respect to J.J. Reidy that constitute, relate or refer to any and all:

    a.     minutes and consent actions of the directors and shareholders;

    b.     meetings of the directors and shareholders;

    c.     corporate filings including but not limited to articles of organization,

            changes of officers and directors, and annual reports;

d.     shareholder agreements and any amendments thereto;

e.     by-laws and any amendments thereto.

DEFENDANT AIRWATER PATENTS
CORPORATION

By its attorneys,

Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, Massachusetts  02110-3113
(617) 951-1400

Dated:  March 1, 2006

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document(s)
was served upon the attorney of record for each other party by hand-
delivery - US Mail on  March 1, 2006 .

---

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS                          CIVIL ACTION NO. 05-40049-FDS

J.J. REIDY & CO., INC.,.                    )
                        Plaintiff,          )
                                            )
v.                                          )
                                            )
AIRWATER CORPORATION AND                    )
AIRWATER PATENTS CORPORATION,               )
                        Defendants.         )

**PLAINTIFF J.J. REIDY & CO., INC.'S RESPONSE TO DEFENDANT AIRWATER PATENTS CORPORATION'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Massachusetts Rules of Civil Procedure, plaintiff, J.J. Reidy & Co., Inc. responds to Defendant AirWater Patents Corporation's first request for production of documents as follows:

GENERAL OBJECTIONS

1.     The plaintiff, without admitting that any of the documents requested are relevant to the subject matter of this action or that the production of said documents would be reasonably calculated to lead to the discovery of admissible evidence or that said documents exist, will produce documents responsive to the defendant's request at the office of Bowditch & Dewey, LLP in Worcester, Massachusetts.

2.     The plaintiff objects to any requests for documents which fall beyond the scope of permitted discovery as defined by Rule 26 of the Massachusetts Rules of Civil Procedure. More particularly, the plaintiff will not produce documents which are privileged or which were prepared in anticipation of litigation or for trial by or for plaintiff or by or for any of its

{Client Files\LIT\304269\0002\PLD\F0342267.DOC;1}

representatives. Additionally, the plaintiff objects to the defendant's specific requests to the extent that they are irrelevant, unduly burdensome, or purport to impose obligations beyond those imposed by the Massachusetts Rules of Civil Procedure.

The following responses to specific requests are made subject to and without waiving these general objections.

## DOCUMENT REQUESTS

Request No. 1

All documents requested to be identified in AirWater Patent's first (or any subsequent) set of interrogatories to Plaintiff.

Response No. 1

The plaintiff objects to this request to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 2

All documents upon which you rely in asserting this action against AirWater Patents Corporation and/or AirWater Corporation.

Response No. 2

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff objects to this request to the extent it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

2

Request No. 3

All documents identified in Plaintiff J.J. Reidy & Co., Inc.'s Automatic Discovery Disclosure.

Response No. 3

The plaintiff states that documents responsive to this request will be produced.

Request No. 4

All documents or communications that constitute, relate or refer to the Global Manufacturing and Marketing Licensing Agreement.

Response No. 4

The plaintiff objects to this request to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 5

All documents or communications that relate or refer to the transfer or assignment of all the rights and liabilities of the Global Manufacturing and Marketing Licensing Agreement from AirWater Corporation to AirWater Patents Inc. dated June 25, 2003.

Response No. 5

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 6

All documents or communications that relate or refer to any alleged default by AirWater Corporation and or AirWater Patents under the Global Manufacturing and Marketing Licensing Agreement.

{Client Files\LIT\304269\0002\PLD\F0342267.DOC;1}

Response No. 6

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 7

All documents or communications that relate or refer to the action entitled Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al., United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 03-1798G.

Response No. 7

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff further objects to this request to the extent that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 8

All documents that relate or refer to your efforts in defending the action entitled Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc., et al., United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 03-1798G, and or your contribution of funds in connection therewith.

Response No. 8

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff further objects to this request to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and

without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 9

All documents or communications that constitute, relate or refer to royalty payments from AirWater Corporation and or AirWater Patents to J.J. Reidy.

Response No. 9

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 10

All documents or communications that relate or refer to the patents referred to in paragraph 4 of your First Amended Complaint.

Response No. 10

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff further objects to the request to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that the documents responsive to this request, if any, will be produced.

Request No. 11

All documents or communications that relate or refer to Patent Nos. 5,106,512; 5,149,446; 5,203,989; and 5,366,705.

Response No. 11

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The

5

plaintiff further objects to the interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 12

All documents or communications that reflect, relate or refer to the world-wide registration, enforceability and or validity of the patents for the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

Response No. 12

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff states that the documents responsive to this request, if any, will be produced.

Request No. 13

All documents or communications that relate or refer to the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

Response No. 13

The plaintiff states that the documents responsive to this request, if any, will be produced.

Request No. 14

All documents or communications that constitute, relate or refer to negotiations regarding any and all provisions of the Global Manufacturing and Marketing Licensing Agreement.

Response No. 14

The plaintiff states that the documents responsive to this request, if any, will be produced.

Request No. 15

All documents or communications that constitute, relate or refer to Defendants' efforts to establish and maintain the awareness and exposure of products manufactured by Defendants

6

based on the patents by J.J. Reidy and to enhance sales and future growth of such products as referred to in paragraphs 7 and 9 of your First Amended Complaint.

Response No. 15

The plaintiff states that the documents responsive to this request, if any, will be produced.

Request No. 16

All documents that support your computation of damages.

Response No. 16

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 17

All documents which you intend to offer into evidence at the trial of this matter.

Response No. 17

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine and/or trial strategy. Subject to and without waiving the foregoing objections, the plaintiff answers as follows: the plaintiff has not yet determined what documents it intends to offer into evidence at the trial of this matter.

Request No. 18

All documents relating to the subject matter of this litigation.

7

Response No. 18

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege, work product doctrine, and/or trial strategy. The plaintiff objects to this request to the extent it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 19

All documents that constitute, relate or refer to communications between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael J. Zwebner on the other hand.

Response No. 19

The plaintiff objects to this request to the extent that it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 20

All documents or communications that constitute, relate or refer to any and all payments other than royalty payments made by AirWater Corporation and or AirWater Patents to J.J. Reidy.

Response No. 20

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 21

All documents that constitute, relate or refer to communications regarding minimum monthly royalty payments under the Global Manufacturing and Marketing Licensing Agreement.

8

Response No. 21

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 22

All documents that constitute, relate or refer to communications regarding quarterly royalty payments under the Global Manufacturing and Marketing Licensing Agreement.

Response No. 22

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 23

All documents or communications that constitute, relate or refer to tender of the disputed minimum monthly royalty payments by AirWater Corporation and or AirWater Patents, including but not limited to the parties' intent to limit the minimum monthly royalty payment obligation to a period of one year.

Response No. 23

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 24

All documents that constitute, relate or refer to communications regarding the anticipated lack of royalties during the Defendants' start-up phase in marketing the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

Response No. 24

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 25

All documents or communications that constitute, relate or refer to the issuance of stock by AirWater Corporation, AirWater Patents and or UCSY to you.

9

Response No. 25

The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 26

All documents that constitute, relate or refer to newspaper articles, press articles and or any other publications regarding the subject matter of this action.

Response No. 26

The plaintiff objects to this request to the extent it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 27

All documents that constitute, relate or refer to the disposition of the UCSY, AirWater Corporation and or AirWater Patents stock issued to you.

Response No. 27

The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 28

All documents that constitute, relate or refer to any and all agreements by and between you and or any third party to license, sublicense, market and or manufacture the patents and or water production/generation system referred to in paragraph 4 of your Amended Complaint.

10

Response No. 28

The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 29

All documents that constitute, relate or refer to any and all gross revenues and profits you have received as a result of any and all agreements by and between you and or any third party to license, sublicense, market and or manufacture the patents and or water production/generation system referred to in paragraph 4 of your Amended Complaint.

Response No. 29

The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 30

All documents that constitute, relate or refer to any and all efforts on your part to solicit licensing, sublicensing, marketing and or manufacturing agreements by and between you and any third party regarding the patents and or water production/generation system referred to in paragraph 4 of your Amended Complaint.

Response No. 30

The plaintiff objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 31

All documents or communications that constitute, relate or refer to termination of the Global Manufacturing and Marketing Licensing Agreement.

11

Response No. 31

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 32

All documents that constitute, relate or refer to communications by and between you and or James J. Reidy on the one hand, and Brian Dingman on the other hand regarding the subject matter of this litigation, including without limitation the patents referred to in paragraph 4 of your First Amended Complaint.

Response No. 32

The plaintiff objects to this request to the extent it seeks documents which are protected by disclosure by the attorney-client privilege and the work product doctrine. The plaintiff further states that an attorney-client relationship exists between James J. Reidy and Brian Dingman and any documents the defendant seeks in request no. 32 are protected by the attorney-client privilege and the work product doctrine.

Request No. 33

All documents that constitute, relate or refer to communications by and between you and or James J. Reidy on the one hand, and any third party regarding the subject matter of this litigation.

Response No. 33

The plaintiff objects to this request to the extent it seeks documents which are protected from disclosure by the attorney-client privilege and work product doctrine. The plaintiff objects to this request to the extent it is ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the

12

foregoing objections, the plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 34

All documents or communications that relate or refer to the financial condition of J.J. Reidy, including but not limited to any and all tax returns, financial statements, income statements and balance sheets from 2000 through the present.

Response No. 34

The plaintiff objects to this request as it is overly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 35

All documents or communications that relate or refer to the parties' rights and obligations under the Global Manufacturing and Marketing Licensing Agreement.

Response No. 35

The plaintiff states that documents responsive to this request, if any, will be produced.

Request No. 36

All documents or communications with respect to J.J. Reidy that constitute, relate or refer to any and all:

     a.     minutes and consent actions of the directors and shareholders;

     b.     meetings of the directors and shareholders;

     c.     corporate filings including but not limited to articles of organization, changes of officers and directors, and annual reports;

     d.     shareholder agreements and any amendments thereto;

     e.     by-laws and any amendments thereto.

13

Response No. 36

The plaintiff objects to this request to the extent that it is ambiguous, overly broad,

unduly burdensome and not reasonably calculated to lead to the discovery of admissible

evidence.

                                 J.J. REIDY & COMPANY, INC.
                                 By its attorneys,


                                 _Maura Greene / AEC_
                                 Thomas J. Conte (BBO #566092)
                                 Maura A. Greene (BBO #547204)
                                 Bowditch & Dewey, LLP
                                 311 Main Street
                                 P.O. Box 15156
                                 Worcester, MA 01615-0156
                                 (508) 791-3511

Dated:  April 4, 2006


I hereby certify that a true copy of the
above document was served upon the
attorney of record for each party by
mail/hand on  4/4/06
       _Maura Greene / AEC_

14

**EXHIBIT D**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.                              CIVIL ACTION NO. 05-40049-FDS

J.J. REIDY & CO., INC.,                     )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )
                                            )
AIRWATER CORPORATION and                    )
AIRWATER PATENTS CORPORATION,               )
                                            )
                    Defendants.             )

## PLAINTIFF J.J. REIDY & CO., INC.'S ANSWERS TO DEFENDANT AIRWATER PATENTS CORPORATION'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Rule 33 of the Massachusetts Rules of Civil Procedure, Plaintiff, J.J. Reidy & Co., Inc. responds to Defendant AirWater Patents Corporation's First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

1.     The plaintiff objects to each and every interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

2.     The plaintiff objects to each and every interrogatory to the extent that it purports to establish a continuing duty to supplement, or seeks to impose a duty beyond those imposed by the Massachusetts Rules of Civil Procedure.

3.     Each of the General Objections shall be deemed to apply to each of the defendant's separate interrogatories.

## INTERROGATORIES

Interrogatory No. 1

Please state your full name, date of birth, residential address, social security number, educational background, and most recent occupation and employment, title, and business address.

Answer No. 1

Objection. The plaintiff objects to the request to the extent it seeks Mr. Reidy's social security number as the request is not reasonably calculated to lead to the discovery of admissible evidence and Mr. Reidy is not a named party to the lawsuit. Subject to and without waiving the foregoing objection, the plaintiff answers as follows: James J. Reidy, February 22, 1941, 1260 Main Street, Holden, MA 01520, Associate of Science degree, Stockbridge School of Agriculture, Bachelor of Science Degree, University of Massachusetts, Amherst, President of J.J. Reidy & Co., Inc., 1260 Main St., Holden, MA 01520.

Interrogatory No. 2

Please describe any actions you have taken in connection with preparing your responses to these interrogatories, including but not limited to identifying separately, with respect to each of your responses, any documents reviewed, any persons you have consulted and the substance of the information obtained from each such document or person in connection with each such response.

Answer No. 2

The plaintiff objects to this interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff further objects on the grounds of attorney-client privilege, work product doctrine and or/trial strategy. Subject to and without waiving the foregoing objections, Mr. Reidy on behalf of

the plaintiff answers as follows: I have searched for, reviewed and collected all the documents pertinent to this litigation and have supplied them to our attorney and the defendant as requested in their First Request for Production of Documents. Other than my attorneys, I have not consulted with anyone else in terms of responding to these interrogatories.

Interrogatory No. 3

Please identify all persons who have any knowledge of, or have expressed any opinion with respect to, any relevant facts relating to this litigation and as to each such person state fully and completely the knowledge and/or opinion such person has or has expressed.

Answer No. 3

The plaintiff objects to this interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff further objects on the grounds of attorney-client privilege, work product doctrine and/or trial strategy. Subject to and without waiving the foregoing objections, Mr. Reidy on behalf of the plaintiff answers as follows: Any discussions I had with my attorneys, including Brian Dingman, are protected by the attorney client privilege. There are no other persons, outside of friends or family, who have expressed an opinion.

Interrogatory No. 4

Please identify each communication, whether oral or written, between Benoit on the one hand and Wynee and or Wynne Oil on the other hand, which constitutes, relates or refers to the basis of, or any event, act, omission, fact or circumstance relating to, any claim made by Benoit in this litigation.

Answer No. 4

This interrogatory does not relate to this litigation and no response is therefore required.

3

Interrogatory No. 5

Please state each and every material fact that supports your allegation in paragraph 9 of your First Amended Complaint that "Defendants failed to commit resources and put forth best efforts in accomplishing, completing, and fulfilling their promises to establish and maintain the awareness and exposure of products manufactured by Defendants based on the patents licensed by J.J. Reidy and to enhance sales and future growth."

Answer No. 5

Prior to signing, the defendant assured me that there was $2 million available to market these products. To the best of my knowledge, although the defendant promised to commit $2 million, those funds were never available or used for marketing.

Moreover, the defendants' continuous and intentional disregard for their obligation to build products that conformed to the technology of the Licensed Patents, was a failure to use best efforts. The initial samples the defendant intended to use to demonstrate the product to the Army did not include the critical safety features nor the specific water treatment sequences of the Licensed Patents. A proper and successful evaluation by the Army of the technology in the Licensed Patents was therefore impossible and the subsequent lack of sales to the Army supports this conclusion. Furthermore, the defendant prepared sales literature for a concept unit that described improper water flow and treatment, contrary to the technology specified in the Licensed Patents. The defendant was building the product without the specifications and had molds made without the product specifications.

On or before March 4, 2005 the defendants' President, Michael J. Zwebner, willingly formed a new company, Atmospheric Water Technologies, Inc., in direct competition to AirWater Patents. This is a major breach of the License Agreement.

4

{Client Files\LIT\304269\0002\PLD\F0342328.DOC;1}

On October 13, 2005 the defendants' President, Michael J. Zwebner, willingly formed another new company, Air Water Fridges and Freezers Corp., in direct competition to AirWater Patents. This is a major breach of the License Agreement.

The plaintiff reserves the right to supplement this response.

Interrogatory No. 6

Please state each and every material fact that supports the allegation in paragraphs 8 and 11 of your First Amended Complaint to the effect that AirWater Patents breached the parties Global Manufacturing and Marketing Licensing Agreement by failing to make its required minimum monthly royalty payments to J.J. Reidy, including in your response without limitation identification of the specific provisions of the Global Manufacturing and Marketing Licensing Agreement that you contend AirWater Patents breached.

Answer No. 6

Under the bold heading MINIMUM MONTHLY ROYALTY PAYMENTS in the Global Manufacturing and Marketing Licensing Agreement, the Licensing Agreement provides as follows: "LICENSEE is to pay to LICENSOR a monthly Royalty payment in the amount of $10,000 per month commencing November 1st 2003, or the Royalty payments due in accordance with those stated above whichever is the more." The preceding provision in the Licensing Agreement, entitled ROYALTY PAYMENTS, sets forth the agreement as to the calculation of royalty payments which are over the $10,000 minimum. The provision entitled TERM OF LICENSE, is also applicable, because it sets forth the term of the license, during which the royalty payments were due.

Mr. Zwebner contended he needed some breathing room to prepare for this minimum monthly payment and we ultimately agreed that the beginning of these minimum payments could

5

be postponed until November 1, 2003. It was also discussed and agreed that the reason a minimum monthly payment was required was to protect the plaintiff because the plaintiff was granting an exclusive license.   The defendant breached the agreement when it stopped paying royalties.

Also, see my answer to Interrogatory No. 7 regarding other breaches of this Licensing Agreement.

Interrogatory No. 7

Please state each and every material fact that supports your breach of contract claim against AirWater Corporation.

Answer No. 7

Objection.  The plaintiff has moved to amend the Complaint to include a claim for intentional misrepresentation against AirWater Corporation.  The claim is based upon the intentional misrepresentation of AirWater Corporation that it had $2 million in financing available to market the products based upon J.J. Reidy's patents.

Interrogatory No. 8

Please identify and describe the content of all communications by and between you and or James J. Reidy on the one hand, and Brian Dingman on the other hand, regarding the subject matter of this litigation, including without limitation the patents referred to in paragraph 4 of your First Amended Complaint.

Answer No. 8

The plaintiff objects to this interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The

6

plaintiff further objects on the grounds of attorney-client privilege, work product doctrine and/or trial strategy.

Interrogatory No. 9

Please identify and describe the content of all communications by and between you and/or James J. Reidy on the one hand, and any third party regarding the subject matter of this litigation.

Answer No. 9

The plaintiff objects to this interrogatory to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff further objects on the grounds of the attorney-client privilege, work product doctrine and or trial strategy. Subject to and without waiving the foregoing objections, Mr. Reidy on behalf of the plaintiff states as follows: Since the litigation between the parties has become publicly known I have received a number of inquiries from the press and others regarding the lawsuit. I did not log these inquiries. However, in general, I recall informing them that the lawsuit was being decided in the Federal Court. In addition, I recall a conversation with Mike Klein in which he told me that Zwebner told him that he (Zwebner) knew that he was in breach of the Licensing Agreement between us, but that he was going to drag out the litigation as long as he could in the hopes that I would become financially exhausted and default on my lawsuit against him.

Interrogatory No. 10

Please identify each and every contract by and between you and any third party relating to the patents and or water production/generation system referred to in paragraph 4 of your First Amended Complaint, including but not limited to any licenses, sublicenses, marketing and or manufacturing agreements.

Answer No. 10

The plaintiff objects to the interrogatory to the extent that it seeks information following the proper termination of the Licensing Agreement on the grounds that such information is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without the foregoing obligation, the plaintiff states as follows:

There are no contracts prior to the termination of the Licensing Agreement.

Interrogatory No. 11

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding the anticipated lack of royalties during the Defendants' start-up phase in marketing the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

Answer No. 11

During the six months of communications and negotiations between Mr. Zwebner and myself before signing the Licensing Agreement, we agreed that it would be in our best mutual interests to minimize the burden of cash outflow during the initial start-up phase to allow the best opportunity for success. We agreed, therefore, that the stated minimum monthly royalties would not begin until November 1, 2003 some 5 or 6 months away.

Interrogatory No. 12

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding quarterly royalty payments under the Global Manufacturing and Marketing Licensing Agreement.

Answer No. 12

I recall having communications with Michael Zwebner regarding quarterly royalty payments.

Interrogatory No. 13

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding minimum monthly royalty payments under the Global Manufacturing and Marketing Licensing Agreement, including but not limited to the parties' intent to limit the minimum monthly royalty payment obligation to a period of one year.

Answer No. 13

I don't recall any communications with Michael Zwebner to limit the minimum monthly payment obligation under the License Agreement to a period of one year.

Interrogatory No. 14

Please identify and describe the content of any and all communications by and between you and or James J. Reidy on the one hand and AirWater Corporation, AirWater Patents and or Michael Zwebner on the other hand, regarding the anticipated lack of royalties during the Defendants' start-up phase in marketing the water production/generation system referred to in paragraph 4 of your First Amended Complaint.

Answer No. 14

This interrogatory is worded exactly the same as Interrogatory No. 11.

Please refer to the response to Interrogatory No. 11.

9

Interrogatory No. 15

Please state each and every material fact that supports the allegation in paragraph 13 of your First Amended Complaint that "J.J. Reidy has fulfilled all of its obligations under the License."

Answer No. 15

Reidy provided AirWater with all technical data, photographs, drawings, and various texts in his possession, some of which is being used by AirWater to this day.

Reidy maintained the validity and good standing of the patents with timely payments of maintenance fees to the United States Patent Office. In terms of transfer of custody, know how and technical assistance, Reidy provided all information in his possession that AirWater would accept.

Reidy granted AirWater the required 14 day period of notice/grace in which AirWater could make good on any outstanding amount. In fact, Michael Zwebner, had an additional 14 days as Reidy supplied a second grace period to AirWater Patents.

Further, Reidy returned telephone calls and responded to emails in a timely fashion.

Reidy also traveled at AirWater's request, and to AirWater's schedule, in every instance, including trips to Boston, Miami, London, Tel Aviv, Jerusalem and numerous local business trips.

Reidy also repeatedly offered his services and know how at the discretion of AirWater.

The plaintiff granted a license to AirWater Corporation (which was then assigned to AirWater Patents Corporation) of the United States Patents described in the License Agreement. The defendants, however, failed to pay the royalty payments due and owing under the License Agreement.

10

Interrogatory No. 16

If you contend that you cooperated, assisted and or contributed financially to the defense

of the action entitled Electric & Gas Technology, Inc. et al. v. Universal Communications, Inc.,

et al., United States District Court for the Northern District of Texas, Dallas Division, Civil

Action No. 03-1798G, please state each and every material fact that supports your contention.

Answer No. 16

The plaintiff objects to this interrogatory to the extent that it is not reasonably calculated

to lead to the discovery of admissible evidence.

Interrogatory No. 17

Please identify and describe the content of any and all communications by and between

you and or James J. Reidy on the one hand, and Electric & Gas Technology, Inc., Atmospheric

Water Technology, Inc. and or Richard Ehrlich on the other hand.

Answer No. 17

The plaintiff objects to the interrogatory to the extent it is overly broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objection, the plaintiff states as follows:

Reidy has never met or communicated with Richard Ehrlich in any manner.

Interrogatory No. 18

Please identify and describe the content of any and all communications by and between

you and or James J. Reidy on the one hand, and World Wide Water, Inc., World Wide Water,

LLC and or Mike Klein on the other hand.

11

Answer No. 18

The plaintiff objects to the interrogatory to the extent it is overly broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The

plaintiff further objects to this interrogatory on the ground that it is unlimited in time and scope

rendering it unanswerable in its present form.

Interrogatory No. 19

Please identify each person you expect to call as a fact witness at trial and for each person

state:

a)      his/her name;

b)      address;

c)      telephone number; and

d)      fully and completely, the substance of the testimony to be given.

Answer No. 19

The plaintiff objects to this interrogatory on the grounds of attorney-client privilege,

work product doctrine and/or trial strategy. Subject to and without waiving the foregoing

objections, the plaintiff answers as follows: the plaintiff has not yet determined who will be

called as a fact witness at the trial of this matter.

Interrogatory No. 20

Please identify each person you expect to call as an expert witness at trial and for each

person state:

a)      his/her name;

b)      address;

c)      the subject matter upon which he/she is expected to testify;

12

d)      the substance of the facts and opinions to which he/she is expected to testify; and

e)      fully and completely the substance of the grounds for each opinion.

Answer No. 20

The plaintiff objects on the grounds of attorney-client privilege, work product doctrine and/or trial strategy. Subject to and without waiving the foregoing objections, the plaintiff answers as follows: the plaintiff has not yet determined whether it intends to call an expert at trial. The plaintiff will seasonably supplement its response to this interrogatory, as appropriate, in accordance with the rules for expert disclosures.

J.J. REIDY & COMPANY, INC.

By:                    
               James J. Reidy

Its:      President

AS TO OBJECTIONS:

Thomas J. Conte (BBO#566092)
Maura A. Greene (BBO #547204)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615
(508) 926-3415
FAX: (508) 929-3006

Dated: June 1 9, 2006

13

**EXHIBIT E**

----- Original Message -----
From: "Dingman, Brian M." <bmdingman@modl.com>
To: "Michael Zwebner" <mjzwebner@sprynet.com>
Sent: Thursday, September 09, 2004 9:16 AM
Subject: Reidy patents and Air2Water patents

Michael:

I have reviewed the four Air2Water ("a2w") patents and compared them to the Reidy
patents. It is unarguably the case that the a2w patents all came after the Reidy patents.
As the claims in the a2w patents must be themselves patentable (i.e., novel and non-
obvious) in light of the Reidy patents, by definition the claims in the a2w patents must be
either quite different from Reidy's patents, or much more specific than Reidy's patents.
My review confirms that the a2w patents are for more specific features than the broader
Reidy patents, which broadly claim the basic features of a device that extracts potable
water from the air (see in particular Reidy's patent number 5,203,989, which has
extremely broad claims.)

It is thus unarguably true that it is much more difficult to avoid the Reidy patents that it
would be to avoid the a2w patents. For example, the a2w patents would all be avoided if
there was no UV or activated carbon treatment in a pressurized flow channel.
Conversely, I do not see any viable approach to designing a potable water maker that
avoids the Reidy patents.

It also seems an inescapable conclusion that a device made as described in the a2w
patents would infringe the Reidy patents, while a device made under the Reidy patents
would not infringe the a2w patents unless they had the very specific improvements
claimed in the a2w patents. Even if a product did turn out to have such specific a2w
improvements, the simplest of design changes (such as rerouting of the water flow path
or a simple change in filtration) would absolutely avoid the a2w patents.

I thus conclude that you are in a vastly superior position of strength as compared to a2w
vis-à-vis your respective patent positions, as I do not see how they can avoid the Reidy
patents, yet you can very easily avoid their patents.

Please let me know if you have any questions or comments on this.

Brian

Brian M. Dingman
Mirick, O'Connell, DeMallie and Lougee
1700 West Park Drive
Westborough, MA 01581
email: bmdingman@mirickoconnell.com
tel (508) 898-1501 // fax (508) 791-8502

----- Original Message -----
From: "Dingman, Brian M." <bmdingman@modl.com>
To: "Michael Zwebner" <mjzwebner@sprynet.com>
Sent: Thursday, September 09, 2004 9:16 AM
Subject: Reidy patents and Air2Water patents

Michael:

I have reviewed the four Air2Water ("a2w") patents and compared them to the Reidy patents. It is unarguably the case that the a2w patents all came after the Reidy patents. As the claims in the a2w patents must be themselves patentable (i.e., novel and non-obvious) in light of the Reidy patents, by definition the claims in the a2w patents must be either quite different from Reidy's patents, or much more specific than Reidy's patents. My review confirms that the a2w patents are for more specific features than the broader Reidy patents, which broadly claim the basic features of a device that extracts potable water from the air (see in particular Reidy's patent number 5,203,989, which has extremely broad claims.)

It is thus unarguably true that it is much more difficult to avoid the Reidy patents that it would be to avoid the a2w patents. For example, the a2w patents would all be avoided if there was no UV or activated carbon treatment in a pressurized flow channel. Conversely, I do not see any viable approach to designing a potable water maker that avoids the Reidy patents.

It also seems an inescapable conclusion that a device made as described in the a2w patents would infringe the Reidy patents, while a device made under the Reidy patents would not infringe the a2w patents unless they had the very specific improvements claimed in the a2w patents. Even if a product did turn out to have such specific a2w improvements, the simplest of design changes (such as rerouting of the water flow path or a simple change in filtration) would absolutely avoid the a2w patents.

I thus conclude that you are in a vastly superior position of strength as compared to a2w vis-à-vis your respective patent positions, as I do not see how they can avoid the Reidy patents, yet you can very easily avoid their patents.

Please let me know if you have any questions or comments on this.

Brian

Brian M. Dingman
Mirick, O'Connell, DeMallie and Lougee
1700 West Park Drive
Westborough, MA 01581
email: bmdingman@mirickoconnell.com
tel (508) 898-1501 // fax (508) 791-8502

James J. Reidy

| | |
|---|---|
| **From:** | "Michael Zwebner" <mjzwebner@sprynet.com> |
| **To:** | "Dingman, Brian M." <bmdingman@modl.com> |
| **Cc:** | "James J. Reidy" <jjreidy@earthlink.net> |
| **Sent:** | Friday, August 15, 2003 6:53 AM |
| **Subject:** | Re: patent complaint |

Brian

Quick question

Jim called me yesterday and asked if he/his firm should be included in the law suit against Electric Gas Tech. I told him that I would ask you.
Seems the main cause of his action would be infringement of his patents, yet, WE bought the patents etc, so in fact it is us that should sue, which we are doing.
Do you think he should sue on libel and or slander, or what ?
Also, if he were entered, does he sue in MASS, or what.
your opinion would be appreciated.
thanks
Michael Zwebner


—— Original Message ——
**From:** Dingman, Brian M.
**To:** Michael Zwebner
**Cc:** Dingman, Brian M.
**Sent:** Wednesday, August 13, 2003 3:47 PM
**Subject:** RE: patent complaint

Michael, I am sorry but I can say now that we definitely will not have this done today, but definitely will tomorrow in time for review and filing tomorrow.  I have a couple of absolute deadlines today that will prevent me from completing this today.


You had mentioned $100 million as a damage claim.  I do not see how we can make this, but perhaps your local attorney has more info they can add to the complaint beyond what I have, below.  As I see this, the damage claim is for an undetermined amount (since we do not have their sales info and we will claim your lost profits on their sales, we need their sales info in order to determine damages).  we will claim treble damages and attorneys fees for willful infringement (for this reason, we should have JJReidy as a co-plaintiff).

I will email to you as soon as I can!
Brian

----Original Message-----
**From:** Michael Zwebner [mailto:mjzwebner@sprynet.com]
**Sent:** Wednesday, August 13, 2003 3:26 PM
**To:** Dingman, Brian M.
**Subject:** Re: patent complaint

## URGENT

Brian
I have the local Florida (Miami) attorney coming here at 5pm today
If at all possible, if u could email me the draft complaint, we can get it done and filed tomorrow
thanks
Michael


—— Original Message -----
**From:** "Dingman, Brian M." <bmdingman@modl.com>
**To:** "Michael Zwebner" <mjzwebner@sprynet.com>
**Sent:** Tuesday, August 12, 2003 4:35 PM
**Subject:** RE: patent complaint

8/15/03

will do

——Original Message——
From: Michael Zwebner [mailto:mjzwebner@sprynet.com]
Sent: Tuesday, August 12, 2003 4:18 PM
To: Dingman, Brian M.
Subject: Re: patent complaint


Brian
thanks for the email
I will send u a check for $2500 tomorrow morning.
please forward the complaint to me by Email asap
I will advise the Miami Attorney that will handel the filing.
PLEASE try to get ti to me asap. Timing is now very critical, as if we file
first, the case will be consolidated into Florida, if they file first in
Texas, we could have issues.
thanks
Michael


—— Original Message ——
From: "Dingman, Brian M." <bmdingman@modl.com>
To: "Michael Zwebner" <mjzwebner@sprynet.com>
Cc: "Dingman, Brian M." <bmdingman@modl.com>; "Kopacz, Sandra L."
<slkopacz@MODL.COM>
Sent: Tuesday, August 12, 2003 4:01 PM
Subject: patent complaint


Michael: am working on this now and hope to have a "notice" type complaint
ready tomorrow, or possibly Thursday. Do you want me to email it to you,
and/or to your attorneys? If to them, please reply w/ the correct email
address.

At this point I estimate that our fee for the work on the complaint will be
in the $2-3K range. Can you please send me a retainer of $2K to cover the
low end of the estimate? I will then bill the company after the month's end
on any balance. Thank you.

Brian

Brian M. Dingman
Mirick, O'Connell, DeMallie and Lougee
1700 West Park Drive
Westborough, MA 01581
email: bmdingman@mirickoconnell.com
tel (508) 898-1501
fax (508) 791-8502


****************************
Mirick, O'Connell
100 Front Street
Worcester, MA 01608-1477
(508) 791-8500
http://www.MirickOConnell.com

The information contained in this electronic message is legally privileged
and confidential under applicable law, and is intended only for the use of
the individual or entity named above. If you are not the intended
recipient, you are hereby notified that any dissemination, copying or

disclosure of this communication is strictly prohibited. If you have
received this communication in error, please notify Mirick O'Connell at
(508)791-8500 and delete this communication immediately without copying or
distributing it.

****************************

Mirick, O'Connell
100 Front Street
Worcester, MA 01608-1477
(508) 791-8500
http://www.MirickOConnell.com

The information contained in this electronic message is legally privileged and confidential under applicable law, and is
intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby
notified that any dissemination, copying or disclosure of this communication is strictly prohibited. If you have received this
communication in error, please notify Mirick O'Connell at (508)791-8500 and delete this communication immediately
without copying or distributing it.

8/15/03

# J.J. Reidy & Co., Inc.
## 1260 Main Street, Holden, MA  01520-1020

**Telephone:**  (508) 829-6550
**Fax:**  (508) 829-6492
**Email:**  jjreidy@earthlink.net
**URL:**  http://www.drinkingwaterfromtheair.com



Water
&Star

September 2, 2003


Mr. Michael Zwebner, CEO
UCSY / AirWater Corporation
407 Lincoln Road. Suite 6K
Miami Beach, FL    33139


Dear Michael:

Enclosed are copies of some recent mail and telephone notes from Brian Dingman regarding our issued and pending patents.

I need your help with the expenses of the pending patents as I cannot afford to pay them on my own.

Respectfully yours,


James J. Reidy
President


Enclosures:
Brian Dingman letter, dated Oct. 11, 2002, with telephone notes to July 11, 2003
Brian Dingman letter, dated April 28, 2003, with telephone notes to July 11, 2003
Brian Dingman letter, dated May 16, 2003, with telephone notes to July 11, 2003
Brian Dingman letter, dated July 28, 2003

MIRICK O'CONNELL
ATTORNEYS AT LAW
MIRICK, O'CONNELL, DeMALLIE & LOUGEE, LLP

October 11, 2002

**BY FACSIMILE AND**
**FIRST CLASS MAIL**

James Reidy
J.J. Reidy & Co.
1260 Main Street
Holden, MA 01520-1020

> Re: Improvements in Water Generating Devices
>     Our Reference: REI/0015/US (16844-00019)
>
>     Sterile Air Vents and Other Ports in a Water Generation Device
>     Egyptian Patent Application No. 100/2000
>     Our Reference: REI/9912/EG (16844-00006)
>
>     Ultraviolet Transmissive Tubing in a Water Generation Device
>     Egyptian Patent Application No. 101/2000
>     Our Reference: REI/9913/EG (16844-00008)

Dear Jim:

This letter concerns all three of these matters. First, in the U.S. patent application, I received the enclosed office action and references. The office action is fairly self-explanatory. A response is due by January 4, 2003. That time can be extended up until April 4, 2003 upon the payment of extension filing fees. Please let me know how you would like me to handle this matter.

I have also heard from the Egyptian associate in the "Ultraviolet Transmissive Tubing in a Water Generation Device" and "Sterile Air Vents and Other Ports in a Water Generation Device". The Egyptian Patent Office has apparently rejected the applications over a number of patents. The associate recommends appealing the decision. However, the appeal must be filed by October 18, 2002. Accordingly, this is urgent.

The associate will charge $165.00 for each appeal. The appeal needs to address the substance of the matter, though. Accordingly, I would have to review this and prepare responses.



WORCESTER, MA 01608-1477
508-791-8500 • FAX 508-791-8502

1700 WEST PARK DRIVE
WESTBOROUGH, MA 01581-3941
508-898-1501 • FAX 508-898-1502

BOSTON, MA 02110-1263
617-261-2417 • FAX 617-261-2418

{H:\PA\CORP\16844-00019\A0383979.DOC}

www.MirickOConnell.com

James Reidy
October 11, 2002
Page 2

Please let me know if you want to proceed with this and I can go ahead and do the work.
Please let me know immediately.

Very truly yours,

Brian M. Dingman

BMD/jgm
Enclosures

ATTORNEYS AT LAW

MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP

April 28, 2003

James Reidy
J.J. Reidy & Co.
1260 Main Street
Holden, MA  01520-1020

Re: IMPROVEMENTS IN WATER GENERATING DEVICES
Our Reference:  REI/0015/US (16844(00019)

Dear Jim:

Enclosed for your records is a self-explanatory Notice of Abandonment, dated April 11, 2003, from the U.S. Patent and Trademark Office for the above-reference invention.

If you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Brian M. Dingman

BMD/slk
Enclosure

5/19: Brian:
    Can be re-activated w/ monthly penalties

★ 7/11/03: - same as Oct. 11 letter

MIRICK O'CONNELL

WORCESTER, MA 01608-1477
508-791-8500 • FAX 508-791-8502

1700 WEST PARK DRIVE
WESTBOROUGH, MA 01581-3941
508-898-1501 • FAX 508-898-1502

BOSTON, MA 02110-1263
617-261-2417 • FAX 617-261-2418

{H:\PA\CORP\16844\00019\A0628008.DOC}

www.MirickOConnell.com

JJR 011

**MIRICK O'CONNELL**

A T T O R N E Y S   A T   L A W

MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP

May 16, 2003

James Reidy
J.J. Reidy & Co.
1260 Main Street
Holden, MA  01520-1020

Re:  WATER FILTER MONITOR
     Our Reference:  16844-00018

Dear Jim:

I have received an Office Action from the patent examiner in the subject application.  In light of our recent discussions concerning your patent applications, I am presuming that at this stage you do not want to take any further action on the application.  We can file a response anytime up until July 21, 2003.  I have not reviewed this matter in any detail and will take no further action until I hear from you.

Very truly yours,

Brian M. Dingman

BMD/scr

7/11/03: can resend up to 7/21/03:
  - file a response for request to continue examination
  - # 840 fee + legal fee for response - $500-800



WESTBOROUGH, MA 01581-3941
508-898-1501 • FAX 508-898-1502

100 FRONT STREET
WORCESTER, MA 01608-1477
508-791-8500 • FAX 508-791-8502

BOSTON, MA 02110-1263
617-261-2417 • FAX 617-261-2418

{H:\PA\CORP\16844\00018\A0631996.DOC}

www.MirickOConnell.com

JJR 012

**EXHIBIT F**

**LONGO & LONGO, LLP**
280 SOUTH BEVERLY DRIVE
SUITE 210
BEVERLY HILLS, CA 90212
(310) 271-9388
Fax: (310) 271-9194
E-mail: longollp@pacbell.net

Via Mail

April 18, 2005

Elizabeth M. Schwabedissen
Adorno & Yoss
2525 Ponce De Leon Blvd., Suite 400
Miami, Florida 33134-6012

Dear Elizabeth M. Schwabedissen,

Please find enclosed, documents responsive to your subpoena in Case No. 05-20650.

Very Truly Yours,
LONGO & LONGO LLP

FRANK J. LONGO

FJL/gl

Enclosure:

**LONGO & LONGO, LLP**
280 SOUTH BEVERLY DRIVE
SUITE 210
BEVERLY HILLS, CA 90212
(310) 271-9388
Fax: (310) 271-9194
E-mail: frankjlongo@yahoo.com

Via Facsimile

March 23, 2005

Mr. Jim Reidy
1260 Main St.
Holden, MA 01520

Dear Mr. Reidy,

Air2Water, LLC has received your recent March 4, 2005 offer to license your patents. Even though we are extremely interested and have negotiated for these rights over the past 3 to 4 years, for $3 to $4 million, given your pending litigation with Michael Zwebner and his company, we cannot at this time negotiate a deal.

Very truly yours,

LONGO & LONGO, LLP

FRANK J. LONGO

Cc:    Michael Klein

# J.J. Reidy & Co., Inc.

## 1260 Main Street, Holden, MA  01520-1020

**Telephone:**  (508) 829-6550
**Fax:**  (508) 829-6492
**Email:**  jjreidy@earthlink.net
**URL:**  http://www.drinkingwaterfromtheair.com



March 4, 2005

Mr. Mike Klein
World Wide Water
105 Buckskin Road
Bell Canyon, CA   91307

Dear Mike:

You should know that we have terminated our world-wide Exclusive License with AirWater Corp. and AirWater Patents, Inc., both of Miami Beach.

For the last 3 to 4 years you have expressed a continuous interest in obtaining the rights to both our existing and pending patents.

We have decided to sell our intellectual property outright and would look forward to your offer now that these patents are back into our possession.

Please contact me at your convenience. We look forward to working with you.

Respectfully yours,

James J. Reidy
President