UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| . | CIVIL ACTION NO. 05-40049-FDS |
|  | (Consolidated with <u>AirWater Patents, Inc. v. J.J. Reidy & Co., Inc., a Massachusetts Corporation</u>; United States District Court Southern District of Flordia, Miami Division, Case No. 05-20650-CIV-JORDAN) |

J.J. REIDY & CO., INC.,            )
                                   )
            Plaintiff,             )
v.                                 )
                                   )
AIRWATER CORPORATION and           )
AIRWATER PATENTS CORPORATION,      )
                                   )
            Defendants.            )

**OPPOSITION OF THE PLAINTIFF J.J. REIDY & CO., INC. TO AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATIONS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Plaintiff J. J. Reidy & Co., Inc. ("Reidy") hereby opposes Defendants AirWater Corporation and AirWater Patents Corporations' Cross Motion for Partial Summary Judgment and files this memorandum to specifically address the arguments in the memorandum of AirWater Corporation and AirWater Patents Corporation ("AirWater") in support of its motion for partial summary judgment that (1) J.J. Reidy materially breached the parties' Global Manufacturing and Marketing Licensing Agreement (the "Agreement") by "failing to provide AirWater with world-wide registrations for the Reidy patents" and that AirWater is therefore excused from any continuing obligation under the Agreement to provide minimum monthly royalties; and (2) that the lawsuit previously filed by a Texas Company, Electric Gas & Technologies, Inc, which was dismissed for a lack of personal jurisdiction creates a genuine issue of material fact that could defeat Reidy's Motion for Partial Summary Judgment. As stated

in greater detail below, AirWater deliberately confuses the global license to manufacture and sell the Water Production/Generation system with the registration of the patents, which were primarily United States Patents, as stated in the Agreement.

The Agreement does not state that Reidy will provide AirWater with "world-wide registrations" for the patents, and in fact states that Reidy may apply for any foreign patents it desires, at its own expense, which clearly indicates that the parties understood that the Water Production/Generation system *was not* patented in every foreign country.  To the extent that AirWater claims that Mr. Reidy made representations to the contrary, the Agreement contains a merger and integration clause which precludes the introduction of parol evidence.

Finally, as detailed below, the fact that a Texas company, Electric Gas & Technologies, Inc. brought a patent infringement lawsuit against AirWater, which was dismissed for lack of personal jurisdiction does not create a genuine issue of material fact which would defeat Reidy's Partial Motion for Summary Judgment.  It is not credible for AirWater to argue on the one hand that there is an issue with regard to the validity of the patents, and on the other hand to seek a declaratory judgment that would allow it to continue to manufacture and market products pursuant to the purportedly invalid patents.

<u>Reidy Was Not Required Under The Agreement To Provide AirWater With "World-Wide Registrations" For The Patents And Therefore The Argument That Reidy Materially Breached By Failing To Provide "World-Wide Registrations" Must Fail.</u>

AirWater alleges in its opposition and memorandum in support of its cross-motion for summary judgment that Reidy materially breached the Agreement between the parties by "failing to provide AirWater with world-wide registrations for the Reidy Patents" and further claims that because of this alleged material breach, AirWater was excused from any continuing obligation to pay minimum monthly royalty payments.  Mr. Zwebner states in his affidavit that Reidy "represented to AirWater that the design for J.J. Reidy's water production generation system had

been patented and/or otherwise protected on a world-wide basis." Zwebner Affidavit, para. 4. AirWater's argument must fail because (1) the Agreement specifically provides that the patents are United States patents; (2) the Agreement does not require obtaining "world wide" or "global" registrations of patents; (3) the Agreement states that Reidy may apply for any foreign patents he desires, at his own expense, which demonstrates that the parties clearly understood that the products were not patented in every foreign country; and (4) the contract contains a merger and integration clause which precludes the consideration of any parol evidence concerning representations concerning the patents. Finally, patents must be applied for on a country by country basis. "World wide" or "global" registrations of patents do not exist and the Agreement did not contemplate registration of the patents in every single country that has a patent application process.

The Agreement does not provide for "world wide" or "global" registrations of patents and in fact the patents are identified as United States patents. The Agreement provides as follows on the first page:

> WHEREAS, LICENSOR represent and warrants that it has the entire right, title and interest in and to United States Patents numbered 5,106,512, 5,149,446, 5,203,989 and 5,366,705 relating to a Water Production/Generation System and any patents to issue, foreign or domestic on any continuation or division thereof and any new patents, foreign or domestic, granted to LICENSOR relating to the Water Production/Generations System (hereinafter collectively referred to as "LICENSED PATENTS"), and generally known as the WATERSTAR systems, and that LICENSOR has the absolute and undisputed rights to grant the licenses under the LICENSED PATENTS as specified hereinafter….

The Agreement references foreign patents on page 10. The Agreement provides that Reidy will apply for any foreign patents he desires at his own expense:

> LICENSOR, when applicable, shall make application for any foreign patents desired by LICENSOR, at his own expense.

AirWater deliberately confuses the global nature of the marketing and manufacturing license with the patents, which were not "global" in nature, but were specified in the agreement as United States patents. Although Mr. Zwebner claims in his affidavit that Mr. Reidy represented that the design had been patented or protected on a world-wide basis, that particular representation is not in the Agreement.

The Agreement contains a merger and integration clause which precludes the consideration of parol evidence. The Agreement provides on page 17 that the instrument contains the entire agreement between the parties:

> This instrument of 18 pages contains the entire Agreement between LICENSOR and LICENSEE, and no modification hereof shall be binding on the parties unless it is in writing and signed by a duly authorized officer of the parties to be bound.

The parol evidence rule is a substantive principle of contract law that bars the introduction of antecedent or contemporaneous written or oral agreements to contradict, vary, or broaden the terms of an integrated, unambiguous writing. See ITT Corp. v. LTX Corp., 926 F.2d 1258, 1261 (1991); Williams v. Pittsfield Lime & Stone Co., 258 Mass. 65, 68-69, 154 N.E. 572, 574 (1927); Sound Techniques, Inc. v. Hoffman, 50 Mass. App. Ct. 425, 429, 737 N.E.2d 920, 923 (2000), rev. den., 433 Mass.1102 742 N.E.2d 82 (Table) (2001). Where an agreement shows on its face that it is the entire agreement of the parties, and in particular where there is an integration clause as there is here, it is presumed that the parties have intended the agreement to be a complete and final statement of the transaction. See Federal Marine Terminals, Inc. v. Worcester Peat Co., Inc., 262 F.3d 22 (2001); Gifford v. Gifford, 354 Mass. 247, 249, 236 N.E.2d 892, 893 (1968); Bendetson v. Coolidge, 7 Mass. App. Ct. 798, 802-803, 390 N.E.2d 1124, 1127 (1979). Any alleged statements that Reidy made regarding the registration of the patents is accordingly parol evidence, and may not be used to broaden the terms of the agreement.

Finally, as the World Intellectual Property Organization, an authority on patents explains: "At present, no 'world patents' or 'international patents' exists." Affidavit of Maura Greene, Esq., Exhibit A. The World Intellectual Property Organization further explains:

> "In general, an application for a patent must be filed, and a patent shall be granted and enforced, in each country in which you seek patent protection for your invention, in accordance with the law of that country. In some regions, a regional patent office, for example, The European Patent Office (EPO) and the African Regional Intellectual Property Organization (ARIPO), accepts regional patent applications, or grants patents, which have the same effect as applications filed, or patents granted, in the member States of that region. Further, any resident or national of a Contracting State of the Patent Cooperation Treaty (PCT) may file an international application under the PCT. A single international patent application has the same effect as national applications filed in each designated Contracting State of the PCT. However, under the PCT system, in order to obtain patent protection in the designated States, a patent shall be granted by each designated State to the claimed invention contained in the international application."

Accordingly, although there are regional patent offices and a Patent Cooperation Treaty, the designated state or country must still grant the patent to the claimed invention. A world wide or global patent does not exist.

AirWater's argument that Reidy materially breached the Agreement by failing to provide AirWater with world-wide registrations for the patents accordingly must fail.

<u>The Electric Gas & Technologies, Inc. Patent Infringement Litigation Does Not Create A Genuine Issue Of Material Fact As There Is No Evidence That The Patents Are Invalid.</u>

The patent infringement suit brought by a Texas company, Electric Gas & Technologies, Inc. does not create a genuine issue of material fact that would defeat Reidy's Motion for Partial Summary Judgment. According to AirWater, the matter was resolved through a settlement in favor of AirWater. In fact, the Motion of AirWater and Universal Communication Systems to Dismiss for lack of personal jurisdiction was allowed on November 24, 2003 and the case was dismissed without prejudice. Affidavit of Maura A. Greene, Esq., Exhibit B, Docket sheet. The

case was never tried and AirWater does not argue that there were findings in that matter that would have a preclusive effect here.

The mere fact that a company filed suit with regard to the patents, and the lawsuit was dismissed for lack of personal jurisdiction, does not create a genuine issue of material fact as to the validity of the patents referenced in the Agreement. AirWater does not set forth any facts tending to show that the patents are not valid. In fact, AirWater seeks a declaratory judgment that AirWater's exclusive rights under the Agreement "continue in force." It is not credible that AirWater would seek a declaratory judgment that would allow it to continue to manufacture and market products pursuant to the patents if it truly believed that there were genuine issues as to the validity of the patents.

AirWater's umbrage at defending the lawsuit brought by Electric Gas & Technologies, Inc. is misplaced. The Agreement provides on page 13 that AirWater has the option to pursue any and all litigation to protect its marketing efforts and that it has the sole discretion to determine how much to incur in legal expenses in pursuing any infringement claim or litigation. The provision states as follows:

> In the event any infringement of LICENSOR's patents is discovered in any country recognizing such patents and/or litigation commences with respect to any claim of infringement of LICENSOR's patents, LICENSEE has the option to pursue any and all litigation to protect the marketing effort. LICENSEE had the sole discretion to determine how much to incur in legal expenses in pursuing any infringement claim or litigation based upon what is reasonable and in the best interest of LICENSEE.

Although Electric Gas & Technologies, Inc. was the plaintiff in the patent infringement matter, the fact remains that AirWater had the interest in marketing the products as the licensee, and was a named defendant in the matter, and as such, defended the claim. Moreover, Mr. Zwebner's statement in paragraph 12 of the Affidavit that "J.J. Reidy deliberately avoided

service of process" is not a statement based on Mr. Zwebner's personal knowledge and should be stricken.

WHEREFORE, based on the foregoing, Reidy requests that this Honorable Court issue an order:

1. Allowing Reidy's Motion for Partial Summary Judgment;

2. Denying AirWater's Cross Motion for Summary Judgment; and

3. Ordering AirWater to pay Reidy's attorneys' fees and costs.

> J.J. REIDY & COMPANY, INC.
> By its attorneys,
>
> /s/ Maura A. Greene
> Thomas J. Conte (BBO #566092)
> Maura A. Greene (BBO #547204)
> Bowditch & Dewey, LLP
> 311 Main Street
> P.O. Box 15156
> Worcester, MA 01615-0156
> (508) 791-3511
> tconte@bowditch.com

Dated: January 18, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 18, 2007.

> /s/ Maura A. Greene
> Maura A. Greene