UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| J.J. REIDY & CO., INC., <br><br>  Plaintiff, <br><br> v. <br><br> AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION, <br><br>  Defendants. | CIVIL ACTION NO. 05-40049-FDS |
| AIRWATER PATENTS, INC. <br><br>  Plaintiff, <br><br> v. <br><br> J.J. REIDY & CO., INC. <br><br>  Defendant. | CIVIL ACTION NO. 06-10137-FDS |

**MOTION OF AIRWATER CORPORATION AND AIRWATER PATENTS, INC. TO ENFORCE ORAL SETTLEMENT AGREEMENT**

AirWater Corporation and AirWater Patents, Inc. (collectively, "AirWater") hereby move to enforce the terms of an oral settlement agreement reached by and between the parties on Tuesday, June 26, 2007. In support of this motion, AirWater states as follows:

  1. "This Court may require specific enforcement of an oral agreement because '[a]n oral contract to settle a claim . . . may be enforced as any other contract.'" Quint v. A.E. Staley Mfgr. Co., 1999 WL 33117190, *3 (D.Me. 1999), quoting, O'Rourke v. Iason Inc., 978 F.Supp. 41 (D.Mass. 1997).

  2. "It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract. . . ." Malek v.

Verizon Communications, Inc., 2004 WL 180251, *4 (D.Mass. 2004), citing, Situation Mgmt. Systems, Inc. v. Malouf, Inc., 430 Mass. 875, 878 (Mass. 2000).

3.   In addition, this Court may enforce a settlement agreement summarily where, as here, there is no genuinely disputed question of material fact regarding the existence or terms of that agreement.  See, e.g., Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999), citing, Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1486 (11th Cir. 1994); TCBY Systems, Inc. v. EGB Associates, Inc., 2 F.3d 288, 291 (8th Cir.1993); U.S. v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993); Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 153 (6th Cir.1992); Tiernan v. Devoe, 923 F.2d 1024, 1031 (3rd Cir. 1991); Petty v. Timken Corp., 849 F.2d 130, 132 (4th Cir. 1988); Callie v. Near, 829 F.2d 888, 890 (9th Cir.1987); Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 390 (5th Cir. 1984); Autera v. Robinson, 419 F.2d 1197, 1203 (D.C. Cir. 1969).

4.   Moreover, where, as here, the parties have orally agreed on all material terms of the settlement agreement and such terms are reasonably certain, the fact that one party subsequently changes their mind before the agreement can be reduced to writing does not render the settlement agreement unenforceable.  Quint, supra, 1999 WL 33117190, *3 (fact that plaintiff changed her mind on morning of August 10th before seeing agreement did not change fact that there was meeting of minds on August 9th).

5.   This Court's power to enforce the oral settlement agreement between the parties "has its basis in the policy favoring settlement of disputes and the avoidance of costly and time-consuming litigation." U.S. v. Baus, 834 F.2d 1114, 1127 (1st Cir. 1987), citing, Kukla v. National Distillers Prods. Co., 483 F.2d 619, 621 (6th Cir. 1973).

6. On Tuesday, June 26, 2007, the parties and their respective counsel appeared at the law offices of Bowditch & Dewey, LLP, 311 Main Street, Worcester, Massachusetts for the continued Rule 30(b)(6) deposition of J.J. Reidy & Co., Inc. ("J.J. Reidy") by and through its designee, Mr. James J. Reidy. Also present at the continued deposition of J.J. Reidy was Mr. Michael Zwebner, President of AirWater. Zwebner Affidavit, at ¶ 3.

7. At approximately 1:58 p.m., counsel for J.J. Reidy indicated that she needed to take a break for approximately 20 minutes. During this unexpected recess, Mr. Zwebner and Mr. Reidy met privately, in the absence of their counsel, and discussed settlement. Id. at ¶ 4.

8. At approximately 2:45 p.m., Mr. Reidy emerged from the conference room and stated that the parties had reached an agreement to settle the case. In response to this news, counsel for AirWater suggested that the court reporter remain until counsel for J.J. Reidy returned and a statement could be made on the record that the deposition would be suspended by agreement pending further settlement discussions. In response to the suggestion of AirWater's counsel, Mr. Reidy stated, "Why? This case is over." Id. at ¶ 5.

9. At approximately 2:50 p.m., counsel for J.J. Reidy returned and conferred privately with Mr. Reidy for approximately 20 to 30 minutes. In the meantime, counsel for AirWater conferred privately in the conference room where the Rule 30(b)(6) deposition of J.J. Reidy had been taking place. Thereafter, all parties and their respective counsel reconvened in the conference room to discuss the terms of the settlement

agreement. In that regard, it cannot be disputed that the parties agreed to the following material terms:

    a.    Payment by J.J. Reidy to AirWater in the amount of $5,000.00;

    b.    Surrender by AirWater of its exclusive license to the Reidy Patents pursuant to the parties' Global Manufacturing and Marketing Licensing Agreement;

    c.    Grant by J.J. Reidy to AirWater of a non-exclusive license to the Reidy Patents in the United States and anywhere else where the Reidy Patents are valid;

    d.    Payment by AirWater to J.J. Reidy of royalties on future sales at the rates: (i) 2.5% on sales of any air-to-water machines made and/or sold in the United States costing up to $999.99 per machine, and (ii) 5% on sales of any machines made and/or sold in the United States costing $1,000 or more per machine;

    e.    General mutual releases of all claims;

    f.    Specific release by AirWater of any and all other rights and/or claims to the Reidy Patents;

    g.    Agreement by J.J. Reidy that it will refrain from conspiring and/or engaging in anti-competitive conduct designed to put AirWater out of the air-to-water business;

    h.    Issuance of a joint press release;

    i.    Mutual non-disparagement;

    k.    Agreement by AirWater to pay net costs and expenses incurred by Mr. Reidy in the event he is called by AirWater to testify as a witness in connection with any other litigation; and

l.  Acknowledgement by AirWater that J.J. Reidy is free to license and/or sell the Reidy Patents to any third parties subject to AirWater's non-exclusive license. Id. at ¶ 6; Zayotti Affidavit, Exh. A.

10. After the parties recited and reaffirmed the foregoing terms, Mr. Zwebner proposed that J.J. Reidy further agree to pay a small percentage of any amount received by J.J. Reidy pursuant to any future sale of the Reidy Patents. Mr. Reidy and his counsel rejected this proposal. Id. at ¶ 7.

11. In light of J.J. Reidy's rejection of Mr. Zwebner's proposal, Mr. Zwebner proposed in the alternative that J.J. Reidy agree to issue to AirWater a credit in the amount of $300,000 against future royalties payable on U.S. sales. In response to Mr. Zwebner's alternative proposal, Mr. Reidy stated "I agree to that." J.J. Reidy's counsel then suggested to Mr. Reidy that they step outside of the conference room to talk, in response to which Mr. Reidy emphatically repeated with respect to Mr. Zwebner's alternative proposal, "I agree to that!" Id. at ¶ 8.

12. Upon expression by Mr. Reidy of his acceptance of Mr. Zwebner's proposal that J.J. Reidy to issue to AirWater a $300,000 credit against future royalties payable on U.S. sales, the parties to the above-captioned matter had orally reached agreement with respect to all of essential and material terms of the settlement. Id. at ¶ 9.

13. Mr. Reidy and counsel for J.J. Reidy subsequently exited the conference room and did not return for approximately, 30 minutes. Notwithstanding that the parties had orally agreed to all of the essential, material terms of a settlement, upon returning to the conference room Mr. Reidy's counsel proposed to settle this matter on drastically different terms as follows: (a) termination of the parties' Global Manufacturing and

5

Marketing Licensing Agreement, (b) payment by AirWater to J.J. Reidy in the amount of $100,000, and (c) no issuance of a license of the Reidy Patents of any kind by J.J. Reidy to AirWater. Id. at ¶ 10.

14. Because the parties had clearly expressed their mutual agreement to all of the essential and material terms of a settlement, Mr. Zwebner and counsel for AirWater were initially dumbfounded and confused as to what counsel for J.J. Reidy was saying. As such, Mr. Zwebner asked for clarification, commenting that "we have agreed on all of the terms," or words to that effect. Id. at ¶ 11.

15. In response to Mr. Zwebner's comment that the parties had mutually agreed to all of the terms of settlement, counsel for J.J. Reidy argued that the settlement went "off the table" as a result of Mr. Zwebner's introduction of an additional proposed term to which J.J. Reidy did not agree (to wit, payment by J.J. Reidy to AirWater of a small percentage of any future sale of the Reidy Patents). Contrary to counsel's argument, however, Mr. Reidy repeatedly expressed his acceptance of Mr. Zwebner's alternative proposal for issuance of a $300,000 credit, resulting in an oral agreement as to all essential and material terms of settlement before J.J. Reidy's counsel made any attempt to repudiate such settlement agreement. Id. at ¶ 12.

16. On Wednesday, June 27, 2007, during a telephone conversation with Mr. Reidy, Mr. Zwebner said to Mr. Reidy "we had a deal" and asked if he thought the deal was "good and fair". In response, Mr. Reidy admitted that the parties had an agreement. Specifically, Mr. Reidy stated, "I agree we had made a deal and, yes, the terms were OK." Id. at ¶ 13.

17. On Thursday, June 28, 2007, Mr. Zwebner sent Mr. Reidy an email confirming the settlement agreement. Mr. Reidy did not respond. Id. at ¶ 14 and Exh. A thereto.

18. On Tuesday, July 3, 2007, counsel for J.J. Reidy sent correspondence to AirWater's counsel, arguing that no settlement agreement had been reached. Zayotti Affidavit, Exh. B.

WHEREFORE, AirWater respectfully request that this Honorable Court enter an order:

1. Specifically enforcing the terms of the oral settlement agreement reached between the parties on June 26, 2007 as set forth above in paragraph 9(a) through (l) and paragraph 12;

2. Requiring the parties to memorialize the agreement reached between the parties on Tuesday, June 26, 2007, which shall become the settlement agreement to be signed by all parties as full and final settlement of this action; and

3. Requiring the parties to prepare and file a stipulation of dismissal.

AIRWATER CORPORATION AND
AIRWATER PATENTS, INC.

By their attorneys,

/s/ Matthew P. Zayotti

Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan Werlin LLP
265 Franklin Street
Boston, Massachusetts 02110-3113
(617) 951-1400

Dated: July 11, 2007

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Matthew P. Zayotti, hereby certify that on July 10, 2007, I conferred with Maura A. Greene, Esq. of Bowditch & Dewey, LLP, counsel for the Plaintiff J.J. Reidy & Co., Inc. in a good faith attempt to resolve or narrow the issues related to this motion.

*/s/ Matthew P. Zayotti*

**CERTIFICATE OF SERVICE**
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 11, 2007.

*/s/ Matthew P. Zayotti*