UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| J.J. REIDY & CO., INC.,<br><br>　　Plaintiff,<br><br>v.<br><br>AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,<br><br>　　Defendants. | CIVIL ACTION NO. 05-40049-FDS |
| AIRWATER PATENTS, INC.<br><br>　　Plaintiff,<br><br>v.<br><br>J.J. REIDY & CO., INC.<br><br>　　Defendant. | CIVIL ACTION NO. 06-10137-FDS |

## AFFIDAVIT OF MICHAEL J. ZWEBNER

I, MICHAEL J. ZWEBNER, do hereby state and depose as follows:

1.　　I am the President of AirWater Patents, Inc. and AirWater Corporation (collectively, "AirWater").

2.　　I have personal knowledge of the facts set forth in this affidavit regarding the oral settlement agreement reached between the parties in the above-captioned matter on June 26, 2007.

3.　　On Tuesday, June 26, 2007, I appeared with my attorney, Matthew P. Zayotti, Esq. at the law offices of Bowditch & Dewey, LLP, 311 Main Street, Worcester, Massachusetts for the continued Rule 30(b)(6) deposition of J.J. Reidy & Co., Inc. ("J.J. Reidy") by and through its designee, Mr. James J. Reidy.

4. At approximately 1:58 p.m., counsel for J.J. Reidy, Maura Greene, indicated that she needed to take a break for approximately 20 minutes. During this unexpected recess, I met with Mr. Reidy met privately, in the absence of our respective counsel, and we discussed settlement.

5. By approximately 2:45 p.m., Mr. Reidy and I had orally reached agreement on a settlement. In response to this news, my attorney suggested that the court reporter remain present until counsel for J.J. Reidy returned and a statement could be made on the record that the deposition would be suspended by agreement pending further settlement discussions. In response to this suggestion by my attorney, Mr. Reidy stated, "Why? This case is over."

6. At approximately 2:50 p.m., Attorney Greene returned and conferred privately with Mr. Reidy for approximately 20 to 30 minutes. In the meantime, I conferred privately with my lawyer in the conference room where the Rule 30(b)(6) deposition of J.J. Reidy had been taking place. Thereafter, Mr. Reidy and I, and our respective attorneys reconvened in the conference room to discuss and confirm the terms of the settlement agreement. In that regard, the following material terms of settlement were recited and agreement to each of these was confirmed by me and Mr. Reidy:

a. Payment by J.J. Reidy to AirWater in the amount of $5,000.00;

b. Surrender by AirWater of its exclusive license to the Reidy Patents pursuant to the parties' Global Manufacturing and Marketing Licensing Agreement;

c. Grant by J.J. Reidy to AirWater of a non-exclusive license to the Reidy Patents in the United States and anywhere else where the Reidy Patents are valid until the expiration thereof;

    d.    Issuance by J.J. Reidy to AirWater of a credit in the amount of $25,000 against future royalties payable by AirWater on U.S. sales;

    e.    Payment by AirWater to J.J. Reidy of royalties on future sales at the rates: (i) 2.5% on sales of any air-to-water machines made and/or sold in the United States costing up to $999.99 per machine, and (ii) 5% on sales of any machines made and/or sold in the United States costing $1,000 or more per machine;

    f.    General mutual releases of all claims;

    g.    Specific release by AirWater of any and all other rights and/or claims to the Reidy Patents;

    h.    Agreement by J.J. Reidy that it will refrain from conspiring and/or engaging in anti-competitive conduct designed to put AirWater out of the air-to-water business;

    i.    Issuance of a joint press release;

    j.    Mutual non-disparagement;

    k.    Agreement by AirWater to pay net costs and expenses incurred by Mr. Reidy in the event he is called by AirWater to testify as a witness in connection with any other litigation; and

    l.    Acknowledgement by AirWater that J.J. Reidy is free to license and/or sell the Reidy Patents to any third parties subject to AirWater's non-exclusive license.

    7.    After the foregoing terms of the settlement were recited and agreed to by me and Mr. Reidy, I additionally proposed that J.J. Reidy further agree to pay a small percentage of any amount received by J.J. Reidy pursuant to any future sale of the Reidy Patents. I explained that the basis for this request was that AirWater had paid to J.J.

Reidy a total amount of approximately $420,000, and that AirWater had a right of first refusal to purchase the Reidy Patents pursuant to the parties' Global Manufacturing and Marketing Licensing Agreement. Since Mr. Reidy had indicated to me in our discussions that J.J. Reidy was financially unable to refund to AirWater the substantial amount paid by AirWater for the exclusive license, which we agreed would be terminated as part of the settlement, I thought a fair compromise would be for J.J. Reidy to pay AirWater a small percentage of any future sale of the Reidy Patents. Mr. Reidy and his counsel rejected this proposal.

8.  In light of J.J. Reidy's rejection of my proposal that J.J. Reidy agree to pay a small percentage of any amount received by J.J. Reidy on account of any future sale of the Reidy Patents, and because I desired to reach a full and final compromise with Mr. Reidy, I proposed as an alternative that J.J. Reidy agree to issue to AirWater a credit in the amount of $300,000 (instead of $25,000) against future royalties payable on U.S. sales. In response to my alternative proposal, Mr. Reidy stated "I agree to that." J.J. Reidy's counsel then suggested to Mr. Reidy that they step outside of the conference room to talk, in response to which Mr. Reidy emphatically repeated in an enthusiastic and loud voice, "I agree to that!"

9.  Upon Mr. Reidy's expression of his agreement for J.J. Reidy to issue to AirWater a $300,000 credit against future royalties payable on U.S. sales, Mr. Reidy and I had orally reached agreement with respect to all essential and material terms of the settlement.

10. Mr. Reidy and counsel for J.J. Reidy subsequently exited the conference room and did not return for approximately, 30 minutes. Notwithstanding that Mr. Reidy

4

and I had orally agreed to all of the essential, material terms of a settlement, upon returning to the conference room Mr. Reidy's counsel proposed to settle this matter on drastically different terms as follows: (a) termination of the parties' Global Manufacturing and Marketing Licensing Agreement, (b) payment by AirWater to J.J. Reidy in the amount of $100,000, and (c) no issuance of a license of the Reidy Patents of any kind by J.J. Reidy to AirWater.

11. Because Mr. Reidy and I had so clearly expressed our mutual agreement to all of the essential and material terms of our settlement, my attorney and I were initially dumbfounded and confused as to what counsel for J.J. Reidy was saying. As such, I asked Attorney Greene for clarification, commenting that "we have agreed on all of the terms," or words to that effect.

12. In response to my comment that we had mutually agreed to all of the terms of settlement, Attorney Greene stated that the settlement went "off the table" as a result of my introduction of an additional proposed term to which Mr. Reidy did not agree (i.e., payment by J.J. Reidy to AirWater of a small percentage of any future sale of the Reidy Patents). Contrary to Attorney Greene's argument, however, Mr. Reidy repeatedly expressed his acceptance of my alternative proposal for issuance of a $300,000 credit, resulting in an oral agreement as to all essential and material terms of the settlement before Reidy's counsel made any attempt to repudiate such settlement agreement.

13. On Wednesday, June 27, 2007, during a telephone conversation I had with Reidy, I said to Mr. Reidy, "we had a deal" and I asked him if he thought the deal was "good and fair". In response, Mr. Reidy admitted that we had an agreement.

Specifically, Mr. Reidy stated, "I agree we had made a deal and, yes, the terms were OK."

14. On June 28, 2007, I sent Mr. Reidy an email confirming the terms of the oral settlement agreement we had reached on June 26th. Attached to this affidavit as Exhibit A is a true and accurate copy of the email I sent to Mr. Reidy. Mr Reidy did not respond to my email.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS __10th__ DAY OF JULY, 2007.

_____

CERTIFICATE OF SERVICE
I hereby certify that this document filed though the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 11, 2007.
Matthew J. Zupitta

***EXHIBIT A***

Case 4:05-cv-40049-FDS    Document 96    Filed 07/11/2007    Page 7 of 8

***EXHIBIT A***

**From:** michael j zwebner atl
**To:** J.j.reidy@earthlink.net
**Sent:** Thursday, June 28, 2007 11:20 AM
**Subject:** Fw: re settlement proposals and agreement

Jim,

sorry for the delay in sending you the email, but yesterday I was extremely tied up with all sorts of issues, as I had been out of circulation for the past few days.
In any event, I guess we are both glad that we had a chance at the deposition to clear the air on certain matters, and I thank you for that.
as we discussed and agreed, the following was the basics of our agreement to settle the differences between us

We (AW) voluntarily agree to release back to you the Global License Agreement, and end the ongoing litigation for the following exchange terms

a) a one time cash payment by you for $5,000 which would include the expenses costs that you are currently liable for.
b) a new issuance by yourself for a NON Exclusive License to Air Water Corp, to be valid till the end of the expiry of the Patents,
c) future royalties payable by AW to JJ Reidy Co Inc for all sales that occur within the areas covered by the Patents, mainly USA -
d) Royalties would be for all water machines that are less than $999 in our sale value, - 2.5%
e) Royalties for all air machines that are over $1000 in our sale value, - 5%
f) In lieu of our request for a percentage to us in the event of your selling the patents etc, you agreed to issuing a credit note for $300,000 against which the royalties would be set off.
g) Both parties agree to Non Disparaging of the other party
h) Mutually agreed Releases from all litigation
i) Mutually agreed Press Release prior to dissemination
j) On the issue of your giving evidence in any other litigation that AW or myslef has against third parties we agreed that our side would pay your reasonable costs to enable your assistance,

I believe that I have accurately recorded the points of agreement that were recited in the presence of yourself, Maura your attorney, Matt my attorney and myself.
I look forward to working with you to bring this to a happy ending for both of us, in the very near term thereby negating the need for further litigation etc which will assist you in ending your cash drain.
.
Yours sincerely

Michael Zwebner - Air Water Corp