UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **J.J. REIDY & CO., INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,**<br><br>**Defendants.** | CIVIL ACTION NO. 05-40049-FDS |
| **AIRWATER PATENTS, INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**J.J. REIDY & CO., INC.**<br><br>**Defendant.** | CIVIL ACTION NO. 06-10137-FDS |

**MOTION OF AIRWATER CORPORATION AND AIRWATER
PATENTS, INC. TO CONTINUE DISCOVERY AND SUMMARY
JUDGMENT PENDING DISPOSITION OF MOTION
TO ENFORCE ORAL SETTLEMENT AGREEMENT**

AirWater Corporation and AirWater Patents, Inc. collectively, ("AirWater") hereby move to continue the discovery deadline and summary judgment pending disposition of AirWater's Motion to Enforce Oral Settlement Agreement. In support of this motion, AirWater states as follows:

1.  As more fully set forth in AirWater's Motion to Enforce Oral Settlement Agreement, on June 26, 2007 the parties orally agreed to all material terms of a full and final settlement of the above-captioned consolidated actions. Only after the parties reached agreement as to all of the material terms of the settlement did counsel for J.J. Reidy attempt to disclaim the existence of a settlement agreement. For the reasons set

forth in AirWater's Motion to Enforce Oral Settlement Agreement, AirWater contends that the parties' oral settlement agreement is enforceable and that the belated attempt by J.J. Reidy's counsel to disclaim settlement was ineffective and irrelevant.

2.  No further discovery or summary judgment hearings should be necessary in light of the oral settlement agreement between the parties, enforcement of which would obviate the need for further litigation, including but not limited to completing the deposition of J.J. Reidy which was suspended on account of the parties' having reached a settlement and other outstanding document discovery owed by J.J. Reidy, the filing of motions to compel and motion for sanctions for J.J. Reidy's intentional violation of this Court's discovery Order, and further arguments to be made for summary judgment. However, AirWater is hereby seeking a continuance of discovery and summary judgment in order to preserve its rights because J.J. Reidy's attorneys are now contesting the settlement, and J.J. Reidy's bad faith discovery tactics have unfairly prejudiced AirWater by obstructing access to evidence highly relevant to AirWater's claims and defenses which the Court ordered J.J. Reidy to produce by Order dated January 29, 2007, with which J.J. Reidy has deliberately failed and refused to comply.

3.  As recounted in numerous prior filings made by AirWater, J.J. Reidy has systematically engaged in bad faith and obstructionist discovery tactics at every step of this litigation, which not only created a strong suspicion that J.J. Reidy had something to hide but caused substantial delays. First, J.J. Reidy acted in bad faith when it disclaimed an agreement to suspend discovery pending mediation and to jointly seek an extension of discovery if the mediation was unsuccessful. Because the mediation was conducted several days after the discovery deadline expired in July 2006, AirWater was forced to

file a contested motion for extension of discovery, which the Court did not allow until January 29, 2007. Thereafter, J.J. Reidy's failed to timely comply with the Court's discovery Order and then opposed AirWater's motion seeking a further extension of discovery which was necessitated by J.J. Reidy's recalcitrance. AirWater's second motion to extend discovery was not granted until May 15, 2007.

4. J.J. Reidy's dilatory discovery tactics have caused substantial prejudice to AirWater in building its claims and defenses. For example, in response to AirWater's first request for production of documents served on March 1, 2006, J.J. Reidy in bad faith withheld from production the October 4, 2005 Patent and Asset Purchase Agreement by and between J.J. Reidy and Free Water Company ("Free Water"), pursuant to which J.J. Reidy sold the Reidy Patents to Free Water for $6 million. As the basis for withholding the agreement, J.J. Reidy asserted that the request to which the agreement was responsive was "not reasonably calculated to lead to the discovery of admissible evidence." Zayotti Affidavit, Exh. A. Contrary to J.J. Reidy's objection, J.J. Reidy's sale of the Reidy Patents to another entity is highly relevant and probative of AirWater's claims and defenses and there is simply no way for J.J. Reidy to have reasonably believed that the responsive documents were not subject to discovery.[1]

5. As a result of J.J. Reidy's bad faith responses to AirWater's document requests and interrogatories, AirWater was forced in September 2006 to file a motion to compel further responses, which this Court granted by Order dated January 29, 2007. Although the Court ordered J.J. Reidy to supplement its responses to document requests and interrogatories within 14 days of the Order, J.J. Reidy deliberately delayed producing

---

[1] Air Water had "first refusal rights" per the agreement to purchase the Reidy Patents, and JJ Reidy chose to circumvent these rights and solicit a new buyer without reference to Air Water.

3

the Patent and Asset Purchase Agreement until March 8, 2007 – more than one full year after this document was initially requested. Similarly, J.J. Reidy's supplemental responses to interrogatories were not made until March 7, 2007, and J.J. Reidy made its supplemental productions of documents in installments on March 8th, March 9th, April 24th and April 30th. Id., Exhs. D, E, F and G.

   6. It has also come to light that in addition to deliberately engaging in delay tactics, J.J. Reidy has intentionally withheld documents and information highly relevant to AirWater's claims and defenses which the Court ordered J.J. Reidy to produce by Order dated January 29, 2007 within 14 days. For example, when J.J. Reidy finally did produce a copy of its Patent and Asset Purchase Agreement with Free Water company, J.J. Reidy withheld pages 30 through 64 of the contract. Id., Exh. H.

   7. More significantly, on June 26, 2007, J.J. Reidy inadvertently revealed through its production to AirWater during the deposition of J.J. Reidy of a letter dated June 18, 2007, wherein J.J. Reidy purports to have terminated its October 4, 2005 Patent and Asset Purchase Agreement with Free Water, that J.J. Reidy has purposefully withheld additional addenda to the agreement and other highly relevant documents relating to J.J. Reidy's Patent and Asset Purchase Agreement with Free Water in flagrant violation of the Court's discovery Order. Specifically, J.J. Reidy's June 18, 2007 letter refers to (i) the "Patent and Asset Purchase Agreement "and its latest, and current, Addendum to Patent and Asset Purchase Agreement Dated October 4, 2005 signed by both parties on March 21, 2007, (ii) Free Water's "May 29, 2007 email to me that you 'don't have the money . . . to take care of . . . your payments", (iii) "the NOTE AND AGREEMENT which accompanied the aforementioned Addendum", and (iv) a

"PATENT ASSIGNMENT AGREEMENT [which] was also signed by Joseph Dutra". None of these highly relevant documents have been produced. Zayotti Affidavit, at ¶ 11 and Exh. I thereto.

8.  Even more significantly, it has also recently come to light that J.J. Reidy may not have even owned the Reidy Patents at the time J.J. Reidy purportedly licensed the Reidy Patents to AirWater on an exclusive basis pursuant to the parties' Global Manufacturing and Marketing Licensing Agreement, such that there was a complete failure of consideration and AirWater is entitled as a matter of law to, among other things, the return of all amounts paid by AirWater totaling approximately $420,000 plus all other consequential damages, and possibly attorney's fees and costs. See Aqua Flame, Inc. v. Imperial Fountains, Inc., 463 F.Supp. 736, 737-388 (N.D. Texas 1979) (defendant not obligated to pay royalties where plaintiff had assigned its patent to a bank as security for a loan and, therefore, plaintiff did not own patent for purposes of licensing patent to defendant). Indeed, with respect to the Reidy Patents numbered 5,106,512, 5,149,446 and 5,203,989, such patents were owned by Janice Bethanne Reidy at the time that J.J. Reidy represented and warranted to AirWater pursuant to the terms of the parties' Global Manufacturing and Marketing Licensing Agreement that J.J. Reidy had the "entire right, title and interest" thereto and the "absolute and undisputed rights to grant" an exclusive license therein to AirWater. Zayotti Affidavit, Exhs. J-M. Similarly, it now appears that Reidy Patent number 5,366,705 was assigned to the Bank of America National Trust & Savings Association in connection with a security agreement, and there is no indication that the bank ever assigned the patent back. Zayotti Affidavit, Exh. N. If J.J. Reidy was not the owner of the Reidy Patents at the time it entered into the Global Manufacturing

5

and Marketing Licensing Agreement with AirWater, then J.J. Reidy could not have licensed the Reidy Patents to AirWater and there was a complete failure of consideration. Aqua Flame, 463 F.Supp. at 737 ("It is elementary that if Plaintiff never has owned the patent, it could never license it so that there would be a complete failure of consideration for Defendants' promise to pay. . . .").

9. On June 29, 2007, AirWater served its Fourth Request for Documents seeking information regarding ownership and assignments of the Reidy Patents, and AirWater should be afforded the opportunity to discover the same. Moreover, if, as it now appears, that J.J. Reidy did not even own one or more of the Reidy Patents, then AirWater should be permitted the opportunity to amend its complaint to add a claim that it was fraudulently induced to enter into the Global Manufacturing and Marketing Licensing Agreement by J.J. Reidy's fraudulent misrepresentation and warranty "that it has the entire right, title, and interest in and to [the Reidy Patents] . . .[and] the absolute and undisputed rights to grant the licenses . . ." to AirWater. Zayotti Affifdavit, Exh. J. Additionally, it would seem that J.J. Reidy engaged in unfair, fraudulent and deceptive trade practices in violation of Mass. Gen. L. ch. 93A, §§ 2 and 11. In the unlikely event that the settlement agreement is not enforced, in the interests of justice AirWater must be afforded the opportunity to complete its discovery and to make these and other additional arguments before the Court on summary judgment.

10. With regard to documents relating to the ownership and assignments of the Reidy Patents, J.J. Reidy has undoubtedly withheld relevant documents in violation of the Court's January 29, 2007 discovery Order. In that regard, this Court granted AirWater's Motion to Compel further responses to Document Request Nos. 10 and 11

"with respect to any communication between the Plaintiff and any other entity concerning the patents during the period from January 2003 to January 2006", yet J.J. Reidy has produced no documents concerning assignments of the Reidy Patents during this time period. Zayotti Affidavit, at ¶ 19. Similarly, the Court compelled J.J. Reidy to produce "[A]ll documents that constitute, relate or refer to communications by and between you and or James J. Reidy on the one hand, and Brian Dingman on the other hand regarding the subject matter of this litigation, including without limitation the patents referred to in paragraph 4 of your First Amended Complaint." Order, at 3 (Document Request 32). Mr. Reidy testified during his deposition with respect to assignments of the Reidy Patents that he would have asked his patent attorney, Brian Dingman, to effectuate the assignments, Zayotti Affidavit, Exh. P, at 100, 106, but J.J. Reidy produced no documents relating to any such assignments. Id. at ¶ 19.

11.     Moreover, if J.J. Reidy misrepresented its purported ownership of the Reidy Patents and concealed evidence that would reveal its lack of ownership as it now appears, including but not limited to highly material documents such as the Patent and Asset Purchase and Sale Agreement, then J.J. Reidy's lawsuit against AirWater is a sham, J.J. Reidy is perpetrating a fraud on this Court through maintenance of its claims, and J.J. Reidy's counsel has a duty of candor to the tribunal to promptly correct the record and disclose the relevant information. See Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1205 (Fed. Cir. 2005) (when counsel became aware of patent assignment, counsel was obligated to correct record where plaintiff misrepresented patent ownership and concealed evidence that would reveal lack of ownership).

7

12.     Similarly, although J.J. Reidy was ordered by this Court to supplement its response to Document Request No. 1 for all documents identified in AirWater's interrogatories, and its response to Interrogatory No. 18 by identifying and describing the content of any and all communications by and between J.J. Reidy on the one hand and World Wide Water, Inc., World Wide Water, LLC and or Mike Klein on the other hand relating to patents and a licensing Arrangements from January 2003 to date and continuing, see Order, at 4 (Interrogatory No. 18), and notwithstanding that J.J. Reidy testified that (i) between November 2002 and February 2003, Mr. Reidy communicated with Mike Klein about licensing the Reidy Patents to Mike Klein and Hyflux for $4 million, (ii) that Mr. Reidy communicated with Mike Klein about J.J. Reidy's purported termination of the Patent and Asset Purchase Agreement by letter dated June 18, 2007 because "he's in the business and I thought he might be interested in my patents", (iii) that during the pendency of this litigation Mr. Reidy has talked to Mike Klein "frequently" about Mr. Zwebner mostly and about the litigation, J.J. Reidy has still not produced any documents that constitute, relate or refer to communications by and between J.J. Reidy and Mike Klein in willful disregard of the Court's January 29, 2007 discovery Order. Zayotti Affidavit, at ¶ 19 and Exh. P, at 28-32, 84-85.

13.     J.J. Reidy's recalcitrance is particularly outrageous in light of the responsive documents that are known to exist and were obtained from another source. Specifically, AirWater's predecessor Florida counsel obtained certain responsive communications from Mike Klein, Air2Water and World Wide Water dated March 2005 by means of subpoena wherein Reidy notified Klein that J.J. Reidy had terminated the

parties' Global Manufacturing and Marketing Licensing Agreement and offered the Reidy Patents for sale. Zayotti Affidavit, Exh. Q.

14.   Further, in light of the foregoing it is clear that J.J. Reidy has intentionally withheld responsive information in its supplemental written response to Interrogatory No. 18, wherein J.J. Reidy stated merely as follows:

> "With respect to any communications relating to patents and licensing arrangements from January 2003 to date and continuing, James Reidy states that he had discussions with Mike Klein and Mr. Zwebner because Mike Klein and Mr. Zwebner were going to agree that Mr. Klein could manufacture a machine that converted water vapor from the air into drinking water. Mr. Zwebner agreed that Mr. Klein could make the machine, and Mr. Klein in return stated that he would not bring suit against Mr. Zwebner for patent infringement provided that Mr. Zwebner manufactured only Mr. Reidy's machine. Mr. Reidy warned Mr. Zwebner that he could not make Mr. Klein's machine."

Zayotti Affidavit, Exh. B, at 14. J.J. Reidy's supplemental response makes absolutely no mention of the communications concerning the Reidy Patents and licensing arrangements relating thereto and therefore is intentionally evasive and incomplete.

15.   Additionally, although the sale of Reidy Patents to Free Water is patently relevant to AirWater's claims and defenses, on April 13, 2007 J.J. Reidy belatedly served blanket boilerplate objections to AirWater's Second Request for Documents that was served on March 9, 2007, which seeks, among other things, additional relevant, discoverable information regarding J.J. Reidy's communications with Free Water and details of the transaction. Moreover, J.J. Reidy has neglected to respond in any fashion whatsoever to AirWater's Third Request for Documents that was served on March 22, 2007. Zayotti Affidavit, at ¶ 21, and Exh. R.

16.     Further, there can be no doubt that J.J. Reidy's Motion for Protective Order to prevent AirWater from taking the deposition of Mike Klein in California on the supposed grounds that the requested discovery is not relevant and would be overly burdensome. This Court already rejected the very same arguments that J.J. Reidy advanced in opposition to AirWater's Motion to Compel further responses to Interrogatory No. 18. Moreover, as recently became clear through a a document produced to AirWater in litigation pending in California, the requested discovery is patently relevant in light of the fact that Mike Klein has a Strategic Alliance Agreement with Free Water Company concerning the Reidy Patents which, of course, J.J. Reidy has never disclosed to AirWater. Zayotti Affidavit, at ¶ 24 and Exh. U thereto.

17.     Moreover, as more fully argued in AirWater's Opposition to J.J. Reidy's Motion for Protective Order, as a matter of law J.J. Reidy lacks standing to object AirWater's non-party subpoena. See Green v. Baca, 2005 WL 283361, *1 (C.D.Cal. 2005), citing, Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004); Donahoo v. Ohio Dept. of Youth Services, 211 F.R.D. 303, 306 (N.D.Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty"); 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2459 (2d ed.2004). See also, G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc., 2007 WL 119148, *3 (D.Nev. 2007) ("As a general proposition, a party lacks standing under Fed.R.Civ.Pro. 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena."); Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y.2004) (A party "ordinarily lacks standing to

quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right".); U.S. v. Viltrakis, 108 F.3d 1159, 1160-61 (9th Cir. 1997) ("courts have regularly held that a defendant or a putative defendant lacks standing to object to a subpoena issued to a nonparty witness"); Davis v. General Acc. Ins. Co., 1999 WL 228944, *2 (E.D.Pa. 1999) ("Ordinarily, only the non-parties whom were served with the subpoenas may move to have them quashed under Federal Rule of Civil Procedure 45(c)(3)(A)."). Nevertheless, J.J. Reidy's Motion for Protective Order is still pending.

18.     Only after AirWater filed its opposition to J.J. Reidy's Motion for Protective Order did Mike Klein file an objection on grounds of relevance. Prior to filing his objection, Mike Klein intentionally evaded service of the subpoena by a constable by means of deception. Indeed, at one point the constable spoke to Mr. Klein by cell phone and Mr. Klein falsely stated that he was in Hawaii. Zayotti Affidavit, Exh. V; Zwebner Affidavit, at ¶¶ 5-6. However, AirWater was able to properly effect service of the subpoena on Mr. Klein by overnight delivery, signed at the front desk of Mr. Klein's place of business by "Smith". Zayotti Affidavit, Exh. W. See Doe v. Hersemann, 155 F.R.D. 630 (N.D.Ind.1994) (holding that service of a subpoena via certified mail is sufficient under Rule 45, particularly when Defendant does not deny actual receipt); Ultradent Products, Inc. v. Hayman, 2002 WL 31119425 (S.D.N.Y.2002) (delivery did not require personal in-hand service); Western Resources v. Union Pacific R.R., 2002 WL 1822432 (D.Kan.2002) (holding that delivery of subpoena via Federal express was sufficient because effective service under Rule 45 is not limited to personal service); King v. Crown Plastering, 170 F.R.D. 355 (E.D.N.Y.1997) (holding that in-hand delivery is not required under Rule 45 so long as service is made in a manner that reasonably

insures actual receipt of the subpoena). In the interests of justice, AirWater must be afforded the opportunity to depose Mr. Klein.

19. Finally, J.J. Reidy was ordered to provide a privilege log but has failed to do so. Zayotti Affidavit, at ¶ 27.

20. Accordingly, there is good cause to continue and the interests of justice require the continuance of the deadlines for completing discovery, the filing of summary judgment motions and hearing of all summary judgment motions.

WHEREFORE, AirWater respectfully requests that this Honorable Court enter an order:

1. Continuing the deadlines for completing discovery, filing of summary judgment motions and the hearing on all summary judgment motions pending the disposition of AirWater's Motion to Enforce Oral Settlement Agreement;

2. Extending the deadline for completing discovery for a period of 120 days following any denial of AirWater's Motion to Enforce Oral Settlement Agreement, and extending all other corresponding scheduling deadlines in accordance therewith;

3. Granting AirWater three (3) additional days of seven hours each to complete the depositions of J.J. Reidy & Co., Inc and Mr. James Reidy;

4. Awarding AirWater its reasonable attorneys fees and costs incurred in connection with the preparation and filing of this motion; and

5. Granting AIrWater such other and further relief as this Court deems just and proper.

AIRWATER CORPORATION AND
AIRWATER PATENTS, INC.

By their attorneys,

*/s/ Matthew P. Zayotti*

Richard Kirby, BBO# 273690
Matthew P. Zayotti, BBO# 638265
Keegan Werlin LLP
265 Franklin Street
Boston, Massachusetts 02110-3113
(617) 951-1400

Dated: July 13, 2007

### CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Matthew P. Zayotti, hereby certify that on June 21, 22 and 26, 2007, I conferred with Maura A. Greene, Esq. of Bowditch & Dewey, LLP, counsel for the Plaintiff J.J. Reidy & Co., Inc. in a good faith attempt to resolve or narrow the issues related to this motion.

*/s/ Matthew P. Zayotti*

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 13, 2007.

*/s/ Matthew P. Zayotti*

---

13