UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40049-FDS

(Consolidated with AirWater Patents, Inc. v. J.J.
Reidy & Co., Inc., a Massachusetts Corporation;
United States District Court Southern District of
Florida, Miami Division, Case No. 05-20650-
CIV-JORDAN)

|  |  |
|---|---|
| J.J. REIDY & CO., INC., | ) |
|  | ) |
|        Plaintiff, | ) |
| v. | ) |
|  | ) |
| AIRWATER CORP. and | ) |
| AIRWATER PATENTS CORPORATION, | ) |
|  | ) |
|        Defendants. | ) |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(D), the plaintiff J.J. Reidy & Co., Inc. ("J.J. Reidy") and

defendants AirWater Corp. ("AirWater Corp.") and AirWater Patents Corporation ("AirWater

Patents") submit this Joint Pretrial Memorandum.

## I.    Summary of the Evidence to be Offered by the Parties

### A.    J.J. Reidy's Summary

J. J. Reidy and AirWater Corp. entered into a Global Manufacturing and Marketing

Licensing Agreement dated March 21, 2003 in which J.J. Reidy granted to AirWater Corp. a

license to use four of its United States Patents (the "Licensed Patents") relating to a water

purification system (the "Agreement").[1]

---

[1] The Agreement was executed by the parties in or about late June, 2003 and then back dated to March 21, 2003.

In February of 2003, Universal Communication Systems, Inc. ("UCS"), the publicly traded parent company[2] and 100% owner of AirWater Corp. and AirWater Patents, contacted J.J. Reidy, a small, closely-held Massachusetts Corporation located in Holden, Massachusetts, seeking to acquire its rights to the Licensed Patents.

James Reidy ("Mr. Reidy"), president of J.J. Reidy, spoke with Michael Zwebner ("Mr. Zwebner"), the Chief Executive Officer of UCS, and President of AirWater Corp. and AirWater Patents, on an almost daily basis over the next months and had frequent email correspondence with Mr. Zwebner.

Prior to execution of the Agreement, AirWater Corp., by Mr. Zwebner, represented to Mr. Reidy, as an inducement for J.J. Reidy to enter into the Agreement, that it had $2 million in funds to commit to the marketing of products based upon the Licensed Patents. The evidence will show that Mr. Zwebner knew that his statements were false when he made them.

On June 25, 2003, with J.J. Reidy's assent, AirWater Corp. assigned its rights and liabilities under the Agreement to AirWater Patents.

Concerning payments of royalties, under the Agreement, AirWater Patents was required to pay J.J. Reidy a minimum royalty payment of $10,000 per month for a minimum of ten (10) years, or until the last patent expired, whichever period was longer.

The Agreement provides in pertinent part:

> Licensee [AirWater Patents] is to pay Licensor [J. J. Reidy] a monthly Royalty payment in the amount of $10,000 per month commencing November 1, 2003, or the Royalty payments due in accordance with those stated above whichever is more.

---

[2] UCS has changed its name to Air Water International, which is a publicly traded company on the New York Stock Exchange under the symbol "AWTI." As of February 28, 2008, the per share value of its stock was listed as $0.14 on msn.com.

Moreover, statements in annual filings made by with the Securities and Exchange

Commission ("SEC") explicitly state that the Agreement with J.J. Reidy requires monthly

royalty payments of $10,000 per month through October, 2013.

An amendment to the Form 10-KSB annual filing of UCSY filed on or about June 30,

2004, states in pertinent part:

AirWater Minimum Royalty Payments

As discussed more fully in Note 1, *the Company's license agreement, through its
AirWater subsidiary, requires monthly royalty payments of $10,000 per month
through October 2013*.

The certification for that filing, executed by Mr. Zwebner, states in pertinent part:

1. *I have reviewed this amendment* to the annual report on Form
10-KSB of Universal Communications Systems, Inc.;

2. Based on my knowledge, *this report does not contain any
untrue statement of a material fact or omit to state a material fact
necessary to make the statements made*, in light of the
circumstances under which such statements were made, not
misleading with respect to the period covered by this report..."

On or about January 13, 2005, UCS made another filing with the SEC acknowledging

AirWater's obligation to make monthly royalty payments under the Agreement through October

2013. That filing contains the same factual assertion that "the Company's license agreement,

through its AirWater subsidiary, requires monthly royalty payments of $10,000 per month

through October 2013," as well as a similar certification.[3] The certification for the January 13,

2005 filing was, once again, executed by Mr. Zwebner.

---

[3] Specifically, the January 13, 2005 filing states:

AirWater Minimum Royalty Payments

As discussed more fully in Notes 1, *the Company's license agreement, through its AirWater
subsidiary, requires monthly royalty payments of $10,000 per month through October 2013*.

The certification for that filing, like the June 30, 2004 filing, provides in pertinent part:

The Agreement further states that the LICENSEE shall pay a royalty fee of 5% on certain

sales and 7% on all other sales. The provision goes on to state:

> LICENSOR shall receive royalties on the quarterly gross sales of LICENSEE . . .
> This royalty levied on gross sales shall be paid for all sales made on a
> Quarterly basis.
> The payment will be remitted to the LICENSOR on or before the 30th day
> following the closing of the quarterly period.
> LICENSEE will provide LICENSOR on a quarterly basis a full accounting
> of units shipped, units billed, and a receivables aging, until that time both
> parties agree to waive this requirement.
> The ROYALTY RATE is based upon the quarterly sales of LICENSEE
> and computed as follows:
> Each quarter, LICENSOR shall be paid the applicable Royalties on the
> gross sales during that fiscal quarter.

Concerning termination of the Agreement, on November 1, 2004 and December 1, 2004,

AirWater Patents failed to make its required monthly royalty payments to J.J. Reidy as required

by the Agreement. Based on the foregoing, J.J. Reidy issued Notices of Default and Termination

to AirWater Patents in accordance with the terms of the Agreement. In this regard, the

Agreement provides in pertinent part:

> This agreement will terminate with notice, if LICENSEE does not
> make any required payments to LICENSOR as specified within the
> stated and agreed time periods. The LICENSOR agrees to grant
> LICENSEE a 14 day period of notice / grace in which the Licensee
> can make good on any outstanding amount.

---

1. *I have reviewed this annual report* on Form 10-KSB of Universal Communications
Systems, Inc.;

2. *Based on my knowledge, this report does not contain any untrue statement of a
material fact or omit to state a material fact necessary to make the statements made*, in
light of the circumstances under which such statements were made, not misleading with
respect to the period covered by this report…"

When AirWater Patents failed to cure its default by paying J.J. Reidy as required, J.J. Reidy informed AirWater Patents that the Agreement was terminated in a letter dated January 31, 2005.

Notwithstanding the termination of the Agreement, J.J. Reidy expects the evidence to show that AirWater Patents and AirWater Corp. have continued to use the Licensed Patents through the present date as though the Agreement with AirWater Patents had not been terminated, causing J.J. Reidy to suffer damages. J.J. Reidy's damages, which have been accruing since November, 2004 are estimated to be $10,000 per month for a total in excess of $400,000.

In addition, under the terms of the Agreement, AirWater Patents breached its contract with J.J. Reidy by failing: (a) to commit resources and put forth best efforts for marketing products and for the parties' accomplishing, completing and fulfilling overall objective to establish and maintain the awareness and exposure of products manufactured based on the Licensed Patents and to enhance sales and future growth of such products; (b) to maintain and provide J.J. Reidy with a copy of an insurance policy, beginning with the first commercial production and sales of product, that names J.J. Reidy as an additional insured with respect to any claims against J.J. Reidy as a result of AirWater Patents' or any of its sub-licensees' sales of property based on the Licensed Patents; (c) to fulfill its obligations pursuant to the Agreement by failing to provide J.J. Reidy with quarterly accountings of units of product shipped, units billed, and receivables aging; and (d) to ensure that J.J. Reidy was provided with a non-compete and non-disclosure in its favor from each sub-licensee with whom Air Water Patents entered into a sub-license concerning the Licensed Patents.

## II.    Undisputed Facts

The parties will submit a separate document setting forth the undisputed facts.

## III.    Contested Issues of Fact

### A.    J.J. Reidy's Contested Issues of Fact

1.    Prior to execution of the Agreement and as an inducement for J.J. Reidy to enter into the Agreement, AirWater Corp., by its President, Mr. Zwebner, represented to J.J. Reidy that it had $2 million in funds to commit to the marketing of the products based upon J.J. Reidy's patents, when it did not.

2.    At no time did AirWater Patents request that J.J. Reidy make application for any foreign patents desired by AirWater Patents, at AirWater Patents' expense.

3.    Under the terms of the Agreement, AirWater Patents failed to perform its other obligations under the Agreement by: (a) committing resources and putting forth best efforts in accomplishing, completing and fulfilling their overall objective to establish and maintain the awareness and exposure of products manufactured based on the patents licensed by J.J. Reidy and to enhance sales and future growth of such products; (b) maintaining and providing J.J. Reidy with a copy of an insurance policy, beginning with the first commercial production and sales of product, that names J.J. Reidy as an additional insured with respect to any claims against J.J. Reidy as a result of AirWater's or any of its sub-licensees' sales of property based on the Licensed Patents; (c) fulfilling its obligations pursuant to the Agreement by failing to provide J.J. Reidy with quarterly accountings of units of product shipped, units billed, and receivables aging; and (d) ensuring that J.J. Reidy was provided with a non-compete and non-disclosure in its favor from each sub-licensee with whom Air Water Patents entered into a sub-license concerning the Licensed Patents.

4.      Under the Agreement, J.J. Reidy was entitled to minimum monthly

royalties payments of $10,000 from AirWater Patents for a minimum of ten (10) years, or until

the last patent expired, whichever period was longer.

5.      The Agreement was properly terminated by J.J. Reidy on January 31,

2005.

6.      AirWater Patents and AirWater Corp. have continued to use the Licensed

Patents through the present as though the Agreement between J.J. Reidy and AirWater Patents

had not been terminated.

7.      As a result of AirWater Patents and AirWater Corp.'s conduct, J.J. Reidy

has suffered damages in excess of $400,000.

**IV.     Jurisdictional Questions**

There are no jurisdictional questions.  Jurisdiction is based on diversity of citizenship.

**V.      Questions Raised by Pending Motions**

**A.      J.J. Reidy**

Whether this lawsuit should be consolidated with the action entitled AirWater

Corporation v. Worldwide Water, LLC et al, 4:06-cv-40288-FDS, currently pending in United

States District Court for the District of Massachusetts (Worcester), which arises out of the same

Agreement and contains similar questions of law and fact.  J.J. Reidy will be filing a Motion to

Consolidate these lawsuits.

**VI.     Issues of Law**

**A.      J.J. Reidy**

This case involves issues of law relating to the actions of AirWater Corp. and AirWater

Patents in connection with the Agreement.  In this regard, this Court has already determined that

J.J. Reidy is entitled to minimum monthly royalty payments of at least $10,000 over the life of

the Agreement.[4] However, with respect to J.J. Reidy's Second Amended Complaint, this Court must still determine whether:

1.      AirWater Patents breached the Agreement by failing to abide by its obligations concerning its efforts to market products based on the Licensed Patents; by failing to fulfill its other obligations under the Agreement, including but not limited to failing to obtain insurance; by failing to provide required quarterly accountings; and by failing to obtain non-compete or non-disclosure agreements with third-parties to whom it issued sublicenses;

2.      AirWater Corp. made intentional and fraudulent misrepresentations for the purpose of inducing J.J. Reidy to enter into the Agreement, whether J.J. Reidy reasonably relied upon these false representations to its detriment by entering into the Agreement, and whether J.J. Reidy suffered damages as a result of AirWater Corp.'s conduct;

3.      the acts of AirWater Patents and AirWater Corp. constitute unfair and deceptive business practices in violation of M.G.L. c. 93A, §§ 2 and 11;

4.      the Agreement was lawfully terminated on January 31, 2005; and

5.      AirWater Patents and AirWater Corp. continued to use the Licensed Patents after the lawful termination of the Agreement on January 31, 2005 and whether, as a result, J.J. Reidy is entitled to damages from AirWater Patents and AirWater Corp. for quantum meruit and/or unjust enrichment.

AirWater Patents alleges that J.J. Reidy wrongfully terminated the Agreement and requests that the Court declare that it was in compliance with the terms of the Agreement. However, this Court's Memorandum and Order on Parties Motion for Summary Judgment[5]

---

[4] The Court found that although the unambiguous language of the Agreement entitled Reidy to minimum monthly royalty payments over the entire life of the Agreement, there is a genuine dispute of material fact as to the proper time (quarterly or monthly) and method of payment.

[5] In this regard, on or about October 31, 2006, J.J. Reidy filed a Partial Motion for Summary Judgment on its breach of contract claim relative to AirWater Patents' failure to comply with the royalty obligations and claim for

renders the majority of AirWater Patents' claims moot, significantly narrowing the issues to be tried in this case. Specifically, in connection with its breach of contract, breach of the covenant of good faith and fair dealings claims, and unjust enrichment claims, AirWater Patents makes the following allegations which J.J. Reidy asserts have been rendered fully or partially moot in connection with the Court's Order:

1.      AirWater Patents alleges that J.J. Reidy wrongfully demanded monthly payments beyond a one year term. However, this Court found that although the unambiguous language of the Agreement entitled J.J. Reidy to minimum monthly royalty payments over the entire life of the Agreement, there is a genuine issue of material fact as to the proper time (monthly or quarterly) and method of payment.

2.      AirWater Patents alleges that J.J. Reidy prematurely and wrongfully terminated the Agreement. However, this Court found that if AirWater Patents was required to make minimum monthly royalty payments in November and December, J.J. Reidy did not violate the Agreement by sending a termination letter 18 days after giving AirWater Patents notice that it was in default.

3.      AirWater Patents alleges that J.J. Reidy breached the Agreement by failing to provide world-wide patents and by failing to cooperate in registering the patents in other countries. However, this Court found that J.J. Reidy did not materially breach the Agreement by obtaining patents for the technology only in the United States and three other nations because the Agreement cannot be interpreted as containing a provision representing that patents had been obtained in every nation on earth. Moreover, this Court found that J.J. Reidy did not breach the Agreement by refusing to apply for patents in foreign countries upon AirWater Patent's request

---

declaratory judgment. On or about December 13, 2006, AirWater Corp. filed a Cross-Motion for Partial Summary Judgment on the breach of contract claim.

because whether AirWater Patents or J.J. Reidy was obligated to pay for any requested foreign patent application is a question of fact for the jury - if J.J. Reidy is required to pay, his refusal may possibly constitute a material breach; if AirWater Patents is required to pay, J.J. Reidy's refusal was appropriate.

      4.     AirWater Patents alleges that it conferred benefits upon J.J. Reidy by creating new markets for the patents in an unrelated litigation and J.J. Reidy accepted those benefits without honoring the terms of the Agreement. However, this Court found that J.J. Reidy did not breach the Agreement by refusing to defend and indemnify AirWater Patents in an unrelated litigation because there was no evidence of any special relationship between the parties.

     Nevertheless, AirWater Patents makes the following further allegations which this Court must now determine:

      1.     J.J. Reidy breached the exclusivity provisions of the Agreement by soliciting new investors for the patents;

      2.     AirWater Patents paid J.J. Reidy a sum of money for patents which may or may not be exclusive, may or may not be world-wide[6] and may or may not be valid and J.J. Reidy accepted those benefits without honoring the terms of the Agreement;

      3.     AirWater Patents conferred benefits upon J.J. Reidy by creating new markets for the patents and Reidy accepted those benefits without honoring the terms of the Agreement.

---

[6] However, this Court found that Reidy did not materially breach the Agreement by obtaining patents for the technology only in the United States and three other nations because the Agreement cannot be interpreted as containing a provision representing that patents had been obtained in every nation in the world.

Moreover, this Court further found in its Order that (1) J.J. Reidy did not breach the express warranty of his patents because he proved he had title to the patents and (2) AirWater Patents' allegation that the Agreement is void due to lack of consideration is meritless.

## VII.   Requested Amendments to the Pleadings

### A.   J.J. Reidy

J.J. Reidy plans to amend its Complaint by adding counts against AirWater Patents for Quantum Meruit and/or Unjust Enrichment for continuing to utilize the Licensed Patents through the present as though the Agreement had not been properly terminated on January 31, 2005.

J.J. Reidy also plans to amend its Complaint by adding counts against AirWater Corp. for tortious interference with its contractual relationship with AirWater Patents and for patent infringement for its use of the Licensed Patents following terminating the Agreement with AirWater Patents on January 31, 2005.

## VIII.   Additional Matters That Would Aid in the Disposition of the Action

The parties unsuccessfully mediated this case with a professional mediator on July 25, 2006.

## IX.   Probable Length of the Trial

The probable length of the trial is five days.

## X.   Witnesses

### A.   J.J. Reidy

    1.   James J. Reidy
        1260 Main St., Holden, MA 01520.

    2.   Michael J. Zwebner
        407 Lincoln Road, Suite 12F, Miami Beach, Florida;

    3.   Keeper of Records, AirWater Corp.
        407 Lincoln Road, Suite 12F, Miami Beach, Florida;

4.   Keeper of Records, AirWater Patents
     407 Lincoln Road, Suite 12F, Miami Beach, Florida;

5.   Keeper of Records, Freewater Corporation
     Georgetown, TX 78628;

6.   Keeper of Records, Air2water LLC
     2800 28th Street, Suite 20, Santa Monica CA, 90405-6201;

7.   Keeper of Records, Universal Communications System, Inc.
     407 Lincoln Road, Suite 304, Miami Beach. Florida 33139-3038;

8.   Keeper of Records, Air Water International Corporation
     407 Lincoln Road, Suite 304, Miami Beach. Florida 33139-3038;

9.   Janice Betheanne Difonso
     124 Ridge Road, Northborough, MA; and

10.  Brian Dingman, Mirick O'Connell,
     1700 West Park Drive, Westborough, MA.

Reidy reserves the right to call rebuttal witnesses and any of the witnesses listed by

AirWater Patents and AirWater Corp. and to supplement this list.

## B.    **Proposed Exhibits**

The parties will submit a separate document setting forth the proposed exhibits.

## XI.    **Rule 26(a)(3) Required Disclosures**

None.

                                      J.J. REIDY & COMPANY, INC.
                                      By its attorneys,

                                      /s/ Colleen E. Cushing
                                      Thomas J. Conte (BBO #566092)
                                      James P. Hoban (BBO #633929)
                                      Colleen E. Cushing (BBO #663498)
                                      Bowditch & Dewey, LLP
                                      311 Main Street, P.O. Box 15156
                                      Worcester, MA 01615-0156
                                      Tel. No. (508) 791-3511

Dated:  February 28, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 28, 2008.

/s/ Colleen E. Cushing
Colleen E. Cushing