UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| J.J. REIDY & CO., INC.,<br><br>      **Plaintiff,**<br><br>v.<br><br>**AIRWATER CORPORATION AND AIRWATER PATENTS CORPORATION,**<br><br>      **Defendants.** | CIVIL ACTION NO. 05-40049-FDS |
| **AIRWATER PATENTS, INC.**<br><br>      **Plaintiff,**<br><br>v.<br><br>**J.J. REIDY & CO., INC.**<br><br>      **Defendant.** | CIVIL ACTION NO. 06-10137-FDS |

**PRETRIAL MEMORANDUM OF AIRWATER
CORPORATION AND AIRWATER PATENTS, INC.**

Pursuant to Local Rule 16.5(D), the Defendants AirWater Corporation and AirWater Patents Inc. (collectively "AirWater") hereby submit this Pretrial Memorandum.

I.    **Summary of the Evidence to be Offered by AirWater**

On or about June 24, 2003, J.J. Reidy & Co., Inc. and AirWater Corporation executed a Global Manufacturing and Marketing Licensing Agreement, which they back-dated to March 21, 2003. The Agreement was drafted by Mr. Reidy and Mr. Zwebner.

Pursuant to the Agreement, J.J. Reidy granted AirWater Corporation an exclusive, world-wide license to manufacture and market air-to-water generating systems based on four United States Patents numbered 5,106,512, 5,149,446 and 5,203,989.

In exchange for the exclusive, world-wide rights granted by J.J. Reidy, AirWater agreed to pay J.J. Reidy $100,000, and transfer to J.J. Reidy 4 million shares of UCSY stock. Id., Exh. A, at 3-4. Additionally, as further consideration for the exclusive, world-wide rights granted to AirWater, AirWater agreed to pay J.J. Reidy royalties on sales. Specifically, the Agreement provides, in relevant part, as follows:

> ROYALTY PAYMENTS
>
> LICENSEE further agrees to pay a royalty fee on al sales of manufactured models in the amount of five per cent (5%) of all gross sales less any applicable taxes, for any machines and or components sold in the amounts not exceeding $10,000 each. For all other sales of units and or components, the Royalty Fee shall be seven per cent (7%).
>
> LICENSOR shall receive royalties on the quarterly gross sales of LICENSEE, and any of its sub LICENSEES. The royalties shall be computed based on the sales price, less returns, discounts, sales and use taxes, transportation costs, shipping expenses, excise taxes, and other such amounts.
>
> This royalty levied on gross sales shall be paid for all sales made on a Quarterly basis.
>
> The payment will be remitted to the LICENSOR on or before the 30th day following the closing of the quarterly period.
>
> . . .
>
> The ROYALTY RATE is based upon the quarterly sales of LICENSEE and computed as follows:
>
> Each quarter, LICENSOR shall be paid the applicable Royalties on the gross sales during that fiscal quarter.

Further, the Agreement further provided, in relevant part, as follows:

> MINIMUM MONTHLY ROYALTY PAYMENTS:
>
> LICENSEE is to pay to LICENSOR a monthly Royalty payment in the amount of $10,000 per month commencing November 1st, 2003, or the Royalty payments due in accordance with [the quarterly royalty provisions of the Agreement] whichever is the more.

2

> LICENSEE agrees that for a period of 12 months commencing November 1st 2003, any unearned minimum monthly royalty shall be credited to any earned Royalties and may (if applicable) be applied at any time during this 12-month period.

On June 25, 2003, AirWater Corporation assigned all of its rights and obligations under the Agreement to AirWater Patents, Inc., which assignment was consented to in writing by J.J. Reidy.

AirWater timely performed its obligations under the Agreement by paying J.J. Reidy $100,000, and transferring 4 million shares of stock to J.J. Reidy valued at between approximately $200,000 and $300,000. Further, AirWater paid J.J. Reidy an additional $120,000 in installments of $10,000 per month from November 1, 2003, through October 31, 2004.

Notwithstanding AirWater's timely performance of its obligations, and before any alleged non-payment of monthly royalties or breaches by AirWater, J.J. Reidy breached its contractual obligation under the Agreement to make application for foreign registrations of the J.J. Reidy Patents as requested by AirWater in various countries. In that regard, the Agreement provides that: "LICENSOR, when applicable, shall make application for any foreign patents desired by LICENSOR, at his own expense." However, as found by the Court, the second reference in this clause to "LICENSOR" was a typographical error, and the parties intended that it should have stated "LICENSEE", such that this clause would read as follows: "LICENSOR, when applicable, shall make application for any foreign patents desired by LICENSEE, at his own expense." The evidence will show that it was J.J. Reidy's obligation to pay expenses associated with foreign patent applications requested by AirWater, and that AirWater requested that J.J. Reidy make foreign patent applications in various countries, including Israel where AirWater's manufacturing plant is located, China, and India. Despite J.J. Reidy's contractual obligations, J.J. Reidy nevertheless refused to make such applications, advising AirWater that

3

J.J. Reidy would not do so unless AirWater agreed to assume such expenses. The evidence will further show that the parties' understood that AirWater intended to market and sell products based on the Reidy Patents in foreign markets and that such foreign patent registrations were material to the contract. As such, J.J. Reidy's refusal to make the requested applications constituted a prior material breach of contract, which excused AirWater from further performance under the Agreement.

Additionally, J.J. Reidy prematurely sought to terminate the parties' Agreement in prior material breach of the terms thereof. In that regard, the evidence will show that AirWater could elect, at its option, to either pay monthly royalties each month and pay possible quarterly remainders at the end of each quarter or, alternatively, AirWater could elect to pay all royalty obligations at the end of each quarterly period (including all of the quarter's minimum monthly payments and quarterly royalty payments in one lump sum). The evidence will further show that J.J. Reidy sent a notice of default to AirWater on January 13, 2004 and a notice of termination on January 31, 2004, asserting as justification therefore that AirWater's had failed to make required monthly royalty payments in the amount of $10,000 each in November and December, 2003. However, under the second payment option described above, AirWater's payment of royalties under the second payment option described above was not due until the 30th day following the closing of the quarterly period. Adding the 14-day grace period for payment of royalties, AirWater's royalty payments were not due until on or about February 14, 2004 and, therefore, J.J. Reidy's notice of default and notice of termination were premature and constituted a prior material breach of contract which excused AirWater from further performance.

Moreover, the evidence will also show that the Agreement calls for AirWater to pay royalties with respect to sales of all products sold by AirWater, even if they are manufactured and sold outside the United States. This is illegal. The evidence will further show that

4

AirWater's manufacturing operations are located in Israel, and that AirWater's have been predominantly if not entirely outside the United States and, therefore, the required payment of royalties with respect to such sales is illegal because the territorial scope of the J.J. Reidy Patents is limited to the United States. Accordingly, there has been a failure of consideration and J.J. Reidy claims for royalties and termination of the Agreement are barred.

As a result of J.J. Reidy's prior material breaches of contract, AirWater was denied the benefit of the bargain and has suffered damages in an equal to that which AirWater paid J.J. Reidy under the Agreement, or approximately, $420,000. Additionally, AirWater suffered damages in amount equal to that which AirWater has spent developing and marketing products based on the J.J. Reidy Patents in the approximate amount of $2 million.

Contrary to J.J. Reidy's claim that it was fraudulently induced to enter into the Agreement by AirWater's alleged misrepresentation to the effect that it had $2 million to commit to marketing products based on the J.J. Reidy Patents, Mr. Zwebner specifically advised J.J. Reidy in written correspondence before the parties executed the Agreement that AirWater was in the process of trying to raise $2 million of working capital from a number of private investors. Additionally, the evidence will show that AirWater otherwise substantially performed all of its contractual obligations, including but not limited to committing resources and putting its best efforts to market products based on the J.J. Reidy Patents.

## II.     Undisputed Facts

The parties will submit a separate document setting forth the undisputed facts.

## III.    AirWater's Contested Issues of Fact

1.     Did the parties' Agreement permit AirWater to pay all royalty obligations at the end of each quarterly period (including all of the quarter's minimum monthly payments and quarterly royalty payments in one lump sum), such that J.J. Reidy's notice of default on January

13, 2004 and notice of termination on January 31, 2004 constituted a prior material breach of the Agreement?

2. Was J.J. Reidy obligated to pay expenses associated with foreign registrations of the J.J. Reidy Patents requested by AirWater, such that J.J. Reidy's refusal to pursue applications requested by AirWater unless AirWater assumed the cost thereof constituted a prior material breach of the Agreement?[1]

3. Did J.J. Reidy breach the Agreement by selling the Patents to Freewater Corporation and by seeking to license and or sell the Reidy Patents to third parties in violation of AirWater's exclusive rights?

4. Did AirWater falsely represent to J.J. Reidy that AirWater had $2 million in funds to commit to the marketing of products based on the J.J. Reidy Patents?

## IV. AirWater's Jurisdictional Questions

There are no jurisdictional questions. Jurisdiction is based on diversity of citizenship.

## V. AirWater's Questions Raised by Pending Motions

AirWater has no pending motions, but see AirWater's Statement of Additional Matters that Would Aid in Disposition of this Action.

## VI. AirWater's Issues of Law

1. Did J.J. Reidy materially breach the parties' Agreement by prematurely sending AirWater notices of default and a notice of termination on January 31, 2005 for the purported nonpayment of required monthly royalties in November and December, 2004, thereby excusing further performance by AirWater under the Agreement?

---

[1] As written, the relevant clause of the Agreement provides: "LICENSOR, when applicable, shall make application for any foreign patents desired by LICENSOR,[1] at his own expense." However, Mr. Reidy admitted during his deposition that the second reference to "LICENSOR" was a typographical error and instead should have stated "LICENSEE". Accordingly, pursuant to the Court's Memorandum and Order on Parties' Cross-Motions for Summary Judgment, the Court ordered this clause reformed, such that the second occurrence of the word "LICENSOR" should be replaced with the word "LICENSEE". Memorandum and Order, at 16-17. As framed by the Court, the question is the phrase "at his own expense" refers to the Licensor or Licensee?

2.  Did J.J. Reidy materially breach the parties' Agreement by refusing to make applications for foreign patent registrations requested by AirWater without payment by AirWater of expenses associated therewith, thereby excusing further performance by AirWater under the Agreement?

3.  Does the Agreement require AirWater to pay royalties with respect to sales of products manufactured and sold outside the territorial scope of the Reidy Patents, such that there is a failure of consideration?

4.  Did J.J. Reidy breach the implied covenant of good faith and fair dealing?

5.  Whether reformation of the Agreement so as to allow AirWater to retain the benefit of a fully-paid up license is necessary to prevent unjust enrichment to J.J. Reidy?

6.  Are J.J. Reidy's claims for termination and for royalties barred by reason of a failure of consideration, given that the J.J. Reidy Patents are valid only in the United States, but the parties' Agreement calls for payment of royalties on sales of products manufactured and sold outside the United States and, therefore, outside the scope of the J.J. Reidy Patents?

7.  Did J.J. Reidy reasonably rely upon Mr. Zwebner's alleged misrepresentation that that AirWater had $2 million in funds to commit to the marketing of products based on the J.J. Reidy Patents where Mr. Zwebner specifically informed J.J. Reidy in written email correspondence prior to execution of the Agreement that Mr. Zwebner was still in the process of trying to raise such funding from potential investors?

8.  Did AirWater engage in unfair and deceptive trade practices in violation of Mass. Gen. L. ch. 93A, § 11?

9.  Is J.J. Reidy's claim for royalties barred by the election of remedies doctrine?

## VII.   AirWater's Requested Amendments to the Pleadings

None.

**VIII.** **AirWater's Statement of Additional Matters That Would Aid in the Disposition of the Action**

With respect to the question whether the parties' Agreement unlawfully requires AirWater to pay royalties with respect to sales of products manufactured and sold beyond the territorial limits of the Reidy Patents, such that there has been a failure of consideration which prevent J.J. Reidy from enforcing the Agreement so as to terminate AirWater's license and recover royalties, AirWater contends that the relevant facts are undisputed and that it is entitled to judgment as a matter of law. Indeed, the law is clear that a United States Patent "gives no protection to a patentee outside of the United States and its territories. . . . [A]nyone could with impunity make, use and sell the invention covered by [a United States Patent] outside the United States." Cold Metal Process Co. v. United Engineering & Foundry Co., 132 F.Supp. 597, 602 (D.C.Pa. 1955). As such, license agreements which seek to extract payment of royalties with respect to sales of products outside the scope of the licensed patent are unlawful and must fail for lack of consideration. Glen Mfg., Inc. v. Perfect Fit Industries, Inc., 299 F.Supp. 278, 283 (D.C.N.Y.1969). AirWater further contends that resolution of this question will be largely if not entirely dispositve of this action and, therefore, AirWater would request the opportunity to further brief this issue for resolution by the Court.

**IX.** **Probable Length of the Trial**

The probable length of the trial is five days.

**X.** **AirWater's Witnesses**

    1.    Michael J. Zwebner, President

    2.    Roland Sablon, Office Manager

    3.    Clinton Snyder, Accountant

4.  Bob DeCosta, Sales Director
    AirWater Patents, Inc.
    407 Lincoln Road, Suite 12F
    Miami Beach, FL

5.  James J. Reidy
    J.J. Reidy & Co., Inc.\
    1260 Main Street
    Holden, MA

6.  Mike Klein
7.  Keeper of Records
    Air 2 Water LLC
    World Wide Water LLC
    World Wide Water Inc.
    2800 28th Street, Suite 201
    Santa Monica, CA

8.  Keeper of Records, Freewater Corporation
    Georgetown, TX

9.  Brian Dingman, Esq.
    Mirick, O'Connell, DeMallie & Lougee, LLP
    100 Front Street
    Worcester, MA

10. Janice Betheanne Difonso
    124 Ridge Road
    Northborough, MA

AirWater reserves the right to call rebuttal witnesses and any of the witnesses listed by J.J. Reidy and to supplement this list.

## XI.  Proposed Exhibits

The parties will submit a separate document setting forth the proposed exhibits.

9

XII.   **Rule 26(a)(3) Required Disclosures**

None.

<div style="margin-left: 40%;">

AIRWATER CORPORATION AND
AIRWATER PATENTS, INC.

Respectfully submitted,

*/s/ Matthew P. Zayotti*

Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan Werlin LLP
265 Franklin Street
Boston, Massachusetts  02110-3113
(617) 951-1400

</div>

Dated: February 28, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 28, 2008.

*/s/ Matthew P. Zayotti*

10